# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Hospital Acquisition LLC, *et al.*,[1] | ) | Case No. 19-~~10998~~ *10998 (BLS)* |
| | ) | |
| Debtors. | ) | ~~(Joint Administration Requested)~~ *Jointly Administered* |
| | ) | |
| | ) | **Re: Docket No. 25** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Upon the motion ("**DIP Motion**") of Hospital Acquisition LLC ("**Hospital Acquisition**")[2] and certain of its affiliates, including LifeCare Holdings LLC ("**LifeCare Holdings**") (each a borrower, and together with LifeCare Holdings, collectively, the "**Borrowers**"), and Hospital Acquisition Intermediate Sub LLC ("**Holdings**"), as guarantor, who are each debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), seeking entry of an order (this "**Interim Order**")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Hospital Acquisition LLC (3232); Hospital Acquisition Intermediate Sub LLC (9609); LifeCare Holdings LLC (f/k/a Hospital Acquisition Sub I LLC) (6612); LifeCare Behavioral Health Hospital of Pittsburgh LLC (9835); New LifeCare Hospitals LLC (7959); New LifeCare Hospitals of Dayton LLC (2592); New LifeCare Hospitals of Milwaukee LLC (2428); New LifeCare Hospitals of South Texas LLC (4237); Hospital Acquisition Sub II LLC (7920); New LifeCare Management Services LLC (4310); New LifeCare REIT 1 LLC (9849); New LifeCare Hospitals of Mechanicsburg LLC (0174); New Pittsburgh Specialty Hospital LLC (7592); LifeCare Vascular Services, LLC (5864); New LifeCare Hospitals of North Texas LLC (4279); New LifeCare Hospitals of Chester County LLC (1116); New LifeCare Hospitals of Northern Nevada LLC (4534); New San Antonio Specialty Hospital LLC (2614); New LifeCare Hospitals of North Carolina LLC (7257); New LifeCare Hospitals of Pittsburgh LLC (8759); New NextCare Specialty Hospital of Denver LLC (6416); Hospital Acquisition MI LLC (4982); LifeCare Pharmacy Services LLC (3733); New LifeCare REIT 2 LLC (1315); New LifeCare Hospitals at Tenaya LLC (6891); and New LifeCare Hospitals of Sarasota LLC (8094). The Debtors' address is 5340 Legacy Drive, Suite 150, Plano, Texas 75024.

[2] Hospital Acquisition is a guarantor of the obligations under the DIP Facility.

pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code ("**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware ("**Local Rules**"), *inter alia*:

(i)      authorizing the Debtors to obtain senior secured, postpetition financing on a superpriority basis consisting of a senior secured superpriority revolving credit facility ("**DIP Facility**") pursuant to the terms and conditions of that certain *Debtor-In-Possession Credit Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**DIP Agreement**"), by and among the Borrowers, Holdings (as guarantor), White Oak Healthcare Finance, LLC, as administrative agent, collateral agent and lender thereto (in such capacities, the "**DIP Agent**" or "**DIP Lender**"), substantially in the form of **Exhibit A**, attached to the DIP Motion[3];

(ii)      authorizing the Debtors to execute and deliver the DIP Agreement, the Intercreditor Consent and Acknowledgment (as herein defined), and any other agreements, instruments, pledge agreements, guarantees, control agreements and other Loan Documents (as defined in the DIP Agreement) and documents related thereto (including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, in accordance with the terms hereof and thereof, collectively, and together with the DIP Agreement, the "**DIP Documents**") and to perform such other acts as may be necessary, desirable or appropriate in

---

[3]   Subject to the entry of the Final Order, all Existing Debt (as defined herein) and all accrued and unpaid interest thereon and fees and expenses shall be fully-rolled into the DIP Facility and shall constitute DIP Obligations (as defined herein).

2

connection with the DIP Documents;

(iii)    granting to the DIP Lender on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Documents (collectively, and including all "Obligations" as defined in the DIP Agreement, the "**DIP Obligations**") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein), subject only to the Carve Out (as defined below);

(iv)    granting to the DIP Lender under the DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), which liens shall be subject to the priorities set forth herein;

(v)    subject to the Final Order, authorizing the Debtors to cash collateralize the letters of credit issued pursuant to the Prepetition Facility (as defined below) pursuant to the terms of the Prepetition Loan Documents (as defined below);

(vi)    authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, arrangement fees, upfront fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, this Interim Order and the DIP Documents;

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order, including the turnover of cash collateral by the

3

Borrowers to the Prepetition Lender (as defined herein) in repayment of the Existing Debt (as defined herein) owing under the Prepetition Facility;

(viii)    authorizing the Debtors to use, on the terms described herein, the Prepetition Collateral (as defined herein), including the Term Facility Priority Collateral as defined in the Revolving Intercreditor Agreement (as defined herein);

(ix)    providing adequate protection to the Prepetition Term Facility Lender Parties (as defined herein) for any diminution in value of their interests in the Term Facility Priority Collateral, resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Term Facility Priority Collateral, and the priming of their respective interests in the Term Facility Priority Collateral (including by the Carve Out) ("**Diminution in Value**"); and

(x)    scheduling a final hearing ("**Final Hearing**") to consider the relief requested in the DIP Motion, on a final basis, and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Geoffrey Coutts In Support of Debtors' Emergency Motion For Interim and Final Orders (I) Authorizing Debtors To Obtain Postpetition Financing and Use Cash Collateral; (II) Granting Priming Liens and Providing Super Priority Claims, (III) Granting Adequate Protection to Prepetition Secured Parties; and (iv) Prescribing the Form and Manner of Notice and Setting the Time for the Final Hearing* ("**DIP Declaration**") and the *Declaration of James Murphy, Chief Executive Officer of Hospital Acquisition LLC, in Support of Chapter 11 Petitions and First Day Motions* ("**First Day Declaration**"), the DIP Documents, and the evidence submitted and arguments made at the interim hearing held on May 8, 2019 ("**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002,

4

4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the preservation and continued operation of the Debtors' businesses and the maximization of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE FOREGOING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.     **Filing Date**.  On May 6, 2019 ("**Filing Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

B.     **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.     **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

5

and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

   D. **Committee Formation**. As of the date hereof, the United States Trustee for the District of Delaware ("**U.S. Trustee**") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code ("**Committee**").

   E. **Notice**. Notice of the DIP Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order is required.

   F. **Debtors' Stipulations**. After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 41 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xiii) below are referred to herein, collectively, as the "**Debtors' Stipulations**"):

     (i) *Prepetition Facility*. Pursuant to that certain Credit Agreement, dated as of August 10, 2018 (as amended, modified and supplemented prior to the Filing Date, the "**Prepetition Credit Agreement**", and together with all documents, instruments, agreements, schedules and exhibits executed and/or delivered in connection therewith, the "**Prepetition Loan Documents**"), among LifeCare Holdings as the borrower representative, the other borrowers party thereto from time to time, Holdings as guarantor, and White Oak Healthcare Finance, LLC,

6

as administrative agent, collateral agent and lender party thereto (in such capacities, the "**Prepetition Agent**" or the "**Prepetition Lender**") the Prepetition Lender provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Borrowers pursuant to the Prepetition Loan Documents ("**Prepetition Facility**").

(ii)    *Existing Debt.* The Prepetition Facility provided the Borrowers with, among other things, up to $40,000,000 aggregate principal amount of Revolving Loan Commitments (as defined in the Prepetition Credit Agreement), including letters of credit obligations. As of the Filing Date, the Borrowers under the Prepetition Facility were truly and justly indebted to the Prepetition Lender pursuant to the Prepetition Loan Documents, without defense, counterclaim, or offset of any kind, and the aggregate principal amount outstanding under the Prepetition Facility was approximately $26,721,070.08 in outstanding revolving loans and approximately $9,448,735.49 in issued and outstanding letter of credit obligations (collectively, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, yield maintenance fee, early termination fee, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrowers' obligations or Holdings' obligations (as guarantor) pursuant to, or secured by, the Prepetition Loan Documents, including all "Obligations" as defined in the Prepetition Credit Agreement, and all interest, fees (including amendment fees), prepayment premiums,

7

costs and other charges allowable under section 506(b) of the Bankruptcy Code (the "**Existing Debt**").

        (iii)   *Prepetition Revolving Liens and Prepetition Revolving Collateral.* As more fully set forth in the Prepetition Loan Documents and the DIP Motion, prior to the Filing Date, the Borrowers and Holdings granted to the Prepetition Lender, a security interest in and continuing lien on ("**Prepetition Revolving Liens**") the Collateral as defined in the Prepetition Credit Agreement ("**Prepetition Revolving Collateral**").

        (iv)   *Prepetition Term Facility Agreements.* (a) Pursuant to that certain Credit Agreement, initially dated as of May 31, 2013 (as amended, modified and supplemented from time to time prior to the Filing Date, the "**Prepetition Second Term Facility Agreement**", and together with all documents, instruments, agreements, schedules and exhibits executed and/or delivered in connection therewith, the "**Prepetition Second Term Facility Documents**"), among LifeCare Holdings as the borrower, Hospital Acquisition Intermediate Sub LLC as "Holdings" and the other guarantors party thereto,[5] and the lenders that are parties thereto from time to time ("**Prepetition Second Term Facility Lenders**") and Seaport Loan Products LLC, as administrative agent (in such capacity, "**Seaport**"), and Wilmington Trust, National Association, as co-administrative agent and collateral agent for the Prepetition Second Term Facility Lenders (in such capacities, and together with Seaport, the "**Prepetition Second Term**

---

[5] The other guarantors are New LifeCare Hospitals LLC, New LifeCare Hospitals of Chester County LLC, New LifeCare Hospitals of Milwaukee LLC, New LifeCare Hospitals of North Carolina LLC, New LifeCare Hospitals of Pittsburgh LLC, New LifeCare Management Services LLC, New NextCare Specialty Hospital of Denver LLC, New LifeCare REIT 1 LLC, New LifeCare Hospitals of Mechanicsburg LLC, New Pittsburgh Specialty Hospital LLC, New LifeCare Hospitals of Dayton LLC, New LifeCare Hospitals of Northern Nevada LLC, New LifeCare Hospitals of South Texas LLC, New LifeCare Hospitals of North Texas LLC, New San Antonio Specialty Hospital LLC, New LifeCare REIT 2 LLC, New LifeCare Hospital at Tenaya LLC, New LifeCare Hospitals of Sarasota LLC, LifeCare Behavioral Health Hospital of Pittsburgh LLC, LifeCare Pharmacy Services LLC (collectively with LifeCare Holdings, Holdings, as guarantor, and the other Loan Parties, the "**Prepetition Term Facilities Loan Parties**").

Facility Agents" and together with the Prepetition Second Term Facility Lenders, the "**Prepetition Second Term Facility Lender Parties**"), the Prepetition Second Term Facility Lenders provided credit and other financial accommodations to LifeCare Holdings pursuant to the Prepetition Second Term Facility Documents ("**Prepetition Second Term Facility**"), and (b) pursuant to that certain Credit Agreement, dated as of August 10, 2018 (as amended, modified and supplemented from time to time prior to the Filing Date, the "**Prepetition Priming Term Loan Credit Agreement**",[6] and together with all documents, instruments, agreements, schedules and exhibits executed and/or delivered in connection therewith, the "**Prepetition Priming Facility Documents**," and with the Prepetition Second Term Facility Documents, the "**Prepetition Term Facility Documents**"), among the Prepetition Term Facilities Loan Parties, and the lenders that are parties thereto from time to time (the "**Prepetition Priming Term Facility Lenders**," and with the Prepetition Second Term Facility Lenders, the "**Prepetition Term Facility Lenders**") and Glas Trust Company LLC, as administrative agent and collateral agent for the Prepetition Priming Term Facility Lenders (in such capacity, the "**Prepetition Priming Term Facility Agent**" and together with the Prepetition Priming Term Facility Lenders, the "**Prepetition Priming Term Facility Lender Parties**"),[7] the Prepetition Priming Term Facility Lenders provided credit and other financial accommodations to LifeCare Holdings pursuant to the Prepetition Priming Facility Documents ("**Prepetition Priming Facility**," and with the Prepetition Second Term Facility, the "**Prepetition Term Facilities**").

(v)    *Prepetition Priming Facility Obligations.* The Prepetition Priming

---

[6]    The Prepetition Second Term Facility Agreement and the Prepetition Priming Term Loan Credit Agreement shall be referred to collectively as the "**Prepetition Term Facilities Agreements**".

[7]    The Prepetition Second Term Facility Agents and the Prepetition Priming Term Facility Agent shall be referred to collectively as the "**Prepetition Term Facility Agents**". The Prepetition Second Term Facility Lender Parties and the Prepetition Priming Term Facility Lender Parties shall be referred to herein as the "**Prepetition Term Facility Lender Parties**."

Facility provided the Borrower (as defined in the Prepetition Priming Term Loan Credit Agreement) with a term loan facility in the aggregate amount of $15,000,000. As of the Filing Date, the Prepetition Term Facilities Loan Parties were truly and justly indebted to the Prepetition Priming Term Facility Lenders pursuant to the Prepetition Priming Facility Documents, without defense, counterclaim, or offset of any kind, and the aggregate principal amount outstanding under the Prepetition Priming Facility was no less than $7,656,642.60 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, yield maintenance fee, early termination fee, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of LifeCare Holdings' or the guarantors' obligations pursuant to, or secured by, the Prepetition Priming Facility Documents, including all "Obligations" as defined in the Prepetition Priming Term Loan Credit Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Priming Facility Obligations**").

      (vi)   *Prepetition Second Term Facility Obligations*. The Prepetition Second Term Facility provided the Borrower (as defined in the Prepetition Second Term Facility Agreement) with a term loan facility in the aggregate amount of $200,000,000. As of the Filing Date, the Prepetition Term Facilities Loan Parties were truly and justly indebted to the Prepetition Second Lien Term Facility Lenders pursuant to the Prepetition Second Term Facility

10

Documents, without defense, counterclaim, or offset of any kind, and the aggregate principal amount outstanding under the Prepetition Second Term Facility was not less than $140,947,579(collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, yield maintenance fee, early termination fee, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of LifeCare Holdings' or the guarantors' obligations pursuant to, or secured by, the Prepetition Second Term Facility Documents, including all "Obligations" as defined in the Prepetition Second Term Facility Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Second Term Facility Obligations**" and, together with the Prepetition Priming Term Facility Obligations, the "**Prepetition Term Facilities Obligations**").

(vii)    *Prepetition Term Facilities Liens and Prepetition Term Facilities Collateral.*  As more fully set forth in the Prepetition Term Facility Documents and the DIP Motion, prior to the Filing Date, each of the Prepetition Term Facilities Obligors granted to the Prepetition Term Facility Agents, for the benefit of themselves and the Prepetition Term Facility Lenders, a security interest in and continuing lien on ("**Prepetition Term Facilities Liens**") the Collateral as defined in the Prepetition Term Facilities Agreements ("**Prepetition Term Facilities Collateral**," and with the Prepetition Revolving Collateral, the "**Prepetition Collateral**").

11

(viii)    *Priority of Prepetition Liens; Intercreditor Agreements.*    The Prepetition Agent, the Prepetition Term Facility Agents, and others are parties to that certain Intercreditor Agreement dated as of August 10, 2018 (as amended, restated, supplemented, or otherwise modified in accordance with its terms from time to time, the "**Revolving Intercreditor Agreement**"), which governs the respective rights, interests, obligations, priority and positions of the Prepetition Lender and the Prepetition Term Facility Lender Parties with respect to the assets and properties of the Debtors and other obligors.    Additionally, the Prepetition Priming Term Agent, the Prepetition Second Term Facility Agents and others are parties to that certain Term Loan Intercreditor Agreement, dated as of August 10, 2018 (as amended, restated, supplemented, or otherwise modified in accordance with its terms from time to time prior to the Petition Date, the "**Term Loan Intercreditor Agreement**" and, together with the Revolving Intercreditor Agreement, the "**Intercreditor Agreements**"), which governs the respective rights, interests, obligations, priority and positions of the Prepetition Priming Term Facility Lender Parties and the Prepetition Second Term Facility Lender Parties with respect to the assets and properties of the Debtors and other obligors.    Each of the Borrowers and Holdings acknowledged and agreed to the Intercreditor Agreements.

(ix)    *Validity, Perfection, and Priority of Prepetition Revolving Liens and Existing Debt.*    The Debtors acknowledge and agree that (a) the Prepetition Revolving Liens on the Prepetition Revolving Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Lender for fair consideration and reasonably equivalent value; (b) the Prepetition Revolving Liens were senior in priority over any and all other liens on the Prepetition Revolving Collateral other than valid and unavoidable Permitted Encumbrances (as defined on page 122 of the Prepetition Credit

12

Agreement) specified in the Prepetition Loan Documents; (c) the Existing Debt constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Revolving Liens or Existing Debt exist, and no portion of the Prepetition Revolving Liens or Existing Debt is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Prepetition Lender or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Existing Debt, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Existing Debt; and (g) the aggregate value of the Prepetition Revolving Collateral exceeds the amount of the Existing Debt and the claims of the Prepetition Lender arising under, or secured by, the Prepetition Loan Documents constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(x)     *Validity, Perfection, and Priority of Prepetition Term Facilities Liens and Prepetition Term Facilities Obligations.*  The Debtors acknowledge and agree that (a) the Prepetition Term Facilities Liens on the Prepetition Term Facilities Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the

13

benefit of, the Prepetition Term Facility Agents (on behalf of the Prepetition Term Facility Lenders) for fair consideration and reasonably equivalent value; (b) subject to the priming of the Prepetition Term Facility Liens on the Prepetition Term Facility Collateral as provided herein and which has been consented to by the Prepetition Term Facility Lender Parties pursuant to that *Consent and Acknowledgment*, dated as of May 7, 2019, by and among the Debtors, the DIP Agent and the Prepetition Term Facility Agents ("**Intercreditor Consent and Acknowledgement**"), the Prepetition Term Facilities Liens were senior in priority over any and all other liens on the Prepetition Term Facilities Collateral other than valid and unavoidable Permitted Encumbrances (as defined in the Prepetition Term Facility Documents) specified in the Prepetition Term Facility Documents ("**Prepetition Term Loan Permitted Prior Liens**"); (c) the Prepetition Term Facilities Obligations are legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Facility Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Facilities Liens or Prepetition Term Facilities Obligations exist, and no portion of the Prepetition Term Facilities Liens or Prepetition Term Facilities Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Prepetition Term Facility Lender Parties or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees

14

arising out of, based upon or related to the Prepetition Term Facilities; and (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Facilities Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Facilities Obligations.

(xi)    *No Control.*    None of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Lenders controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Documents, the Prepetition Facility, the Prepetition Loan Documents, the Prepetition Term Facilities and/or the Prepetition Term Facility Documents.

(xii)    *Cash Collateral.*    (a) All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, and (b) proceeds from the sale of the DIP Collateral and the Prepetition Collateral, constitutes Cash Collateral of the Prepetition Lender and the Prepetition Term Facility Agents (for the benefit of the Prepetition Term Facility Lender Parties).

(xiii)    *Default by the Debtors.*    The Debtors acknowledge and stipulate that (i) they are in default of their obligations under both the Prepetition Loan Documents and the Prepetition Second Term Facility Documents and (ii) an Event of Default has occurred under the Prepetition Loan Documents and the Prepetition Second Term Facility Documents.  Prior to the Filing Date, therefore, the revolving commitments under the Prepetition Facility were terminated, and interest was accruing on the Existing Debt at the default rate.  In addition, as of March 30, 2019, due to the Debtors' failure to pay interest when due pursuant to the terms of the

DMSLIBRARY01\24647\765001\34313814.v12-5/7/19

Prepetition Second Term Facility Agreement, interest was accruing on the Prepetition Second Term Facility Obligations at the default rate.

        G.    **Permitted Encumbrances**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Encumbrance is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, except as expressly set forth herein, including without limitation in the Debtors' Stipulations set forth herein, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Lender, the Prepetition Term Facility Lender Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Encumbrance and/or security interests.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Encumbrance; rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claims had with respect to the Prepetition Revolving Liens under the Prepetition Loan Documents.

        H.    **Findings Regarding Corporate Authority.**  Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder and pursuant to this Interim Order.

        I.    **Findings Regarding Postpetition Financing**

        (i)    *Request for Postpetition Financing*.  The Debtors seek authority to (a) use Cash Collateral on the terms provided herein, and (b) enter into the DIP Facility on the terms provided herein and in the DIP Documents to refinance the Existing Debt, to administer their Cases, and to fund the Debtors' operations.  At the Final Hearing, the Debtors will seek

final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed final order (the "**Final Order**"), which shall be in form and substance acceptable to the DIP Agent and be substantially in the form of the Interim Order, and with respect to any changes from the Interim Order, reasonably satisfactory to the Prepetition Term Facility Agents, and as it pertains to changes to Adequate Protection and use of Cash Collateral, in form and substance satisfactory to the Prepetition Term Facility Agents.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

> (ii)    *Priming of the Prepetition Term Facilities Liens*.  The priming of the Prepetition Term Facilities Liens on the Prepetition Term Facilities Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors.  The Prepetition Term Facility Agents, for the benefit of themselves and the Prepetition Term Facility Lender Parties, are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Prepetition Term Facilities Collateral (including the Cash Collateral).

> (iii)    *Need for Postpetition Financing*.  The Debtors have an immediate and critical need to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, administer the Cases and preserve the value of their estates.  The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facility, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest.  The Debtors do not have sufficient

17

available sources of working capital and financing to preserve the value of and operate their businesses or maintain their properties in the ordinary course of business simply by seeking the use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*  The DIP Facility is the best source of debtor-in-possession financing available to the Debtors.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  As described in the DIP Declaration, financing on a postpetition basis on better terms is not otherwise available without granting the DIP Lender: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof; (2) superpriority claims and liens; (3) the other protections set forth in this Interim Order; and (4) a full refinancing of the Existing Debt.

(v)    *Use of Proceeds of the DIP Facility.*  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the use of Cash Collateral in accordance with the terms of this Interim Order, the DIP Lender requires, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent

18

with the terms and conditions of this Interim Order and the DIP Documents and in accordance

with the budget (as the same may be modified from time to time consistent with the terms of the

DIP Documents and subject to such variances as permitted in the DIP Agreement, and as set

forth in paragraphs 19 and 20 hereof, the "**Budget**"),[8] solely for: (a) working capital and letters

of credit, including, subject to the Final Order, the cash collateralization of letters of credits

issued pursuant to the Prepetition Facility; (b) permitted payment of costs of administering the

Cases, including any payments on account of the Adequate Protection described herein; (c)

payment of such other prepetition obligations consented to by the DIP Agent in its sole

discretion, and as approved by the Court; (d) payment of interest, fees and expenses (including

without limitation, legal and other professionals' fees and expenses of the DIP Agent) and all

other "Obligations" owed under the Prepetition Loan Documents and the DIP Documents; and

(e) other general corporate purposes of the Debtors permitted by the Budget and the DIP

Documents.

   (vi) *Application of Proceeds of Collateral.* As a condition to entry into

the DIP Agreement and the extension of credit under the DIP Facility, the Debtors and the DIP

Lender have agreed that as of and commencing on the date of the Interim Hearing, the Debtors

shall apply the proceeds of Prepetition Revolving Collateral in satisfaction of the Existing Debt

and the proceeds of the other DIP Collateral in accordance with this Interim Order and as

provided in the DIP Documents.

   J.  **Adequate Protection of the Prepetition Term Facility Lender Parties.**

The Prepetition Term Facility Agents, for the benefit of themselves and the Prepetition Term

Facility Lender Parties, are each entitled to receive adequate protection to the extent of any

---

[8] The initial Budget is attached to the DIP Agreement.

DMSLIBRARY01\24647\765001\34313814.v12-5/7/19

Diminution in Value of their respective interests in the Prepetition Term Facilities Collateral as set forth in this Interim Order. In addition, as a condition to the use of Cash Collateral after the occurrence of the DIP Repayment Event, the Debtors and Prepetition Term Facility Agents have agreed that as part of the adequate protection provided to the Prepetition Term Facility Lender Parties, proceeds of the DIP Collateral and the Prepetition Collateral shall be applied in a manner consistent with paragraph 16 of this Interim Order.

K.    **Sections 506(c) and 552(b).**  In light of: (i) the DIP Lender's agreement that its liens and superpriority claims shall be subject to the Carve Out, (ii) the Prepetition Lender's agreement that its liens shall be subject to the obligations with respect to the Carve Out, and (iii) the Prepetition Term Facility Lender Parties' consent to the priming of the Prepetition Term Facilities Liens, (a) subject to entry of a Final Order, the DIP Lender, the Prepetition Lender and the Prepetition Term Facility Lender Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the DIP Lender, the Prepetition Lender and the Prepetition Term Facility Lender Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.    **Good Faith of the DIP Lender.**

(i)    *Willingness to Provide Financing.* The DIP Lender has indicated a willingness to provide financing to the Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors pursuant to the DIP Documents in good faith, and that

20

the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The extension of credit under the DIP Facility and the DIP Documents, and the interest and fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Facility and the use of Cash Collateral to repay the Prepetition Facility were negotiated in good faith and at arms' length among the Debtors, the DIP Lender, the Prepetition Lender and the Prepetition Term Facility Lender Parties, with the assistance and counsel of their respective advisors. The credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Lender and the Prepetition Lender within the meaning of section 364(e) of the Bankruptcy Code.

M.    **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

N.    **Interim Hearing**. Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition Lender; (iv) counsel to the Prepetition Term Facility Agents; and (v) all other parties entitled to notice under the Local Rules. The Debtors

have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion, the DIP Declaration, the First Day Declaration and the record before the Court with respect to the DIP Motion at the Interim Hearing, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      **Interim Financing Approved.**  The DIP Motion is granted on an interim basis as set forth herein, the Interim Financing (as defined in paragraph 3 below) is authorized and approved, and the use of Cash Collateral to repay the Prepetition Facility on an interim basis is authorized, subject to the terms and conditions set forth in the DIP Documents and this Interim Order.  All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

**DIP Facility Authorization**

2.      **Authorization of the DIP Facility.**  The DIP Facility and the borrowings of the Interim Financing (as defined in paragraph 3 below) is hereby approved.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents (including without limitation the Intercreditor Consent and Acknowledgement), and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Interim Order and the DIP Documents, including Hospital Acquisition (as

22

guarantor) and Holdings (as guarantor) providing their joint and several guarantee of all of the DIP Obligations. The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order and the DIP Documents, the principal, interest, fees, costs, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and payable and without need to obtain further Court approval, including, without limitation, closing fees, arrangement fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees and collateral agent's fees, subject to paragraph 41 herein, the reasonable and documented fees, costs and disbursements of the DIP Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Filing Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.  Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.      **Authorization to Borrow.**  To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Date (as defined herein), and subject to the terms, conditions, limitations on availability and reserves (as applicable) set forth in the

23

DIP Documents and this Interim Order, the Debtors are hereby authorized to borrow under the DIP Facility, in an aggregate outstanding principal amount so that the outstanding balance of the DIP Facility (after taking into account the repayment of the Existing Debt as authorized under the Interim Order, but without regard to the issued and outstanding letter of credit obligations) shall not exceed $27,000,000 (the "**Interim Financing**"), incurred pursuant to, and in accordance with, this Interim Order and the DIP Documents.

4.    **DIP Obligations.**    The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").    Upon entry of this Interim Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Lender, in each case, under, or secured by, the DIP Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owing under the DIP Documents, and all cash management and bank product exposure and hedging exposure and obligations to the extent provided under the DIP Documents.    Upon entry of this Interim Order and the occurrence of the Closing Date (as defined in the DIP Agreement), all letters of credit issued for the account of the Debtors under the Prepetition Credit Agreement shall continue in place and all obligations under or in connection with such letters of credit shall be subject to the DIP Agreement and shall constitute DIP Obligations. In particular, subject to the Final Order, the Debtors are authorized

24

and directed to cash collateralize the letters of credit issued under the Prepetition Credit Agreement. The Debtors (including Hospital Acquisition and Holdings, as guarantors) shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, on the Termination Date.  Subject to the rights preserved in paragraph 41 hereof, no obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined below), and including, subject to paragraph 11 herein, in connection with any adequate protection provided to the Prepetition Term Facility Lender Parties) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5. **DIP Liens.**  In order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens on (collectively, the "**DIP Liens**") all personal and real property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors (the "**DIP Collateral**"), including without limitation: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper,

25

contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock or equivalents of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Debtors, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all proceeds of leased real property; (c) all proceeds of actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions brought pursuant to section 549 of the Bankruptcy Code); (e) subject to entry of a Final Order, the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof; and (f) all other DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Filing Date.  For the avoidance of doubt, DIP Collateral that is of a type that would be Term Facility Priority Collateral (as defined in the Intercreditor Agreements) shall constitute DIP Collateral.

6. **DIP Liens Priority**.

(a)    Except for the obligations with respect to the Carve Out, the DIP

Liens securing the DIP Obligations are valid, automatically and properly perfected, non-avoidable liens on all DIP Collateral and shall have the following priorities:

(i)    pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority perfected lien on, and security interest in, all DIP Collateral that is not subject to a valid, perfected, enforceable and unavoidable lien or security interest in existence as of the Petition

Date;

(ii)    a perfected lien on, and security interest in, all DIP Collateral, including without limitation the Term Loan Priority Collateral (as defined in the Revolving Intercreditor Agreement), which DIP Liens shall, pursuant to section 364(d) of the Bankruptcy Code, be priming liens senior in priority to all other liens on the DIP Collateral, including, without limitation, the Prepetition Term Facilities Liens;

(b)    Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.   Notwithstanding anything contained in this Interim Order to the contrary, the DIP Liens held by the DIP Lender shall be (i) subject to the obligations with respect to the Carve Out, (ii) junior to the Permitted Encumbrances as set forth in the

27

Prepetition Loan Documents, and (iii) junior to the liens held by the Prepetition Lender with respect to the Prepetition Revolving Collateral.

7.    **DIP Superpriority Claims.**    Upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations.    Except for the obligations with respect to the Carve Out, the DIP Superpriority Claim shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor, including without limitation any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c) (subject to entry of a Final Order), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code.    No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Superpriority Claim.

8.    **No Obligation to Extend Credit.**    The DIP Lender shall have no obligation to make any loan or advance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agent in accordance with the terms of the DIP Agreement.    There are no new letters of credit being issued under the DIP Agreement.

9.    **Use of Proceeds of DIP Facility.**    From and after the Filing Date, the

28

Debtors shall use advances of credit under the DIP Facility in accordance with the Budget (subject to such variances as permitted in this Interim Order and in the DIP Agreement), only for the purposes specifically set forth in this Interim Order and the DIP Documents, and in compliance with the terms and conditions in this Interim Order and the DIP Documents.

10.    **Use of Cash Collateral.**    Subject to the rights preserved in paragraph 41 hereof: (a) the Debtors are authorized and directed to use Cash Collateral relating to the Prepetition Revolving Collateral to repay the Existing Debt; (b) all other Cash Collateral may be used by the Debtors provided that such use is in accordance with the Budget; and (c) nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Budget.

11.    **Adequate Protection Liens.**    Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Facility Lender Parties in the Prepetition Term Facilities Collateral against any Diminution in Value of such interests in the Prepetition Term Facilities Collateral, the Debtors hereby grant to the Prepetition Term Facility Agents, for the benefit of themselves and the Prepetition Term Facility Lender Parties, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on the DIP Collateral (the "**Adequate Protection Liens**").

12.    **Priority of Adequate Protection Liens.**

(a)    Subject to paragraph 41, the Adequate Protection Liens are valid, automatically and properly perfected, non-avoidable liens that shall be subject and subordinate to

the Carve Out and shall otherwise be junior only to the DIP Liens, the Prepetition Revolving Liens held by the Prepetition Lender in the Prepetition Revolving Collateral, and the Permitted Encumbrances. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

(b)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to (i) section 510(c) of the Bankruptcy Code with respect to the obligations owed to the Prepetition Term Facility Lender Parties, and (ii) sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Adequate Protection Liens.

13.    **Prepetition Term Facility Adequate Protection Priority Claim.** As further adequate protection of the interests of the Prepetition Term Facility Lender Parties in the Prepetition Term Facilities Collateral against any Diminution in Value of such interests in the Prepetition Term Facilities Collateral, the Prepetition Term Facility Agents, on behalf of themselves and the Prepetition Term Facility Lender Parties, are hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed priority administrative expense claim in each of the Cases and any Successor Cases (the "**Prepetition Term Facility Adequate Protection Priority Claim**").

14.    **Priority of the Prepetition Term Facility Adequate Protection Priority Claim.** Except as set forth herein, the Prepetition Term Facility Adequate Protection Priority

30

Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c) (subject to entry of a Final Order), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; *provided, however,* that the Prepetition Term Facility Adequate Protection Priority Claim shall be subject and subordinate to the Carve Out, junior to the DIP Superpriority Claim, and subject to the lien priorities set forth herein.

15. **Professional Fees of Prepetition Term Facility Lender Parties.** As additional adequate protection, the Debtors shall pay the reasonable and documented accrued fees and expenses of (i) Ropes & Gray LLP, in its capacity as counsel to the Prepetition Priming Term Facility Lenders, in an amount not to exceed $55,000 per month, (ii) one local counsel retained by the Prepetition Priming Term Facility Lenders, in an amount not to exceed $10,000 per month, (iii) Thompson Hine LLP, in its capacity as counsel to the Prepetition Priming Term Facility Agent, in an amount not to exceed $20,000 per month, (iv) Shearman & Sterling LLP, in its capacity as counsel to the Prepetition Second Term Facility Agent, in an amount not to exceed $110,000 per month, (v) one local counsel retained by the Prepetition Second Term Facility Agent, in an amount not to exceed $10,000 per month, and (vi) Stout Risius Ross Advisors, LLC, in its capacity as financial advisors to the Prepetition Second Term Facility Agent, in an amount not to exceed $30,000 per month (collectively, the "**Prepetition Term Facility Lender Parties Advisors**"); provided, however, that if a Prepetition Term Facility Lender Parties Advisor's documented fees and expenses in any month (a) are less than its designated limit, then the difference between the designated amount and the actual amount shall roll over to the

31

following month and (b) exceed its designated limit, then any such excess amounts may be paid in subsequent months so long as the Debtors' payment in the subsequent month does not exceed the monthly payment cap (including any rollover from the prior amounts).    Any time professionals for the Prepetition Priming Term Facility Agent and the Prepetition Second Term Facility Agents seek payment of fees and expenses from the Debtors, each professional shall provide copies of its invoices (which shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee, counsel for the DIP Agent, and counsel for a Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors.  Any objections raised by the Debtors, the U.S. Trustee, the DIP Agent or a Committee (if appointed) with respect to the Debtors' payment of the amounts in such invoices must be filed with the Court and served within ten (10) days of such party's receipt of such invoice, and any such objection shall be subject to resolution by the Court.    Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.  In addition, as part of the adequate protection provided to the Prepetition Term Facility Lender Parties hereunder, and subject to the rights preserved in paragraph 41 below, the Debtors are authorized to pay the Prepetition Term Facility Agents pursuant to the Interim Order a sum not greater than $531,000 for pre-Filing Date services rendered to the Prepetition Term Facility Agents.

16.    **Use of Collateral Proceeds.**  As further adequate protection, and subject

32

to the rights preserved in paragraph 41 below, as of and commencing on the date of the Interim Hearing, and subject to the Carve Out, all net proceeds of the DIP Collateral and Prepetition Collateral, including whether sold in the ordinary course, liquidated or otherwise, shall be applied as follows: (i) *first*, to permanently reduce the Existing Debt until indefeasibly paid in full in cash (including provision for contingent obligations); (ii) *second*, to reduce the DIP Obligations until indefeasibly paid in full in cash (including provision for contingent obligations); (iii) *third*, to indefeasibly pay in full in cash all Prepetition Priming Facility Obligations due and owing under the Prepetition Priming Facility Documents, and (iv) *fourth*, to pay the Prepetition Second Term Facilities Obligations due and owing under the Prepetition Second Term Facility Documents.

17. **Adequate Protection Reservation.** Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Term Facility Lender Parties hereunder is insufficient to compensate for any Diminution in Value during the Cases or any Successor Cases. Additionally, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Term Facility Lender Parties to request additional or different forms of adequate protection that, until the DIP Facility and the Existing Debt have been indefeasibly paid in full and in cash (a "**DIP Repayment Event**"), is junior to the DIP Liens and the DIP Obligations.

### Provisions Common to DIP Financing

18. **Amendment of the DIP Documents.** The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto, upon consultation by the Debtors with the Prepetition Term Facility Agents, without further order of the Court if the

33

amendment, modification, or supplement is (a) immaterial or non-adverse to the Debtors and (b) in accordance with the DIP Documents.  It is expressly understood when this Interim Order refers to consultation by the Debtors with the Prepetition Term Facility Agents, that such consultation does not provide the Prepetition Term Facility Agents with approval rights in respect of the subject matter being discussed.  In the case of a material amendment, modification, or supplement to the DIP Documents that is adverse to the Debtors' estates, the Debtors shall provide notice (which shall be provided through electronic mail) to counsel to the Prepetition Term Facility Agents, counsel to a Committee (if appointed) and the U.S. Trustee (collectively, the "**Notice Parties**"), each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement.  If all Notice Parties indicate that they have no objection to the amendment, modification or supplement (or if no objections are timely received), the Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution.  If a Notice Party timely objects to such amendment, modification or supplement, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement.  Any material modification, amendment or supplement that becomes effective in accordance with this paragraph 18 shall be filed with the Court.

19.     **Budget Maintenance.**  The use of borrowings and letters of credit under the DIP Facility shall be in accordance with the Budget and this Interim Order, as described in paragraph 20 below, depicting on a weekly and line by line basis, (a) projected cash receipts, (b) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees of the Debtors' professionals and advisors), asset sales and any other fees and expenses relating to the DIP Documents), (c) projected net cash flow, (d)

projected Borrowing Base and Availability (each as defined in the DIP Agreement), and (e) total available liquidity, each for the term of the DIP Facility that shall be in form and substance satisfactory to, and approved by the DIP Agent in its sole discretion prior to the Closing Date. The Budget shall be updated on the seventh (7th) business day of each month and may be further updated and revised by the Debtors from time to time, in each case, in form and substance approved by the DIP Lender with all changes subject to the satisfaction and approval of the DIP Lender, and upon approval of such revised budget, it shall become the Budget. In connection with delivery of an updated Budget, the Debtors shall clearly identify to the DIP Lender any changes made from the prior Budget, with an appropriate explanation as to the need for all changes or changes in the Debtors' expectations, which changes shall in all respects be satisfactory to the DIP Lender. On the third business day of each week and as provided in the DIP Agreement, the Debtors shall deliver to the DIP Agent and the Prepetition Term Facility Agents a variance analysis with respect to the Debtors' actual cash receipts, collections and disbursements during the prior week measured on a line item basis against the Budget and indicate whether it is in compliance with the Budget and the terms of the DIP Facility, in each case in form and substance satisfactory to the DIP Lender. No updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the "Budget" and the Debtors shall endeavor to consult with the Prepetition Term Facility Agents prior to agreeing to material changes to the Budget, but such consultation by the Debtors will not confer approval rights to the Budget on the Prepetition Term Facility Agents; *provided, however* that in the event that the DIP Agent and the Debtors cannot agree as to an updated, modified or supplemented budget, the prior approved Budget shall continue in effect, with weekly details for any periods to be derived in a manner reasonably satisfactory to the DIP Agent from the budget

DMSLIBRARY01\24647\765001\34313814.v12-5/7/19

prepared by the Debtors (and approved by the DIP Agent in its sole discretion prior to the Closing Date) for these Cases. A copy of any Budget (or updated Budget) shall be delivered to counsel to the Prepetition Term Facility Agents, counsel for a Committee (if appointed) and the U.S. Trustee promptly after (or if) it has been approved by the DIP Agent. In connection with the reconciliation set forth above, the Debtors shall represent that they are, and for all relevant times, expect to be in compliance with the Budget.

20.    **Budget Compliance.** The Debtors shall not, without the consent of the DIP Agent and consultation with the Prepetition Term Facility Agents: (a) pay any expenses or make any other operating disbursements other than as set forth in the Budget, subject to Permitted Variances (as defined in the DIP Agreement) , and (b) permit aggregate cash receipts, for any time period, to be less than the levels set forth in the Budget for the corresponding period, subject to Permitted Variances. The Debtors shall, (i) furnish to the DIP Agent and the Prepetition Term Facility Agents an updated Budget on the seventh Business Day of each month, which Budget (A) shall be supported by details on a facility basis, and (B) shall be compared to actual cash flows on (at least) a weekly basis with proposed revisions (x) on at least a monthly basis, and (y) at least five Business Days prior to the proposed consummation of any Disposition; (ii) on the third Business Day of each week on a rolling basis, deliver to the DIP Agent and the Prepetition Term Facility Agents, a Weekly Report (as defined in the DIP Agreement) reflecting the prior weeks' variances, together with a variance analysis, with respect to Borrowers actual cash receipts, collections and disbursements during the prior week measured on a line item basis against the Budget and indicate whether it is in compliance with the Budget and the terms of the DIP Facility; and (iii) not later than the fifth Business Day immediately prior to any proposed Disposition, the Debtors shall provide the DIP Agent and the Prepetition Term Facility Agents

DMSLIBRARY01\24647\765001\34313814.v12-5/7/19

with a fully updated Budget reflecting on a projected basis such proposed Disposition and its impact, including the impact on the Borrowing Base, the proposed reduced Revolving Loan Commitments in connection with the proposed Disposition, and such other information and reporting as requested by DIP Agent, which information shall also be provided by the Debtors to the Prepetition Term Facility Agents.

21.    **Modification of Automatic Stay.**    The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Prepetition Term Facility Adequate Protection Priority Claim; (b) permit the Debtors to perform such acts as the DIP Agent, the Prepetition Agent and the Prepetition Term Facility Agents each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations under the DIP Documents, the DIP Facility, and this Interim Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Lender and the Prepetition Lender to retain and apply, payments made in accordance with the terms of this Interim Order and the DIP Documents. In particular, the Debtors are authorized and directed to turn over the proceeds of the Prepetition Revolving Collateral to the Prepetition Lender in repayment of the Prepetition Facility.

22.    **Perfection of DIP Liens and Adequate Protection Liens.**    This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other

37

instrument or document which may otherwise be required under the law or regulation of any

jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into

any deposit account control agreement or mortgage) to validate or perfect (in accordance with

applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to evidence

or entitle the DIP Lender and the Prepetition Term Facility Lender Parties to the priorities

granted herein.  Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Term

Facility Agents are authorized to file, in the applicable registries of deeds and other appropriate

public records, as it in its sole discretion deems necessary or advisable, (i) notice of this Interim

Order, and (ii) such financing statements, security agreements, mortgages, leasehold mortgages,

notices of liens, and other similar documents to perfect in accordance with applicable non-

bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and

all such financing statements, mortgages, leasehold mortgages, notices, and other documents

shall be deemed to have been filed or recorded as of the Filing Date; *provided, however*, that no

such filing or recordation shall be necessary or required in order to create or perfect the DIP

Liens or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and

deliver promptly upon demand to the DIP Agent and the Prepetition Term Facility Agents all

such financing statements, mortgages, leasehold mortgages, notices, and other documents as the

DIP Agent or the Prepetition Term Facility Agents may reasonably request.  Each of the DIP

Agent and the Prepetition Term Facility Agents, in its discretion, may file a photocopy of this

Interim Order as a financing statement with any filing or recording office or with any registry of

deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or

similar instrument.  Subject to the entry of the Final Order, to the extent that the Prepetition

Agent or a Prepetition Term Facility Agent is the secured party under any security agreement,

38

mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other collateral documents or relevant Prepetition Term Facility Document, then automatically and without further action, (i) the DIP Agent shall be deemed to be a secured party under such documents, (ii) the DIP Facility, together with any refinancings or replacements thereof, shall be deemed to be secured obligations under such documents, and (iii) the applicable provisions of such documents shall apply to the DIP Facility; all as fully and completely as if the DIP Agent was an original secured party in such documents and the DIP Facility was an original secured obligation in such documents.  To the extent any of the Prepetition Term Facility Agents are listed as loss payee, lender loss payee, mortgagee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party under such documents or to be the loss payee, lender loss payee, mortgagee or additional insured, as applicable.

23.   **No Transfers to HHC Group**.   As an additional form of adequate protection to the Prepetition Term Facility Agents, the Debtors agree not to transfer any cash or property to any member of the HHC Group (as defined in the DIP Agreement) without first obtaining the written consent of the DIP Agent and the Prepetition Term Facility Agents.

24.   **Protections of Rights of DIP Lender, the Prepetition Lender and the Prepetition Term Facility Lender Parties**.

(a)   Unless the DIP Agent, the Prepetition Agent or the Prepetition Term Facility Agents, as applicable, shall have provided their prior written consent, or all DIP Obligations, all Existing Debt (excluding contingent indemnification obligations for which no claim has been asserted) and all Prepetition Term Facilities Obligations have been, or

39

contemporaneously will be, indefeasibly paid in full in cash and the lending commitments under the DIP Facility have terminated, in any of these Cases or any Successor Cases, the Debtors shall neither seek entry of, nor support any motion or application seeking entry of, and otherwise shall object to any motion or application seeking entry of, any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral, Prepetition Revolving Collateral or the Prepetition Term Facilities Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Revolving Liens, the Adequate Protection Liens, and/or the Prepetition Term Facility Adequate Protection Priority Claim; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order; (iii) subject to the entry of a Final Order, except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code; or (iv) any modification of any of the DIP Lender's, the Prepetition Lender's or the Prepetition Term Facility Lender Parties' rights under this Interim Order, the DIP Documents, the Prepetition Loan Documents or the Prepetition Term Facility Documents, as applicable, with respect to any DIP Obligations, Existing Debt or the Prepetition Term Facilities Obligations. It shall be an Event of Default under the DIP Documents and this Interim Order, and terminate the Debtors' use of Cash Collateral, if, in any of these Cases or any Successor Cases, any order is entered granting any of the relief enumerated in provisions (i) through (iv) of

40

the previous sentence.

(b)     No Debtor shall object to the DIP Lender credit bidding up to the full amount of the applicable outstanding DIP Obligations, including any accrued interest and expenses, in any sale of any DIP Collateral, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

25.     **Credit Bidding.**  In connection with any sale process authorized by the Court, (i) the DIP Lender and (ii) subject to entry of a Final Order and to the rights preserved in paragraph 41, the Prepetition Agent, the Prepetition Term Facility Lender Parties, or any assignee or designee of any of the foregoing, shall be authorized to credit bid, consistent with the applicable DIP Documents and/or Prepetition Loan Documents, some or all of their claims for their respective priority collateral (each a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code, subject to the provision of consideration sufficient to satisfy the Carve Out and any senior liens on the collateral that is subject to the Credit Bid except to the extent otherwise agreed by the holder of such senior lien in their sole and absolute discretion.  Each of the Prepetition Lender, the Prepetition Term Facility Lender Parties, and the DIP Lender shall be deemed a "Qualified Bidder" with respect to their rights to acquire all or any of the assets by Credit Bid.

26.     **Proceeds of Subsequent Financing.**  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the DIP Documents at any time prior to the indefeasible repayment in full of all DIP Obligations, and the termination of the DIP Lender's

41

obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the DIP Documents.

27. **Cash Collection.**

(a)     From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral (except as otherwise set forth in the DIP Agreement) that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Loan Documents or Prepetition Term Facility Documents (or in such other accounts as are designated by the DIP Agent from time to time) (collectively, the "**Cash Collection Accounts**"), which accounts (except as otherwise set forth in the DIP Agreement) shall be subject to the sole dominion and control of the DIP Agent; *provided* that upon the occurrence of a DIP Repayment Event, the Debtor and the DIP Agent shall effectuate the assignment of the dominion and control over the Cash Collection Accounts to the Prepetition Term Facility Agents (the "**Transition**").  For the avoidance of doubt, the Prepetition Term Facility Lender Parties shall have a junior and subordinate interest in such Cash Collection Accounts until the occurrence of a DIP Repayment Event, upon which time the Prepetition Term Facility Lender Parties shall have a first priority security interest in such Cash Collection Accounts.

42

(b)     Until the occurrence of a DIP Repayment Event, all proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP Agent for application in accordance with the DIP Documents and this Interim Order.  Specifically, that means the proceeds of the Prepetition Revolving Collateral shall be used to repay the Prepetition Facility and the proceeds of the remaining DIP Collateral shall be applied to repay the DIP Facility. Indefeasible payment shall include the concept that any obligations that the DIP Lender and the Prepetition Lender have with respect to the Carve Out have been fully satisfied.  With respect to repayments of the DIP Facility, the net cash proceeds of the sale of equity or material interests outside the ordinary course of business shall be applied as follows:  *first*, as a permanent reduction of the DIP Obligations made after the Filing Date to the extent that such DIP Obligations exceed the amount owed to the Prepetition Lender as of the Filing Date ("**Incremental DIP Advances**"); *second*, the remaining DIP Obligations shall be permanently reduced dollar for dollar until the DIP Obligations outstanding shall equal the adjusted amount of maximum DIP Obligations (such reduction amounts to be set forth in and consistent with the revised Budget that shall be provided by the Borrowers and reflecting the sale of equity or material assets or such other circumstance resulting in such prepayment) and otherwise consistent with the DIP Agreement.  Upon the occurrence a DIP Repayment Event, all proceeds and other amounts in the Cash Collection Accounts shall be disbursed in accordance with this Interim Order, the Budget and such further orders of the Court.  Unless otherwise agreed to in writing by the DIP Agent, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "**Cash Management Order**").  The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash

Management Order) are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any written direction to that effect from the DIP Agent, and following the Transition, only upon written direction from the Prepetition Term Facility Agents.

28.    **Maintenance of DIP Collateral.**   The Debtors shall take all steps necessary to preserve, maintain and maximize the value of the DIP Collateral, including but not limited to: (a) insure the DIP Collateral as required under the DIP Facilities, the Prepetition Loan Documents or the Prepetition Term Facility Documents, as applicable; and (b) maintain the cash management system which has been agreed to by the DIP Agent.

29.    **Disposition of DIP Collateral.**   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or from any order of this Court) and after prior consultation with the Prepetition Term Facility Agents (which consultation shall not constitute approval rights), except as otherwise permitted by the DIP Documents or otherwise ordered by the Court.

30.    **Termination Date.**   On the Termination Date (as defined herein): (a) all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facility will terminate, other than as required in paragraph 38 with respect to the Carve Out, all treasury and cash management, hedging obligations and bank product obligations constituting Obligations (as defined in the DIP Agreement) shall be cash collateralized, and all letters of credit and bankers' acceptances outstanding that are not otherwise cash collateralized shall be cash collateralized in an amount equal to 102% of the face

44

amount thereof or as otherwise required by the letter of credit issuer; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll obligations (other than severance), sales taxes and other necessary expenses that are deemed critical to keeping the Debtors' business operating subject to the DIP Agent's reasonable consent and all in accordance with the Budget; and (c) upon the expiration of the Remedies Notice Period and satisfaction of the Carve Out funding obligations set forth in paragraph 38, the DIP Agent shall be entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim Order (including paragraph 32). For the purposes of this Interim Order, **Termination Date**" shall mean the "Termination Date" as defined in the DIP Agreement.

31. **Events of Default.** The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (an "**Event of Default**") of this Interim Order: (i) the failure of the Debtors to perform or meet any of the terms, provisions, covenants, or obligations under this Interim Order (which will be subject to a three (3) business day cure period to the extent that the Debtors' failure to comply with the terms, provisions, covenants, or obligations under this Interim Order, which the Debtors failed to comply with, can be reasonably cured during such time period), including the failure to comply with the Milestones (as defined in section 4.27 of the DIP Agreement attached to the DIP Motion), or (ii) the occurrence of an "Event of Default" under the DIP Agreement.

32. **Rights and Remedies Upon Event of Default.**

(a) Immediately upon the occurrence and during the continuation of an Event of Default under any of the DIP Documents or this Interim Order, notwithstanding the

45

provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order, the DIP Agent may declare (any such declaration shall be referred to herein as a "**Termination Declaration**") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable (including the cash collateralization of all outstanding letters of credit in accordance with the DIP Documents to the extent not already done), (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, subject to the obligations with respect to the Carve Out, and (iii) termination of the DIP Facility and any other DIP Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations.  The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Term Facility Agents, counsel to a Committee (if appointed), the Ombudsman (as defined below) and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the DIP Lender is hereby modified so that five (5) days after the date a Termination Declaration is delivered (the "**Remedies Notice Period**") the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Documents and this Interim Order to satisfy the DIP Obligations, DIP Superpriority Claim and DIP Liens, subject to the Carve Out.  During the Remedies Notice Period, the Debtors, a Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court.  Unless the Court orders otherwise, the automatic stay, as to the DIP Lender, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Lender shall be permitted to exercise all remedies set forth herein, in the

46

DIP Documents and as otherwise available at law without further order of or application or motion to the Court.

(b)    Following the occurrence of a DIP Repayment Event, and immediately upon the occurrence and during the continuation of an Cash Collateral Termination Event under this Interim Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order, the Prepetition Term Facility Agents may declare (any such declaration shall be referred to herein as a "**Cash Collateral Termination Declaration**") that the Debtors' authorization to use Cash Collateral has terminated.  The Cash Collateral Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to a Committee (if appointed), and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the Prepetition Term Facility Agents is hereby modified so that five (5) days after the date a Cash Collateral Termination Declaration is delivered (the "**Cash Collateral Remedies Notice Period**") the Prepetition Term Facility Agents shall be entitled to exercise their rights and remedies in accordance with the Prepetition Term Facility Documents and this Interim Order to satisfy the Prepetition Term Facility Obligations, Adequate Protection Superpriority Claim and the Adequate Protection Liens, subject to the Carve Out. During the Cash Collateral Remedies Notice Period, the Debtors, a Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing within the Cash Collateral Remedies Notice Period with the Court.  Unless the Court orders otherwise, the automatic stay, as to the Prepetition Term Facility Agents, shall automatically be terminated at the end of the Cash Collateral Remedies Notice Period without further notice or order.  Upon expiration of the Cash Collateral Remedies Notice Period, the Prepetition Term Facility Agents

47

shall be permitted to exercise all remedies set forth herein, in the Prepetition Term Facility

Documents and as otherwise available at law without further order of or application or motion to

the Court.

33.     **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.**  The DIP Lender (in its capacity as such and in its

capacity as DIP Agent) has acted at arms' length and in good faith in connection with this

Interim Order and is entitled to rely upon the protections granted herein and by section 364(e) of

the Bankruptcy Code.  Based on the findings set forth in this Interim Order and the record made

during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, any

modification, amendment, reversal or vacatur by subsequent order of this Court or any other

court shall not affect the validity and enforceability of any advances previously made or made

hereunder, or lien, claim, or priority authorized or created hereby.

34.     **DIP and Other Expenses; Procedures for Payment of DIP Lender's Professional Fees and Expenses.**  The Debtors are authorized and directed to pay all reasonable

and documented prepetition and postpetition fees and expenses of the DIP Lender in connection

with the DIP Facilities (as such may change from time to time), as provided in the DIP

Documents. Payment of all professional fees and expenses of the DIP Lender addressed in this

Interim Order (including the Revolving Advisors) shall not be subject to allowance by the Court.

Each professional shall provide copies of its invoices (which shall not be required to contain time

entries, but shall include a general, brief description of the nature of the matters for which

services were performed, and which may be redacted or modified to the extent necessary to

delete any information subject to the attorney-client privilege, any information constituting

attorney work product, or any other confidential information, and the provision of such invoices

48

shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee, and counsel for a Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors. Any objections raised by the Debtors, the U.S. Trustee, or a Committee (if appointed) with respect to the Debtors' payment of the amounts in such invoices must be filed with the Court and served within ten (10) days of such party's receipt of such invoice, and any such objection shall be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be added to the DIP Obligations and paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Documents) all reasonable and documented fees, costs and expenses, including fees and expenses of counsel, of the DIP Lender and the Prepetition Lender incurred on or prior to such date without the need for any professional engaged by the DIP Lender or the Prepetition Lender to first deliver a copy of its invoice as provided for herein.

35. **Indemnification.** The Debtors shall indemnify and hold harmless the DIP Lender in accordance with the terms and conditions of the DIP Agreement.

36. **Proofs of Claim.** Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the DIP Lender, the Prepetition Lender and the Prepetition Term Facility Lender Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claims arising under the DIP Documents, the Prepetition Loan Documents or Prepetition Term Facility Documents, as applicable. The Debtors' stipulations, admissions, and acknowledgments and the provisions of this Interim Order shall be deemed to constitute a timely filed proof of claim for the DIP Lender, the Prepetition Lender, and the Prepetition Term Facility Lender

49

Parties with regard to all claims arising under the DIP Documents, the Prepetition Loan Documents or the Prepetition Term Facility Documents, as applicable. Notwithstanding the foregoing, the Prepetition Lender and the Prepetition Term Facility Agents are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) proofs of claim and/or aggregate or master proofs of claim in each of the Cases or Successor Cases for any claim described herein (with any such aggregate or master proof of claim filed in the Cases deemed to be filed in all Cases of the Debtors and asserted against all of the Debtors). Any proof of claim filed by the Prepetition Lender and/or the Prepetition Term Facility Agents shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by the Prepetition Lender or the Prepetition Term Facility Agents. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Lender, the Prepetition Lender and the Prepetition Term Facility Lender Parties. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

      37.    **Rights of Access and Information; Financial Reporting.** The Prepetition Term Facility Agents, as an additional form of adequate protection, shall have the same rights of access, information and financial reporting as afforded to the DIP Lender herein and under the DIP Loan Documents. Without limiting the rights of access and information afforded the DIP Lender under the DIP Documents, the Debtors and their agents and advisors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Lender, the Prepetition Term Facility Agents, and their respective advisors reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents,

50

including, without limitation, (a) upon reasonable advance notice, permit the DIP Agent and/or the Prepetition Term Facility Agents to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral; and (b) reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants, to cooperate, consult with, directly communicate with and provide to the DIP Agent, the Prepetition Term Facility Agents and their respective advisors all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.

38.    **Carve Out.**

(a)    Subject to the terms and conditions set forth herein, the DIP Liens, the DIP Superpriority Claims, the Prepetition Revolving Liens, the Prepetition Term Facilities Liens, the Adequate Protection Liens and the Prepetition Term Facility Adequate Protection Claim shall all be subject to the payment of the following fees and expenses (the "**Carve Out**"):

(i)    Allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court, and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

(ii)    on account of unpaid Court-allowed fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000,

(iii)    to the extent allowed at any time, whether by interim or

51

final order, procedural order, or any other order of the Court, all accrued and unpaid fees, costs and expenses (including any sale transaction fee payable out of the proceeds of a consummated sale, and after indefeasible payment in full of the DIP Obligations, any restructuring or success based fee) ("**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors (the "**Debtor Professionals**"), any official committee of unsecured creditors appointed in the Cases (the "**Committee**" and, such retained persons or firms, the "**Committee Professionals**"), and any patient care ombudsman appointed in the Cases (the "**Ombudsman**" and, together with the Debtor Professionals and the Committee Professionals, the "**Professional Persons**") at any time prior to the delivery of a Carve Out Trigger Notice; *provided, however*, that each Professional Person must be retained under sections 327, 328, 333 or 1103 of the Bankruptcy Code, as applicable, at any time, whether prior to or after the delivery of a Carve Out Trigger Notice; *provided further* that the obligations of the DIP Lender with respect to the Carve Out for legal fees, costs and expenses prior to the delivery of the Carve Out Trigger Notice (as defined herein) shall be limited in all respects to the aggregate amount required to be funded into the Professional Fee Escrow Account (as defined herein) as set forth herein prior to the earlier of (a) the occurrence of the DIP Repayment Event , and (b) the date of the delivery of a Carve Out Trigger Notice. (such amount shall be referred to as the "**DIP Lender Carve Out Amount**",

> (iv)   to the extent allowed at any time, whether by interim or final order, procedural order, or any other order of the Court, Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $350,000 incurred after the delivery of a Carve Out Trigger Notice (the amount set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"); );

> (v)   The term "**Carve Out Trigger Notice**" shall mean a

written notice delivered by e-mail transmission (or other electronic means) by the DIP Agent or, following a DIP Repayment Event and termination of the DIP Facility, the Prepetition Term Facility Agents, to the Debtors, the Debtors' lead restructuring counsel, the U.S. Trustee and counsel to the Committee, if any, which notice may be delivered following the occurrence and during the continuation of an Event of Default, or following the DIP Repayment Event  during the continuation of a Cash Collateral Termination Event (as defined below), stating that the Post-Carve Out Trigger Notice Cap has been invoked; *provided*, that until a DIP Repayment Event has occurred, the Carve Out Trigger Notice shall be delivered within three (3) business day after a determination by (i) the Debtors and the DIP Agent that there is no remaining availability under the DIP Facility and (ii) the DIP Agent that no further advances shall be made to the Debtors such that the funding of the Professional Fee Escrow Account (as defined herein) cannot be made;

(b)    On the Monday of each week  after the week of the Filing Date, and subject to the Budget, unless otherwise agreed to by the DIP Agent, the Debtors shall cause to be transferred into an escrow account (the "**Professional Fee Escrow Account**") with an escrow agent selected by the Debtors an amount equal to the  estimate of the fees and expenses of such Professional Persons set forth in the Budget for that week. If the Budget does not list the Professional Person, or the weekly amount for such Professional Person, then there shall be no obligation to fund the Professional Fee Escrow Account for such Professional Person. To the extent the budgeted amount deposited therein for such Professional Person for the prior month exceeds the actual fees and expenses incurred by such Professional Person for the prior month (the "**Excess Monthly Funding Amount**"), then the Excess Monthly Funding Amount shall be applied towards satisfaction of the Professional Fee Escrow Account funding obligations of the

53

Debtors for such Professional Person for the subsequent month.    Except as provided herein, the DIP Lender's obligations to fund the DIP Lender Carve Out Amount shall terminate upon the earlier of (a) the occurrence of the DIP Repayment Event and (b) delivery by the DIP Agent of a Carve Out Trigger Notice. Notwithstanding anything to the contrary herein, upon the delivery of a Carve Out Trigger Notice, the DIP Agent shall be required to transfer cash that is swept, received or foreclosed upon into the Professional Fee Escrow Account in an amount equal to (x) any unfunded portion of the Carve Out that was required to be funded to the Professional Fee Escrow Account for the period prior to the delivery of the Carve Out Trigger Notice, after taking into account any applicable Excess Monthly Funding Amount that may be owing for the period prior to the delivery of the Carve Out Trigger Notice, less (y) any unused retainer held by such Profession Persons (the "Potential Stub Payment");    For the avoidance of doubt, none of the Prepetition Term Facility Lender Parties shall be responsible for funding the Professional Fee Escrow Account.  For the avoidance of doubt, the DIP Lender Carve Out Amount shall not apply in the event that the DIP Obligations are indefeasibly paid in full in cash;

(c)    The Prepetition Term Facility Lender Parties shall not be, and, except for funding the Professional Fee Escrow Account, none of the DIP Lender or the Prepetition Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with the DIP Lender Carve Out Amount.  Nothing contained herein or otherwise shall be construed to obligate either of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Lender Parties in any way to pay compensation to or to reimburse expenses of any Professional Persons, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  Upon receipt of the Carve Out Trigger Notice, the Debtors shall provide notice by email to all Professional

54

Persons, at the email addresses set forth in each Professional Person's notice of appearance filed with the Court (or, if there is no such notice of appearance, at such Professional Person's last known email address) informing them that such Carve Out Trigger Notice has been received and further advising them that the Debtors' ability to pay such Professional Persons is subject to and limited by the Carve Out. Until such time as a DIP Repayment Event has occurred, Allowed Professional Fees of any Professional Person relating to the period prior to the delivery of a Carve Out Trigger Notice shall be paid solely from the Professional Fee Escrow Account and any retainer, as applicable. After the occurrence of the DIP Repayment Event, Allowed Professional Fees of any Professional Fees relating to the period prior to the delivery of the Carve Out Trigger Notice shall first be paid from the Professional Fee Escrow Account and then paid in full from the proceeds of the Prepetition Facilities Collateral and/or the collateral securing the Adequate Protection Liens but solely as provided for in the Budget as set forth in Paragraph 49 hereof, and the Debtors shall no longer be required to fund the Professional Fee Escrow Account.

(d) No advances under the DIP Facility, nor any Cash Collateral, nor any portion of the Carve Out may be used to prosecute actions, claims, demands or causes of action against the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Lender Parties or to object to or contest in any manner, or to raise any defense in any pleading as to the validity, perfection, priority or enforceability of the Existing Debt, the Prepetition Revolving Liens, the Prepetition Term Facilities Liens and security interests in the collateral securing the Existing Debt, the DIP Liens and security interests granted to the DIP Lender in connection with the DIP Facility, or the DIP Obligations, or the Prepetition Term Facilities Liens and security interests in the Prepetition Term Facilities Collateral securing the Prepetition Term Facilities

55

Obligations; *provided, however*, up to $20,000 of the Professional Fee Escrow Account may be used by the Committee (if appointed) to inquire into and investigate such matters.

(e)    Upon entry of the Final Order, other than the Carve Out, the DIP Facility shall not otherwise be subject to any carve-out for Professional Fees and no other costs or expenses of any kind, nature or description whatsoever shall be imposed against the DIP Collateral (or the Prepetition Lender or the DIP Lender with respect to the Prepetition Revolving Collateral or the DIP Collateral) under sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise.

(f)    For the avoidance of doubt nothing contained in the forgoing provisions shall be deemed or construed to limit or prevent the Debtors from paying Allowed Professional Fees of Professional Persons prior to the delivery of a Carve Out Trigger Notice; provided that Professional Persons shall in the first instance be paid from any unused retainers and then from amounts deposited in the Professional Fee Escrow Account.

(g)    All amounts related to the Carve Out (other than amounts already funded into the Professional Fee Escrow Account) including without limitation the Potential Stub Payment  shall be reserved for by the DIP Agent and shall reduce the availability under the DIP Facility.

39.    **Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out.** Except as provided in paragraph 38(d) hereof, the DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Lender's, the Prepetition Lender's or the Prepetition Term Facility Lender Parties' permitted enforcement or realization upon any of the DIP Collateral or Prepetition Revolving Collateral; (b) using or seeking to use Cash Collateral or selling or

56

otherwise disposing of DIP Collateral without the consent of the DIP Agent or as permitted by the DIP Documents, or following the occurrence of a DIP Repayment Event, using or seeking to use Cash Collateral or selling or otherwise disposing of Prepetition Collateral without the consent of the Prepetition Term Facility Agents or as permitted by the Prepetition Term Facility Documents; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent, or following a DIP Repayment Event, using or seeking to use any insurance proceeds constituting Prepetition Collateral without the consent of the Prepetition Term Facility Agents; (d) incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Agent, except to the extent permitted under the DIP Agreement; (e) seeking to amend or modify any of the rights granted to the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Lender Parties under this Interim Order, the DIP Documents, the Prepetition Loan Documents or the Prepetition Term Facility Documents, including seeking to use Cash Collateral and/or DIP Collateral or Prepetition Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition Revolving Liens, Existing Debt, DIP Collateral (including Cash Collateral) or, as the case may be, the Prepetition Revolving Collateral, or the Prepetition Term Facilities Liens, the Prepetition Term Facilities Obligations, or the Prepetition Term Facilities Collateral or any other claims or liens, held by or on behalf of either of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Lender Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Lender, the Prepetition Lender, the Prepetition Term Facility Lender Parties, or any of their respective affiliates, agents, attorneys, advisors,

57

professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Revolving Liens, the Existing Debt, the Prepetition Term Facilities Liens, the Prepetition Term Facilities Obligations, or any other rights or interests of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Lender Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations, the Existing Debt or the Prepetition Term Facilities Obligations.

40.    **Payment of Compensation.**    Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Agents to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default or a DIP Repayment Event has not occurred, and in accordance with paragraph 38(f), nothing contained herein shall be deemed or construed to limit or prevent the Debtors from paying Allowed Professional Fees of Professional Persons prior to the delivery of a Carve Out Trigger Notice; provided that Professional Persons shall in the first instance be paid from any unused retainers and then from amounts deposited in the Professional Fee Escrow Account.

41.    **Effect of Stipulations on Third Parties.**

(a)    *Generally.*    The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, a Committee (if

58

appointed), unless, and solely to the extent that, a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge (as defined below) (other than the Debtors, as to which any Challenge is irrevocably waived and relinquished) (i) has timely filed the pleadings, and timely commenced the proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 41 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or pleading commencing a proceeding or other contested matter, a "**Challenge**") by no later than (A) for a Committee, (if appointed), sixty (60) days from the date of formation of a Committee (if appointed), or (B) seventy-five (75) days following the entry of the Interim Order for any other party in interest with requisite standing (the earlier to occur of (A) and (B), the "**Challenge Deadline**"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Agent (with respect to the Prepetition Loan Documents), the Prepetition Priming Term Facility Agent (with respect to the Prepetition Priming Term Facility Documents), or the Prepetition Second Term Facility Agents (with respect to the Prepetition Second Term Facility Documents), as applicable, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion

59

of the Case to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause, and (2) if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge.

(b)     ***Binding Effect.*** To the extent no Challenge is properly and timely commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a properly and timely filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above. To the extent any such Challenge proceeding is properly and timely commenced, subject to entry of the Final Order, the Prepetition Lender, the Prepetition Priming Term Facility Agent or the Prepetition Second Term Facility Agents, as applicable, shall be entitled, subject to paragraph 41(a) herein, to payment of the reasonable related costs and expenses, including, but not limited

60

to reasonable attorneys' fees, incurred under the Prepetition Loan Documents or the Prepetition Term Facility Documents, as applicable, in defending themselves in any such proceeding as adequate protection. Upon a successful Challenge brought pursuant to this paragraph 41, the Court may fashion any appropriate remedy.

42.     **No Third Party Rights.**  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

43.     **Section 506(c) Claims.**  Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, the Prepetition Agent or the Prepetition Term Facility Lender Parties (as applicable), the DIP Collateral, the Prepetition Revolving Collateral, or the Prepetition Term Facility Collateral pursuant to sections 506(c) and 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Lender Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

44.     **No Marshaling/Applications of Proceeds.**  Subject to entry of a Final Order, the DIP Lender, the Prepetition Lender and the Prepetition Term Facility Lender Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, the Prepetition Revolving Collateral or the Prepetition Term Facilities Collateral, as the case may be.

45.     **Section 552(b).**  Subject to entry of a Final Order, the Prepetition Lender and the Prepetition Term Facility Lender Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section

552(b) of the Bankruptcy Code shall not apply to the Prepetition Lender or the Prepetition Term Facility Lender Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Revolving Collateral or the Prepetition Term Facilities Collateral.

46.    **Access to Collateral.**  Upon expiration of the Remedies Notice Period, and absent entry of an order to the contrary, the DIP Lender and the Prepetition Lender (and upon a DIP Repayment Event, the Prepetition Term Facility Agents) shall be permitted to (a) access and recover any and all DIP Collateral, and (b) subject to providing one (1) day advanced notice to the lessor, enter onto any leased premises of any Debtor and exercise all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the DIP Collateral; *provided, however,* that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease.  Nothing herein shall require the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Agents to assume any lease as a condition to the rights afforded in this paragraph.

47.    **Limits on Lender Liability.**  Subject to entry of a Final Order, nothing in this Interim Order, any of the DIP Documents, the Prepetition Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Agents of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases.  The DIP Lender, the Prepetition Lender and the Prepetition Term Facility Agents shall not, solely by reason of having made loans under the DIP Facility or taken action pursuant to the terms of this Interim Order, be

DMSLIBRARY01\24647\765001\34313814.v12-5/7/19

deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Agents of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

48.  **Insurance Proceeds and Policies.**  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Lender, the Prepetition Lender and the Prepetition Term Facility Agents shall be, and shall be deemed to be, without any further action or notice, named as additional insured, lender loss payee, mortgagee and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral or Prepetition Revolving Collateral or the Prepetition Collateral (which shall not include directors and officers policies).

49.  **Cash Collateral Termination Events.**  Following a DIP Repayment Event, upon written notice from the Prepetition Term Facility Agents to the Debtors and the Committee (if any) (e-mail to suffice), the occurrence and continuation of any of the following (unless waived by the Prepetition Term Facility Agents) shall constitute a "**Cash Collateral Termination Event**" under this Interim Order:

(i)  if by the date of the DIP Repayment Event, the Debtors, the Prepetition Term Facility Agents and the Committee, if any, have not agreed to the terms and conditions of the Debtors' continued consensual use of Cash Collateral, the adequate protection

DMSLIBRARY01\24647\765001\34313814.v12-5/7/19

to be provided to the Prepetition Term Facility Agents, and the terms of a wind down budget (the "Wind Down Budget").  Upon (i) the agreement of the Debtors, the Prepetition Term Facility Agents and the Committee, if any, adequate protection for the continued consensual use of Cash Collateral and the Wind Down Budget, or (ii) approval of the non-consensual use of Cash Collateral and the Wind Down Budget by the Court following any emergency hearing pursuant to paragraph 33(b) hereto, the Wind Down Budget shall become the "Budget" for purposes of this Interim Order;

(ii)    other than in connection with payment in full in cash of the Prepetition Term Facilities Obligations, the bringing of a motion, taking of any action or the filing of any plan of reorganization or liquidation or disclosure statement attendant thereto by or on behalf of the Debtors in the Cases: (a) to obtain postpetition financing, absent the consent of the Prepetition Term Facility Agents; (b) to grant any lien other than any Permitted Prior Liens, absent the consent of the Prepetition Term Facility Agents; or (c) to use Cash Collateral in manner that is inconsistent with the terms of this Interim Order or the Budget;

(iii)    the Debtors' failure to comply with the Budget in accordance with this Interim Order;

(iv)    the entry of an order amending, supplementing, staying, vacating or otherwise modifying the Prepetition Term Facilities Documents or this Interim Order without the written consent of the Prepetition Term Facility Agents or the filing of a motion to reconsider by the Debtors;

(v)    the allowance of any claim or claims under section 506(c) of the Bankruptcy Code against the Prepetition Term Facilities Collateral;

(vi)    the entry of an order in the Cases granting any other superpriority

64

administrative claim or lien equal or superior to that granted to the Prepetition Term Facility Agents without the prior written consent of the Prepetition Term Facility Agents; or

(vii)    the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on any Prepetition Term Facilities Collateral having a fair market value greater than $50,000.

For the avoidance of doubt, the Prepetition Term Facility Agents shall have no right to terminate the Debtors' use of Cash Collateral prior to the indefeasible payment in full in cash (including, in each case, provision for contingent obligations) of the Existing Debt and the DIP Obligations and the DIP Facility has been terminated.

50.    **Proposed Sale Transactions.**

(i)    the Debtors, their advisors and their investment bankers shall use commercially reasonable efforts to keep the DIP Lender and the Prepetition Term Facility Agents fully informed of all material activities and developments with respect to offers, bids, negotiations with third-parties, and analyses of any proposed transaction for the sale, transfer or acquisition of any Debtor or Debtors, or material assets of any Debtor or Debtors (a "**Sale Transaction**");

(ii)    the Debtors shall, as promptly as reasonably practicable, provide to the DIP Agent, the Prepetition Term Facility Agents and their respective counsel copies of all bona fide written proposals, term sheets in connection with any proposed Sale Transaction and other material correspondence and documentation in such regard promptly following receipt or sending thereof by the Debtors;

(iii)    the Debtors shall use commercially reasonable efforts to  keep the DIP

65

Agent and the Prepetition Term Facility Agents reasonably informed of negotiations, terms and any analyses performed with respect to such proposed Sale Transactions;

(iv)    with respect to any bona fide proposed Sale Transaction (subject to compliance with related confidentiality requirements), the Debtors shall provide to the DIP Agent, the Prepetition Term Facility Agents and their respective counsel documentation believed to be close to final drafts of acquisition documents and proposed bankruptcy motions and orders (and other drafts as may reasonably be requested by the DIP Agent or the Prepetition Term Facility Agents) prepared in connection with the contemplated consummation of any proposed Sale Transaction;

(v)    the Debtors shall, as promptly as reasonably practicable, and in no event later than two (2) business days following actual knowledge or receipt thereof provide to the DIP Agent, the Prepetition Term Facility Agents and their respective counsel (A) a complete description, with copies of all relevant documentation, of any material communication to or from any Governmental Entity, including any from any licensing entity, and (B); all notices of setoffs, recoupments or any other settlements of amounts owed to or from Medicare;

(vi)    the Debtors shall consent and direct any financial advisor or investment bank advising on a proposed Sale Transaction, to participate in direct communications with the DIP Agent and the Prepetition Term Facility Agents (or their respective designees) upon reasonable requests made by the DIP Agent or the Prepetition Term Facility Agents, which shall include counsel to the Debtors, the DIP Agent and the Prepetition Term Facility Agents, as appropriate, and

(vii)    the Debtors shall inform the DIP Lender and the Prepetition Term Facility Agents of any professional engagements and outsourcing of services as promptly as reasonably

66

practicable.

51.    **Joint and Several Liability.**   Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors (including Hospital Acquisition and Holdings, as guarantors) shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

52.    **No Superior Rights of Reclamation.**   Subject to entry of a Final Order, based on the findings and rulings herein regarding the integrated nature of the DIP Facility and the Prepetition Loan Documents, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claim had with the Prepetition Revolving Liens.

53.    **Rights Preserved.**   Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Agents with respect to any person or entity other than Debtors or with respect to any other collateral owned or held by any person or entity other than the Debtors.  The rights of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Agents are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, without limitation, of: (a) the DIP Lender's, the Prepetition Lender's or the Prepetition Term Facility Agents' respective right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of the DIP Lender, the

67

Prepetition Lender and/or the Prepetition Term Facility Agents under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) seek modification of the grant of adequate protection provided under this Interim Order so as to provide different or additional adequate protection at any time, (iii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iv) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of either of the DIP Lender, the Prepetition Lender or the Prepetition Term Facility Agents.

54.    **No Waiver by Failure to Seek Relief.**  The failure of the DIP Lender or Prepetition Lender or the Prepetition Term Facility Agents to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Loan Documents, the Prepetition Term Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lender, the Prepetition Lender, a Committee (if appointed) or any party in interest.

55.    **Binding Effect of Interim Order.**  Subject to paragraph 41, immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, the Prepetition Lender, the Prepetition Term Facility Lender Parties, all other creditors of any of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any

68

Case or Successor Case.

56.     **No Modification of Interim Order.**  Until and unless a DIP Repayment Event has occurred and, in the case of the Prepetition Term Facility Agents, until the indefeasible payment in full in cash of the Prepetition Term Facilities Obligations, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent, the Prepetition Agent, or the Prepetition Term Facility Agents (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c) (subject to entry of a Final Order), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim or Prepetition Term Facility Adequate Protection Priority Claim, other than the Carve Out; (b) without the prior written consent of the DIP Agent or the Prepetition Agent, for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Revolving Collateral in a manner inconsistent with this Interim Order or the Final Order, as applicable; (c) without the prior written consent of the DIP Agent or the Prepetition Term Facility Agents, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Agent and the Prepetition Term Facility Agents, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Revolving Liens, the Prepetition Term Facilities Liens or Adequate Protection Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as

provided in the foregoing, of the DIP Agent, the Prepetition Agent or the Prepetition Term Facility Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent, the Prepetition Agent or the Prepetition Term Facility Agents.

57.    **Interim Order Controls.**  In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

58.    **Discharge.**  The DIP Obligations, and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Lender and the Prepetition Lender, as applicable, has otherwise agreed in writing. None of the Debtors shall propose or support any plan of reorganization, or order confirming such plan, that is not conditioned upon the DIP Obligations being indefeasibly paid in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization) (a "**Prohibited Plan**") without the written consent of each of the DIP Lender and the Prepetition Lender, as applicable.  For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

59.    **Survival.**  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant

70

to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Lender, the Prepetition Lender and the Prepetition Term Facility Lender Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until: (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated; and (ii) in respect of the Prepetition Facility, all of the Existing Debt pursuant to the Prepetition Loan Documents and this Interim Order, have been indefeasibly paid in full in cash. The terms and provisions concerning the indemnification of the DIP Lender shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment in full in cash of the DIP Obligations.

60.    **Final Hearing.** The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for [ May 29 ], 2019, at [ 11 :00 a.m. (ET) before the Honorable Brendan L. Shannon, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware. On or before [ May 20 ], 2019, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party

71

which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on May 22, 2019, at 4:00 p.m. (ET), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, 2001 K Street NW, Washington, DC 20006, Attn: Scott L. Alberino and Kevin M. Eide, and 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Link Schultz; (ii) local counsel to the Debtors, Young, Conaway, Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: M. Blake Cleary; (iii) counsel to the DIP Agent and the Prepetition Agent, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attn: Arthur Steinberg, and The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington DE 19801, Attn:  Frederick B. Rosner, Esq.; (iv) counsel to the Prepetition Second Term Facility Agents, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022, Attn: Ned Schodek; (v) counsel to the Prepetition Priming Term Facility Lenders, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Attn: Matthew Roose; (vi) counsel to the Committee (if appointed); and (vii) ~~[INSERT UST]~~ Benjamin A. Hackman, Esquire, Office of the United States Trustee, 844 N. King Street, Room 2207, Lockbox 35, Wilmington DE, 19801.

61.     ***Nunc Pro Tunc* Effect of this Interim Order.**  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Filing Date immediately upon execution thereof.

72

62.    **Retention of Jurisdiction.**  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Interim Order.

Dated:  May 8, 2019
       Wilmington, Delaware

                                          BRENDAN L. SHANNON
                                          UNITED STATES BANKRUPTCY JUDGE

DMSLIBRARY01\24647\765001\34313814.v12-5/7/19