## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Hospital Acquisition LLC, *et. al.*,[1] | Case No. 19-10998-BLS |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE UNITED STATES TO NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS AND PROPOSED CURE COST WITH RESPECT THERETO**

The United States of America (United States), on behalf of the Department of Health and Human Services (HHS), acting through its designated component, the Centers for Medicare & Medicaid Services (CMS), objects to the *Notice of Executory Contracts and Unexpired Leases That May Be Assumed and Assigned in Connection with the Sale of the Debtors' Assets and Proposed Cure Costs with Respect Thereto* (Dkt. No. 392) (Cure Notice).  In support of its objection, the United States respectfully represents:

### BACKGROUND

1.      On May 6 and 7, 2019, (Petition Dates) Hospital Acquisition LLC and many of its affiliates and subsidiaries (collectively LifeCare) filed for chapter 11 bankruptcy protection in the Bankruptcy Court for the District of Delaware.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Hospital Acquisition LLC (3232); Hospital Acquisition Intermediate Sub LLC (9609); LifeCare Holdings LLC (f/k/a Hospital Acquisition Sub I LLC) (6612); LifeCare Behavioral Health Hospital of Pittsburgh LLC (9835); New LifeCare Hospitals LLC (7959); New LifeCare Hospitals of Dayton LLC (2592); New LifeCare Hospitals of Milwaukee LLC (2428); New LifeCare Hospitals of South Texas LLC (4237); Hospital Acquisition Sub II LLC (7920); New LifeCare Management Services LLC (4310); New LifeCare REIT 1 LLC (9849); New LifeCare Hospitals of Mechanicsburg LLC (0174); New Pittsburgh Specialty Hospital LLC (7592); LifeCare Vascular Services, LLC (5864); New LifeCare Hospitals of North Texas LLC (4279); New LifeCare Hospitals of Chester County LLC (1116); New LifeCare Hospitals of Northern Nevada LLC (4534); New San Antonio Specialty Hospital LLC (2614); New LifeCare Hospitals of North Carolina LLC (7257); New LifeCare Hospitals of Pittsburgh LLC (8759); New NextCare Specialty Hospital of Denver LLC (6416); Hospital Acquisition MI LLC (4982); LifeCare Pharmacy Services LLC (3733); New LifeCare REIT 2 LLC (1315); New LifeCare Hospitals at Tenaya LLC (6891); and New LifeCare Hospitals of Sarasota LLC (8094).

2.      On June 6, 2019, LifeCare filed the Sale Motion.[2]  Under the Sale Motion, LifeCare seeks to sell a portion of or substantially all of its assets.  On June 27, 2019, the bankruptcy court entered the Bid Procedures Order,[3] establishing the date by which LifeCare must file its notice of executory contracts and leases that may be assumed and assigned to a purchaser.

3.      Pursuant to the Bid Procedures Order, LifeCare filed the Cure Notice.  The Cure Notice acknowledges that New Lifecare Management Services, LLC has a contract with CMS.  Cure Notice, Ex. 1 (describing the contract as "Accreditation / Licensing / Tax / State Matters / Dues & Subscription").  The Cure Notice fails to note that other LifeCare entities[4] have Medicare provider agreements with CMS (Provider Agreements).  Decl. of Nancy V. O'Connnor (O'Connor Decl.) at ¶¶ 4 & 10, attached as Exhibit 1.  Additionally, two LifeCare entities[5] have Part B supplier agreements (Supplier Agreements) with CMS.  Id.

4.      On July 18, 2019, LifeCare filed its Notice of Stalking Horse Bid[6] that included an Asset Purchase Agreement between LifeCare and PAM Squared LLC (PAM Squared APA).  Under the PAM SQUARED APA, PAM Squared LLC (PAM Squared) will acquire the assets of

---

[2] Debtors' Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order Or Orders Approving the Sale of the Assets (Dkt. No. 227).

[3] Order Establishing Bidding Procedures Relating to the Sales of All or a Portion of the Debtors' Assets (Dkt. No. 298).

[4] New LifeCare Hospitals of Milwaukee LLC; New Life Care Hospitals of North Carolina LLC; New LifeCare Hospitals of Dayton LLC; New LifeCare Hospitals of Chester County LLC; New LifeCare Hospitals LLC; New LifeCare Hospitals of Pittsburgh; New LifeCare Hospitals of Northern Nevada; New LifeCare Hospitals of Tenaya LLC; New LifeCare Hospitals of Sarasota LLC; New LifeCare Hospitals of North Texas; New NextCare Specialty Hospital of Denver LLC; LifeCare Behavioral Health Hospital of Pittsburgh LLC; and New San Antonio Specialty Hospital LLC.

[5] New LifeCare Hospitals of Tenaya LLC; and New NextCare Specialty Hospital of Denver LLC.

[6] Notice of Stalking Horse Bid in Connection With Debtors' motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Assets (Dkt. No. 393).

eight (8) LifeCare entities (PAM Squared Bid-For Facilities).[7]  Notice of Stalking Horse Bid, Ex. A at Ex. A.  The PAM SQUARED APA provides that LifeCare will transfer the Provider Agreements for the PAM Squared Bid-For Facilities to PAM Squared.  Notice of Stalking Horse Bid, Ex. A at § 2.1(i).  Pursuant to the PAM SQUARED APA, PAM Squared will also assume all "claims, recoupments, set-offs, adjustments and other liabilities relating to the" Provider Agreements for the PAM Squared Bid-For Facilities.  Notice of Stalking Horse Bid, Ex. A at § 2.3(g).  All of the PAM Squared Bid-For Facilities have Provider Agreements with CMS.  O'Connor Decl. at ¶¶ 4 & 10.  Two of the PAM Squared Bid-For Facilities also have Supplier Agreements with CMS.  Id.  This Court subsequently approved PAM Squared as a stalking horse bidder.  Dkt. No. 414.

5.    On July 31, 2019, LifeCare filed the LifeCare 2.0 LLC Certification of Counsel,[8] seeking an order to have LifeCare 2.0 LLC (LifeCare 2.0) designated as an additional stalking horse bidder and including, an Asset Purchase Agreement by and among LifeCare Holdings LLC and LifeCare 2.0 LLC (LifeCare 2.0 APA).  Under the LifeCare 2.0 APA, LifeCare 2.0 will acquire the assets of three (3) LifeCare entities (LifeCare 2.0 Bid-For Facilities).[9]  LifeCare 2.0 LLC Certification of Counsel, Ex. 1 at Ex. A at Ex. A.  The LifeCare 2.0 APA provides that LifeCare will transfer the Provider Agreements for the LifeCare 2.0 Bid-For Facilities to LifeCare 2.0.  LifeCare 2.0 Certification of Counsel, Ex. 1 at Ex. A at § 2.1(h).  Pursuant to the

---

[7] New LifeCare Hospitals LLC; New LifeCare Hospitals of Northern Nevada LLC; New LifeCare Hospitals of Dayton LLC; New NextCare Specialty Hospital of Denver LLC; New LifeCare Hospitals of North Carolina LLC; New San Antonio Specialty Hospital LLC; New LifeCare Hospitals at Tenaya LLC; and New LifeCare Hospitals of Sarasota LLC.

[8] Certification of Counsel Regarding Proposed Order Authorizing and Approving (I) The Selection of LifeCare 2.0, LLC as the Stalking Horse Bidder for Certain of the Debtors' Assets and (II) Related Bidding Protections (Dkt. No. 463).

[9] LifeCare Behavioral Health Hospital of Pittsburgh LLC; New LifeCare Hospitals of North Texas LLC; and New LifeCare Hospitals of Pittsburg LLC.

LifeCare 2.0 APA, LifeCare 2.0 will will also assume all "claims, recoupments, set-offs, adjustments and other liabilities relating to the" Provider Agreements for the LifeCare 2.0 Bid-For Facilities.  LifeCare 2.0 Certification of Counsel Ex. 1 at Ex. A at § 2.4(g).  All of the LifeCare 2.0 Bid-For Facilities have Provider Agreements with CMS.  O'Connor Decl. at ¶¶ 4 & 10.  This Court subsequently approved LifeCare 2.0 as a stalking horse bidder.  Dkt. No. 443.

6.    Although, according to the Cure Notice (at Ex. 1), New LifeCare Management Services LLC owes CMS no cure, the Cure Notice omits cure amounts for Provider Agreements with LifeCare entities. [10]  CMS currently estimates that the following PAM Squared Bid-For Facilities owe the following overpayments to CMS for services provided CMS beneficiaries (Overpayments):

| LifeCare Entity | Amount of Overpayment |
|---|---|
| New NextCare Specialty Hospital of Denver LLC | $1,923.48 |
| New LifeCare Hospitals of Sarasota LLC | $138,711.49 |
| New LifeCare Hospitals LLC | $6,744,054.50 |
| New LifeCare Hospitals of Northern Nevada LLC | $23,838.49 |
| New LifeCare Hospitals of North Carolina LLC | $27,118.07 |
| New San Antonio Specialty Hospital LLC | $15,585.03 |
| Total | $6,951,231.06 |

O'Connor Decl. at ¶10.  The other PAM Squared Bid-For Facilities owe CMS no known Overpayments.  Id.

7.    CMS estimates that the following LifeCare 2.0 Bid-For Facilities owe the following Overpayments:

| LifeCare Entity | Amount of Overpayment |
|---|---|
| New LifeCare Hospitals of Pittsburgh LLC | $1,031,138.71 |
| New LifeCare Hospitals of North Texas LLC | $162,075.33 |
| LifeCare Behavioral Heatlh Hospital of Pittsburg LLC | $1,615.16 |
| Total | $1,194,829.20 |

---

[10] This Objection encompasses these Provider Agreements to the extent LifeCare intended to capture these Provider Agreements with the Cure Notice and to avoid any inconsistencies between the Cure Notice and the PAM Squared APA and LifeCare 2.0 APA, as discussed, *surpa* at ¶¶ 4-5.

O'Connor Decl. at ¶ 10.  The other Remaining CMS Provider Facilities[11] have no known

Overpayments.  Id.

## REGULATORY BACKGROUND

8.      As noted above, *supra* ¶3, certain LifeCare entities are party to Provider

Agreements or Supplier Agreements with the Secretary for HHS (Secretary), acting through

CMS, to receive payment for services provided to Medicare beneficiaries under the Social

Security Act, 42 U.S.C. § 1395-1395lll (Medicare Statute) and 42 C.F.R. Chapter IV and CMS

policies and procedures (collectively, Medicare Program).  Under the Medicare Program,

LifeCare submits claims to CMS for covered services furnished to Medicare beneficiaries.

9.      The Secretary contracts with Medicare Administrative Contractors (MACs)

(formerly called fiscal intermediaries), typically private insurance companies, to administer

payment to Medicare providers.  MACs make interim payments to providers under the Medicare

Program and perform the day-to-day Medicare administration, *e.g.*, audit and reimbursement

activities.  42 U.S.C. § 1395kk-1; 42 C.F.R.  §§ 421.400–.404. MACs may determine

overpayments through the day-to-day administration of the Medicare program. 42 C.F.R. §§

405.301-380.

10.      Within five months after the end of the cost year, a provider must submit a report

to the MAC of its costs to verify the actual reimbursements owed it for the past cost year.  42

C.F.R. §§ 413.1, 413.20, 413.24(f); *see* 42 U.S.C. §§ 1395g and 1395hh (giving the Secretary

authority to require submission of cost reports).  Once submitted, the MAC audits the cost report

and determines the provider's actual, rather than estimated, reimbursement for the year, which

can result in overpayments or underpayments.  42 U.S.C. §§ 1395g; 1395x(v)(1)(A)(ii); 42

---

[11] New LifeCare Hospitals of Milwaukee LLC; and New LifeCare Hospitals of Chester County LLC.

C.F.R. § 413.24.  Following an audit, providers have various appeal rights, including

administrative and then judicial review.  *See, e.g.*, 42 C.F.R. § 405.1807; 42 U.S.C.

§ 1395oo(f)(1).  By motion of the MAC or the provider, or at CMS's direction, final cost report

determinations in Notices of Program Reimbursement (NPRs) are subject to reopening for up to

three years[12] from their issuance.  42 C.F.R. § 405.1885.

## ARGUMENT

11.     For three reasons, the United States objects to the Cure Notice.  First, to the extent

the PAM Squared APA seeks to transfer the Supplier Agreements, it cannot.  Second, the

bankruptcy court lacks jurisdiction to establish a monetary cure for the Provider Agreements.

Third, the Cure Notice fails to outline the appropriate cure for the Provider Agreements.

### A.  Medicare Part B Supplier Agreements Cannot Be Transferred.

12.     LifeCare cannot assume and assign Medicare Part B supplier agreements to a

purchaser of the PAM Squared Bid-For Facilities.  New LifeCare Hospitals of Tenaya LLC and

New NextCare Specialty Hospital of Denver LLC have Medicare Part B supplier agreements

with CMS.  O'Connor Decl. at ¶¶ 4 & 10.  Although PAM Squared APA lists "Medicare and

Medicaid provider agreements" as a purchased asset, the PAM Squared APA does not define that

term.  Notice of Stalking Horse Bid, Ex. A at § 2.1(i).  To the extent that "Medicare and

Medicaid provider agreements" encompasses New LifeCare Hospitals of Tenaya LLC's and

New NextCare Specialty Hospital of Denver LLC's Supplier Agreements, those Supplier

Agreements cannot be transferred.  Unlike Medicare Part A regulations that permit the transfer

---

[12] An NPR may be reopened "at any time if it is established that the determination … was procured by fraud or similar fault of any party to the determination or decision."  42 C.F.R. § 405.1885(b)(3).

of provider agreements, Medicare Part B regulations prohibit the transfer of Medicare Part B supplier agreements.  *See* 42 C.F.R. §§ 424.550 & 489.18.

**B.  This Court Lacks Jurisdiction to Set a Cure Amount for the Provider Agreements.**

13.    The bankruptcy court lacks jurisdiction to determine a cure amount, since the Medicare Statute and its regulations provide that federal district courts have exclusive jurisdiction over reimbursement determinations only after all applicable administrative remedies are exhausted.  Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), only permits federal district court review of a final decision of the Secretary made after an administrative hearing.  Section 405(h) of the Social Security Act, 42 U.S.C. § 405(h), incorporated into the Medicare Statute by 42 U.S.C. § 1395ii, states:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1356 of title 28, United States Code, to recover on any claim arising under this title.

42 U.S.C. § 405(h).  Section 405(h) is not a mere codification of the doctrine of administrative exhaustion.  Rather, it is a "statutorily specified jurisdictional prerequisite" that cannot be dispensed with by a "judicial conclusion of futility."  *Weinberger v. Salfi*, 422 U.S. 749, 758 (1975).

14.    Claims falling within section 405(h)'s purview are broad.  In *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), the Supreme Court described section 405(h)'s broad scope, stating that section 405(h) claims include, but are not limited to, "[c]laims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy."  529 U.S. at 14.  Further, the Court held that a court lacks jurisdiction over a section 405(h) claim unless and until a plaintiff has exhausted administrative remedies pursuant

to section 405(g).  *Id.* at 15; *see Heckler v. Ringer*, 466 U.S. 602, 605 (1984) (holding that

section 405(h) required a plaintiff to obtain a final administrative decision on their claims, even

if cast as "procedural," prior to seeking judicial review).

15.     The Third Circuit has recognized that bankruptcy courts lack jurisdiction to

adjudicate reimbursement disputes.  In *University Med. Ctr. v. Sullivan* (*In re University Med.*

*Ctr.*), 973 F.2d 1065, 1073 (3d Cir. 1992), after examining the interplay between the Medicare

Statute's exhaustion requirement and bankruptcy jurisdiction codified at 28 U.S.C. § 1334, the

Third Circuit noted that, even in bankruptcy, a claim which "arises under" the Medicare Statute

falls within HHS's exclusive jurisdiction.  *Id.*  The Third Circuit further opined that, in the

Medicare context, the Supreme Court has construed "arising under" broadly.  *Id.*  The Third

Circuit approved the balance between bankruptcy jurisdiction and the scope of section 405(h)

struck in *Sullivan v. Hiser (In re St. Mary Hosp.)*, 123 B.R. 14, 17 (E.D. Pa. 1991), noting that

"[t]he misfortune that a provider is in bankruptcy when he has a reimbursement dispute with the

Secretary should not upset the careful balance between administrative and judicial review."

*University Med. Ctr.*, 973 F.2d at 1073; *see St. Mary Hosp.*, 123 B.R. at 17 (holding that, due to

section 405(h), bankruptcy court lacked jurisdiction over bankruptcy trustee's action to

determine underpayments without first exhausting administrative remedies and stating

"[b]ankruptcy actions [that were related to 405(h) claims]. . . were barred under the prior

codification of section 405(h) and remain so today").  Therefore, LifeCare is not authorized, and

this Court lacks jurisdiction, to determine a monetary cure for the Provider Agreements before

LifeCare has presented any claims to the MAC and exhausted its administrative remedies.

**C. Performance of the Provider Agreements in the Ordinary Course is the Only Permissible Cure.**

16.     Because this Court lacks jurisdiction to establish monetary cure amounts for the Provider Agreements, the United States objects to the Cure Notice because it does not require a purchaser to perform the Provider Agreements in the ordinary course of business, including accepting responsibility for current and future Medicare liabilities, the only acceptable cure. Although PAM Squared has agreed to assume liabilities arising from the PAM Squared Bid-For Facilities' Provider Agreements and LifeCare 2.0 has agreed to assume liabilities arising from the LifeCare 2.0 Bid-For Facilities' Provider Agreements, [13] the Cure Notice omits any cure for the Provider Agreements, *supra* ¶3.  Whether omission of the Provider Agreements or a cure amount in the Cure Notice means that no cure will be paid or merely that the assignees would pay Overpayments in the ordinary course of business (rather than cash upon assignment) is unclear.  Only the latter would comply with Medicare law and section 365.

17.     Medicare law strictly conditions and limits the transfer of the Provider Agreements.  The Provider Agreements may be assigned only upon a "change of ownership."  42 C.F.R. § 489.18.  On a valid "change of ownership", Medicare regulations automatically assign the existing Provider Agreement to the new owner.  42 C.F.R. § 489.18(c); *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir. 1994).  An assigned agreement, however, is subject to all statutory and regulatory terms under which it originally was issued, including the

---

[13] The United States acknowledges that, pursuant to the PAM Squared APA, PAM Squared's taking assignment of the PAM Squared Bid-For Facilities' Provider Agreements and assuming the liabilities associated with those Provider Agreements satisfies the United States' cure requirements.  Similarly, LifeCare 2.0's taking assignment of the LifeCare 2.0 Bid-For Facilities' Provider Agreement and assuming the liabilities associated with those Provider Agreements also satisfies the United States' cure requirement.  To the extent PAM Squared, LifeCare 2.0, or another Successful Bidder takes assignment of the PAM Squared Bid-For Facilities' Provider Agreements or the LifeCare 2.0 Bid-For Facilities' Provider Agreements and assumes the liabilities under those Provider Agreements and any proposed order approving the sale so notes, this Objection only extends to the Provider Agreements for the Remaining CMS Provider Facilities.

adjustment of payments to account for previously made overpayments. 42 C.F.R. § 489.18(d); *Vernon*, 21 F.3d at 696 (new owner that accepted assignment of Medicare provider agreement is liable for overpayments of prior owner); *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1103 (8th Cir. 2000) (new owner of a skilled nursing facility was liable for penalties assessed on the basis of the former owner's actions); *Eagle Healthcare, Inc. v. Sebelius*, 969 F. Supp. 2d 38, 40 (D.D.C. 2013) ("An assigned Provider Agreement is subject to all of the terms and conditions under which it was originally issued.").[14]  *See also In re Charter Behavioral Health Sys., LLC*, 45 Fed. Appx. 150, 151, 2002 WL 2004651, *1 n.1 (3d Cir. June 3, 2002) (observing that "[i]f the new owner elects to take an assignment of the existing Medicare Provider Agreement, it receives an uninterrupted stream of Medicare payments *but assumes successor liability for overpayments and civil monetary penalties asserted by the Government against the previous owner*") (emphasis added) (*citing* 42 C.F.R. § 489.18(d); *Deerbrook Pavilion, LLC*, 235 F.3d at 1103-05; *Vernon*, 21 F.3d at 696).  Section 365 of the Bankruptcy Code requires that LifeCare, and any subsequent assignee, accept the burdens as well as the benefits of any assumed Provider Agreement.  11 U.S.C. § 365(a); *University Med. Ctr. v. Sullivan* (*In re University Med. Ctr.*), 973 F.2d 1065, 1075 (3d Cir. 1992); *In re Monsour Medical Center*, 11 B.R. 1014, 1018 (W.D. Pa. 1981).  This includes the obligation to reimburse CMS for any overpayments.  Thus, as the only permissible cure and adequate assurance of performance, the purchaser must agree to perform the obligations the Provider Agreements in the ordinary course of business, including accepting responsibility for current Medicare liabilities and any Medicare liabilities subsequently determined by CMS under the Medicare Program.

---

[14] When a Provider Agreement is assigned, any underpayments that CMS may subsequently determine are also paid to the assignee.

## CONCLUSION

For the foregoing reason, this court lacks jurisdiction to establish a cure amount and should only permit the assumption and assignment of the Provider Agreements if the purchaser performs under the Medicare Provider Agreements in the ordinary course of business, including accepting responsibility for current and subsequent Medicare liabilities determined by CMS under the Medicare Program.

Dated:  August 1, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DAVID C. WEISS
United States Attorney

ELLEN SLIGHTS (DE Bar No. 2782)
Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19899-2046

/s/*Rodney A. Morris*
RUTH A. HARVEY
MARGARET N. NEWELL
LLOYD H. RANDOLPH
RODNEY A. MORRIS
Trial Attorney
Commercial Litigation
Branch

Civil Division
Department of Justice
1100 L Street, N.W., Room 7108
Washington, D.C. 20044
(202) 305-1759
Attorneys for the United States