*THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE FOLLOWING COMBINED CHAPTER 11 DISCLOSURE STATEMENT AND PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PROVISIONALLY APPROVED BY THE BANKRUPTCY COURT*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Hospital Acquisition LLC, *et al.*,[1] | ) | Case No. 19-10998 (BLS) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |

## COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF LIQUIDATION OF HOSPITAL ACQUISITION LLC AND ITS AFFILIATED DEBTORS

Dated: November 15, 2019

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Scott Alberino  (admitted *pro hac vice*)
Kevin M. Eide (admitted *pro hac vice*)
2001 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

Sarah Link Schultz (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone:  (214) 969-2800
Facsimile: (214) 969-4343

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
M. Blake Cleary (No. 3614)
Jaime Luton Chapman (No. 4936)
Joseph M. Mulvihill (No. 6061)
Betsy L. Feldman (No. 6410)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

**COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Hospital Acquisition LLC (3232); Hospital Acquisition Intermediate Sub LLC (9609); LifeCare Holdings LLC (f/k/a Hospital Acquisition Sub I LLC) (6612); LifeCare Behavioral Health Hospital of Pittsburgh LLC (9835); New LifeCare Hospitals LLC (7959); New LifeCare Hospitals of Dayton LLC (2592); New LifeCare Hospitals of Milwaukee LLC (2428); New LifeCare Hospitals of South Texas LLC (4237); Hospital Acquisition Sub II LLC (7920); New LifeCare Management Services LLC (4310); New LifeCare REIT 1 LLC (9849); New LifeCare Hospitals of Mechanicsburg LLC (0174); New Pittsburgh Specialty Hospital LLC (7592); LifeCare Vascular Services, LLC (5864); New LifeCare Hospitals of North Texas LLC (4279); New LifeCare Hospitals of Chester County LLC (1116); New LifeCare Hospitals of Northern Nevada LLC (4534); New San Antonio Specialty Hospital LLC (2614); New LifeCare Hospitals of North Carolina LLC (7257); New LifeCare Hospitals of Pittsburgh LLC (8759); New NextCare Specialty Hospital of Denver LLC (6416); Hospital Acquisition MI LLC (4982); LifeCare Pharmacy Services LLC (3733); New LifeCare REIT 2 LLC (1315); New LifeCare Hospitals at Tenaya LLC (6891); and New LifeCare Hospitals of Sarasota LLC (8094).  The Debtors' address is 5340 Legacy Drive, Suite 150, Plano, Texas 75024.

# TABLE OF CONTENTS

ARTICLE  I DEFINED TERMS AND RULES OF INTERPRETATION ........................2

ARTICLE  II CLASSIFICATION OF CLAIMS AND INTERESTS AND
ESTIMATED RECOVERIES ..........................................................................17

    2.1     Classification.............................................................................17

ARTICLE  III BACKGROUND AND DISCLOSURES .................................19

    3.1     General Background ...................................................19
    3.2     Events Leading to Chapter 11................................22
    3.3     The Chapter 11 Cases ..............................................22

ARTICLE  IV CONFIRMATION AND VOTING PROCEDURES................................28

    4.1     Confirmation Procedure.....................................................28
    4.2     Procedure for Objections...................................................28
    4.3     Requirements for Confirmation ........................................29
    4.4     Classification of Claims and Interests.............................29
    4.5     Impaired Claims or Interests ............................................30
    4.6     Confirmation Without Necessary Acceptances; Cramdown ...................31
    4.7     Feasibility....................................................................32
    4.8     Best Interests Test and Liquidation Analysis............................32
    4.9     Acceptance of the Plan..........................................................33

ARTICLE  V CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO
VOTING ......................................................................................................34

    5.1     The Plan May Not Be Accepted ..............................................34
    5.2     The Plan May Not Be Confirmed ...........................................34
    5.3     Distributions to Holders of Allowed Claims under the Plan May Be
            Inconsistent with Projections ....................................35
    5.4     Objections to Classification of Claims ...................................35
    5.5     Failure to Consummate the Plan ...........................................36
    5.6     Plan Releases May Not Be Approved......................................36
    5.7     The Total Amount of 503(b)(9) Claims and Initial Administrative
            Claims May Exceed the Caps ....................................36
    5.8     Reductions to Estimated Creditor Recoveries ...........................36
    5.9     Certain Tax Considerations.....................................................36

ARTICLE  VI TREATMENT OF UNCLASSIFIED CLAIMS........................................37

    6.1     Administrative Claims .............................................................37
    6.2     DIP Credit Agreement Claims ................................................38
    6.3     Priority Tax Claims................................................................38

25437081.10

ARTICLE  VII TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............38

    7.1     Class 1:  Priority Non-Tax Claims..................................................38
    7.2     Class 2:  Other Secured Claims .....................................................38
    7.3     Class 3: Prepetition Priming Term Loan Claims ...........................38
    7.4     Class 4: Prepetition Second Term Facility Claims ........................39
    7.5     Class 5:  General Unsecured Claims...............................................39
    7.6     Class 6: Intercompany Claims .......................................................39
    7.7     Class 7: Interests ...........................................................................39
    7.8     Reservation of Rights Regarding Claims and Interests .................39

ARTICLE  VIII ACCEPTANCE OR REJECTION OF THE PLAN ..............................39

    8.1     Class Entitled to Vote ....................................................................39
    8.2     Acceptance by Impaired Classes of Claims or Interests ...............39
    8.3     Presumed Acceptance by Unimpaired Classes ..............................39
    8.4     Presumed Rejections by Impaired Classes ....................................40
    8.5     Confirmation Pursuant to Bankruptcy Code Section 1129(b) ......40
    8.6     Controversy Concerning Impairment .............................................40
    8.7     Elimination of Vacant Classes ......................................................40

ARTICLE  IX IMPLEMENTATION OF THE PLAN AND THE LIQUIDATING
TRUST ...............................................................................................................................40

    9.1     Implementation of the Plan ............................................................40
    9.2     Substantive Consolidation .............................................................40
    9.3     Debtors' Members, Managers, and Officers..................................42
    9.4     Wind-Up and Dissolution of the Debtors .....................................42
    9.5     Creation and Governance of the Liquidating Trust ......................42
    9.6     Purpose of the Liquidating Trust ...................................................43
    9.7     Liquidating Trustee and Liquidating Trust Agreement .................43
    9.8     Compensation and Duties of Liquidating Trustee ........................44
    9.9     United States Federal Income Tax Treatment of the Liquidating
            Trust ...............................................................................................44
    9.10   Abandonment, Disposal, and Destruction of Records ...............46
    9.11   Distributions by Liquidating Trustee .........................................46
    9.12   Cash Investments .......................................................................46
    9.13   Dissolution of the Liquidating Trust..........................................47
    9.14   Control Provisions .....................................................................47
    9.15   Limitation of Liability; Indemnification ....................................47
    9.16   Company Action ........................................................................47
    9.17   Avoidance Actions .....................................................................48

ARTICLE  X PROVISIONS GOVERNING DISTRIBUTIONS ....................................48

    10.1   Distributions for Allowed Claims..............................................48
    10.2   Interest of Claims.......................................................................48

10.3    Distributions by Liquidating Trustee as Disbursement Agent ...................48
10.4    Waterfall ................................................................................................49
10.5    Means of Cash Payment ..........................................................................49
10.6    Fractional Distributions ..........................................................................49
10.7    De Minimis Distributions ........................................................................49
10.8    Delivery of Distributions; Unclaimed Distributions ...............................50
10.9    Application of Distribution Record Date ..................................................50
10.10   Withholding, Payment and Reporting Requirements With Respect
        to Distributions .......................................................................................50
10.11   Setoffs .....................................................................................................51
10.12   No Distribution in Excess of Allowed Amounts ......................................51
10.13   Allocation of Distributions ......................................................................51
10.14   Forfeiture of Distributions .......................................................................51

ARTICLE  XI PROVISIONS FOR CLAIMS OBJECTIONS AND
ESTIMATION OF CLAIMS ...........................................................................52

11.1    Claims Administration Responsibility ......................................................52
11.2    Claims Objections ...................................................................................52
11.3    Estimation of Contingent or Unliquidated Claims ...................................52
11.4    Distributions on Account of Disputed Claims ..........................................52
11.5    Amendments to Claims ............................................................................53
11.6    Claims Paid and Payable by Third Parties ...............................................53
11.7    Adjustment to Claims Without Objection .................................................53

ARTICLE  XII EXECUTORY CONTRACTS ..................................................53

12.1    Executory Contracts Deemed Rejected ...................................................53
12.2    Asset Purchase Agreements and Provider Agreements ............................53

ARTICLE  XIII CONFIRMATION AND CONSUMMATION OF THE PLAN ...........53

13.1    Conditions Precedent to the Effective Date .............................................53
13.2    Notice of Effective Date ..........................................................................54
13.3    Waiver of Conditions Precedent to the Effective Date .............................54
13.4    Effect of Non-Occurrence of Effective Date ...........................................55

ARTICLE  XIV EFFECTS OF CONFIRMATION ...........................................55

14.1    Exculpation, Releases, and Injunctions ...................................................55
14.2    Term of Bankruptcy Injunction or Stays .................................................57

ARTICLE  XV RETENTION OF JURISDICTION .........................................58

15.1    Exclusive Jurisdiction of Bankruptcy Court ............................................58

ARTICLE  XVI MISCELLANEOUS PROVISIONS.......................................................60

16.1     Modification of the Plan ....................................................................60
16.2     Revocation, Withdrawal, or Non-Confirmation of the Plan ......................60
16.3     Binding Effect ................................................................................60
16.4     Subordination Rights .......................................................................60
16.5     Severability of Plan Provisions...........................................................61
16.6     Payment of Statutory Fees; Filing of Quarterly Reports ..........................61
16.7     Prepetition Term Agents' Fees and Expenses ........................................61
16.8     Dissolution of the Committee .............................................................61
16.9     Exemption from Section 1146 ............................................................62
16.10    Closing of Chapter 11 Cases; Caption Change .......................................62
16.11    Filing of Additional Documents ..........................................................62
16.12    Insurance .......................................................................................62
16.13    Successors and Assigns.....................................................................63
16.14    Governing Law ................................................................................63
16.15    Exhibits and Schedules .....................................................................63
16.16    Computation of Time ........................................................................63
16.17    Reservation of Rights........................................................................63

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION, AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THIS COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THE COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND BANKRUPTCY RULE 3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS.

SEE ARTICLE V HEREIN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## INTRODUCTION[2]

The Debtors hereby jointly propose the following combined Disclosure Statement and Plan for the liquidation of the Debtors' remaining Assets and distribution of the proceeds of the Assets to the Holders of Allowed Claims against the Debtors as set forth herein.  Each Debtor is a proponent of the Plan within the meaning of Bankruptcy Code section 1129.

This combined Disclosure Statement and Plan contains, among other things, a discussion of the Debtors' history, businesses, properties, operations, the Chapter 11 Cases, risk factors, summary and analysis of the Plan, and certain other related matters.

**ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.   SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN BANKRUPTCY CODE SECTION 1127, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**Defined Terms**

**1.1** **"503(b)(9) Claims"** shall mean Claims arising under Bankruptcy Code section 503(b)(9).

**1.2** **"Administrative Claim"** shall mean a Claim for costs and expenses of administration of the Chapter 11 Cases allowed under Bankruptcy Code sections 503(b), 507(b) or, if applicable, 1114(e)(2), including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Bankruptcy Code sections 328, 330, 331, 363 or 503(b) to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Estates under United States Code title 28

---

[2] Capitalized terms not defined in this Introduction shall have the meanings ascribed below.

section 1930; (d) any 503(b)(9) Claims; and (e) any Claims that have been designated "Administrative Claims" by order of this Court.

**1.3**　　**"Affiliate"** shall mean "affiliate" as defined in Bankruptcy Code section 101(2).

**1.4**　　**"Allowed"** shall mean all or a portion of a Claim against the Debtors or an Interest in the Debtors (a) that has been listed by the Debtors in the Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim or proof of Interest has been Filed, (b) as to which no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, including, without limitation, the Prepetition Priming Term Loan Claims and the Prepetition Second Term Facility Claims, (ii) pursuant to the terms of the Plan, including, without limitation, the Prepetition Priming Term Loan Claims and the Prepetition Second Term Facility Claims, or (iii) by a stipulation entered into between the Holder of such Claim or Interest and the Liquidating Trustee, in consultation with the Term Lender Representative(s), if any, on or after the Effective Date.  For purposes of computing Distributions under the Plan, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as provided in Bankruptcy Code section 506(b) or as otherwise expressly set forth in the Plan.  For the avoidance of doubt, the Prepetition Priming Term Loan Claims and the Prepetition Second Term Facility Claims shall include all prepetition accrued but unpaid interest, and the Prepetition Priming Term Loan Claims shall include postpetition interest at the default rate provided for in the Prepetition Priming Term Loan Agreement.

**1.5**　　**"Assets"** shall mean any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records.

**1.6**　　"**Avoidance Actions**" shall mean any and all Preference Actions or other avoidance or equitable subordination or recovery actions under the Bankruptcy Code, including under Bankruptcy Code sections 105(a), 502(d), 510, 542 through 551, and 553, or any similar federal, state, or common law causes of action.

**1.7**　　**"Ballot"** shall mean the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

**1.8**　　**"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101–1532, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.9**　　**"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

**1.10**　　**"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, or the Local Rules, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.11** **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing Proofs of Claim, motions for allowance of Administrative Claims, or proofs of Interest against the Debtors in the Chapter 11 Cases for that specific Claim or Interest.  For the avoidance of doubt, pursuant to the terms of the DIP Order, the Bar Date shall not apply with respect to the Prepetition Priming Term Loan Claims or the Prepetition Second Term Facility Claims.

**1.12** **"Beneficiary"** shall mean a holder of a Liquidating Trust Interest, whether individually or as agent on behalf of one or more other Entities.  To the extent Holders of Allowed Claims are entitled to a Distribution from the Liquidating Trust pursuant to the terms of the combined Disclosure Statement and Plan, such Holders are each a Beneficiary.

**1.13** **"Bidding Procedures Order"** shall mean that certain *Order Establishing Bidding Procedures Relating to the Sales of All or a Portion of the Debtors' Assets* [D.I. 298].

**1.14** **"Borrowers"** shall mean, in connection with the DIP Credit Agreement, LifeCare Holdings LLC; New LifeCare Hospitals LLC; New LifeCare Hospitals of Chester County LLC; New LifeCare Hospitals of Milwaukee LLC; New LifeCare Hospitals of North Carolina LLC; New LifeCare Hospitals of Pittsburgh LLC; New LifeCare Management Services LLC; New NextCare Specialty Hospital of Denver LLC; New LifeCare REIT 1 LLC; New LifeCare Hospitals of Mechanicsburg LLC; New Pittsburgh Specialty Hospital LLC; New LifeCare Hospitals of Dayton LLC; New LifeCare Hospitals of Northern Nevada LLC; New LifeCare Hospitals of South Texas LLC; New LifeCare Hospitals of North Texas LLC; New San Antonio Specialty Hospital LLC; New LifeCare REIT 2 LLC; New LifeCare Hospital at Tenaya LLC; New LifeCare Hospitals of Sarasota LLC; LifeCare Behavioral Health Hospital of Pittsburgh LLC; and LifeCare Pharmacy Services LLC.

**1.15** **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.16** **"Cash"** shall mean money that is legal tender of the United States of America.

**1.17** **"Causes of Action"** shall mean all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, defenses, judgments, set-off claims, third-party claims, counterclaims, and cross claims that are or may be pending or existing on the Effective Date against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, and including the unknown Causes of Action that have not been released by the Plan or any order of the Bankruptcy Court.

**1.18** "**Chapter 11 Cases**" shall mean the chapter 11 cases commenced by the Debtors and jointly administered under case number 19-10998 (BLS) in the Bankruptcy Court.

**1.19** **"Claim"** shall mean a claim against any Debtor, as such term is defined in Bankruptcy Code section 101(5).

**1.20**    **"Claims Agent"** shall mean the Debtors' claims agent, Prime Clerk LLC.

**1.21**    **"Claims Objection Deadline"** shall mean ninety (90) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court; *provided however*, that the Liquidating Trustee may seek extensions of this date from the Bankruptcy Court.

**1.22**    **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article II of the combined Disclosure Statement and Plan.

**1.23**    "**Committee**" shall mean the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

**1.24**    **"Confirmation"** shall mean entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

**1.25**    **"Confirmation Date"** shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.26**    **"Confirmation Hearing"** shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan and final approval of the Disclosure Statement, as such hearing may be adjourned or continued from time to time.

**1.27**    **"Confirmation Notice"** shall mean the notice of Confirmation Hearing to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f).

**1.28**    **"Confirmation Order"** shall mean the order of the Bankruptcy Court, in form and substance satisfactory to the Prepetition Term Agents, confirming the Plan pursuant to, among others, Bankruptcy Code section 1129.

**1.29**    **"Consummation"** shall mean the occurrence of the Effective Date.

**1.30**    **"Contingent"** shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.31**    **"Creditor"** shall have the meaning ascribed to such term in Bankruptcy Code section 101(10).

**1.32**    "**Debtors**" shall mean, collectively, Hospital Acquisition LLC; Hospital Acquisition Intermediate Sub LLC; LifeCare Holdings LLC; LifeCare Behavioral Health Hospital of Pittsburgh LLC; New LifeCare Hospitals LLC; New LifeCare Hospitals of Dayton LLC; New LifeCare Hospitals of Milwaukee LLC; New LifeCare Hospitals of South Texas LLC; Hospital Acquisition Sub II LLC; New LifeCare Management Services LLC; New LifeCare REIT 1 LLC; New LifeCare Hospitals of Mechanicsburg LLC; New Pittsburgh Specialty Hospital LLC; LifeCare Vascular Services, LLC; New LifeCare Hospitals of North Texas LLC; New LifeCare Hospitals of Chester County LLC; New LifeCare Hospitals of Northern Nevada LLC; New San Antonio Specialty Hospital LLC;

New LifeCare Hospitals of North Carolina LLC; New LifeCare Hospitals of Pittsburgh LLC; New NextCare Specialty Hospital of Denver LLC; Hospital Acquisition MI LLC; LifeCare Pharmacy Services LLC; New LifeCare REIT 2 LLC; New LifeCare Hospitals at Tenaya LLC; and New LifeCare Hospitals of Sarasota LLC.

**1.33**     **"DIP Agent"** shall mean White Oak Healthcare Finance, LLC, in its capacity as administrative agent and collateral agent under the DIP Credit Agreement.

**1.34**     **"DIP Credit Agreement"** shall mean that certain Debtor-In-Possession Credit Agreement by and among the Borrowers, the DIP Agent and the DIP Lender, dated as of May 6, 2019 (as amended, modified, restated, or supplemented).

**1.35**     **"DIP Credit Agreement Claims"** shall mean any and all Claims of the DIP Agent and DIP Lender arising under the DIP Credit Agreement.

**1.36**     **"DIP Lender"** shall mean White Oak Healthcare Finance, LLC, in its capacity as lender under the DIP Credit Agreement.

**1.37**     **"DIP Order"** shall mean that *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 278], issued by the Bankruptcy Court on June 21, 2019, as supplemented by the *Order Approving Stipulation Supplementing the Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 686].

**1.38**     **"Disallowed"** shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in a Debtor which:  (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn, in whole or in part, by the Holder thereof; (iii) is listed in the Schedules as zero or as Disputed, Contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (iv) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (v) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (vi) is unenforceable to the extent provided in Bankruptcy Code section 502(b); or (vii) if there has been a Trigger Event, where the Holder of a Claim is an Entity from which property is recoverable under Bankruptcy Code sections 542, 543, 550, or 553 or that is a transferee of a transfer avoidable under Bankruptcy Code sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), unless such Entity or transferee has paid the amount, or turned over any such Property, for which such Entity or transferee is liable under Bankruptcy Code section 522(i), 542, 543, 550, or 553, and if required by the

Bankruptcy Code, an Objection or adversary proceeding has been Filed..  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

**1.39**      **"Disbursing Agent"** shall mean the Liquidating Trustee; *provided, however*, that the Liquidating Trustee may, in its discretion, retain a third party to act as Disbursing Agent.

**1.40**      **"Disclosure Statement"** shall mean the disclosure statement, as amended, supplemented, or modified from time to time, that is embodied within the combined Disclosure Statement and Plan and distributed in accordance with, among others, Bankruptcy Code sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018 and other applicable law.

**1.41**      **"Disputed"** shall mean any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of the Plan.

**1.42**      **"Disputed Claim Reserve"** shall mean the reserve established and maintained by the Liquidating Trustee for payment of Disputed Claims, which reserve shall be established in consultation with the Prepetition Term Agents (until such time as the Prepetition Priming Term Loan Claims shall have been paid in full, after which time the Liquidating Trustee shall consult with the Prepetition Second Term Facility Agents), or, after the Effective Date, the Term Lender Representative(s), if any, in an amount equal to the face value of all Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Other Secured Claims, or such other amount as may be ordered by the Court.

**1.43**      **"Distribution"** shall mean a delivery of Cash by the Disbursing Agent to the Holders of Allowed Claims pursuant to the Plan.

**1.44**      **"Distribution Date"** shall mean the date on which a Distribution is made pursuant to the Plan.

**1.45**      **"Distribution Record Date"** shall mean the date established for determining the Holders of Claims entitled to Distributions pursuant to the Plan, which shall be the General Bar Date or, in the case of the Prepetition Priming Term Loan Claims and the Prepetition Second Term Facility Claims, the Effective Date, or such other date established in the Confirmation Order.

**1.46**      **"Distribution Proceeds"** shall mean all Cash realizable from the Liquidating Trust Assets after Payment in Full or satisfaction of the (i) First Tier Claims and (ii) the payment of, and reserving for, Liquidating Trust Expenses in accordance with the Liquidating Trust Agreement.

**1.47**      **"Effective Date"** shall mean the first Business Day after the later of the date on which (a) all conditions in Article XIII of the Plan have been satisfied or waived in accordance with that Article and (b) no stay of the Confirmation Order is in effect.

**1.48**      **"Effective Date Notice"** shall mean the notice of the Effective Date.

**1.49**       **"Entity"** shall have the meaning ascribed to such term in Bankruptcy Code section 101(15).

**1.50**       **"Estate"** shall mean each of the Debtors' estates created by Bankruptcy Code section 541 upon the commencement of the Chapter 11 Cases on the Petition Date.

**1.51**       **"Exculpated Parties"** shall mean, in each of their capacities as such, (a) the Debtors, (b) the Committee, and (c) and each of the foregoing's respective Related Parties.

**1.52**       "**Executory Contract**" shall mean a contract or unexpired lease to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

**1.53**       **"File," "Filed,"** or **"Filing"** shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.54**       **"Final Administrative Claim Bar Date"** shall mean the date that is forty-five (45) days after the date the Effective Date Notice is filed and served, which date shall be the deadline for filing requests for payment of Administrative Claims that arose after the date of entry of the Solicitation Procedures and Bar Date Order, but prior to the Effective Date.

**1.55**       **"Final Distribution"** shall mean the final Distributions to Holders of Allowed Claims.

**1.56**       **"Final Order"** shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that is not subject to stay or appeal, and for which the applicable time within which to take such action has expired, or for which such actions has been adjudicated by the highest court with jurisdiction over the matter.

**1.57**       **"First Day Declaration"** shall mean the *Declaration of James Murray, Chief Executive Officer of Hospital Acquisition LLC, in Support of Chapter 11 Petitions and First Day Motions* [D.I. 2].

**1.58**       **"First Tier Claims"** shall mean all Administrative Claims (including Professional Fee Claims and DIP Credit Agreement Claims), Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims.

**1.59**        **"General Bar Date"** shall mean the deadline established by the Solicitation Procedures and Bar Date Order for filing proofs of Claim for (a) Initial Administrative Claims, (b) 503(b)(9) Claims, (c) Secured Claims, (d) Priority Tax Claims, and (e) Priority Non-Tax Claims.  For the avoidance of doubt, pursuant to the terms of the DIP Order, the General Bar Date shall not apply with respect to the Prepetition Priming Term Loan Claims or the Prepetition Second Term Facility Claims.

**1.60**       **"General Unsecured Claim"** shall mean a Claim against a Debtor, but excluding any Administrative Claims (including Professional Fee Claims and DIP Credit Agreement Claims), Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, Prepetition

Priming Term Loan Claims, Prepetition Second Term Facility Claims, Intercompany Claims, and Interests.

**1.61** **"Governmental Unit"** shall have the meaning ascribed to such term in Bankruptcy Code section 101(27).

**1.62** **"Holder"** shall mean any Entity holding a Claim or Interest.

**1.63** **"Home Health Equity Sale"** shall mean the sale to an affiliate of White Oak Healthcare Financing LLC pursuant to that certain Purchase Agreement by and among LifeCare Holdings LLC and certain subsidiaries and [_____], dated as of [_____]

**1.64** **"Impaired"** shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code section 1124.

**1.65** **"Impaired Class"** shall mean a Class of Claims or Interests that is Impaired.

**1.66** **"Intercompany Claim"** shall mean a Claim by a Debtor against another Debtor.

**1.67** **"Intercreditor Agreement"** shall have the meaning set forth in the Prepetition Priming Term Loan Agreement.

**1.68** **"Interests"** shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Entity in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

**1.69** **"Initial Administrative Claim Bar Date"** shall mean the deadline for filing requests for payment of Initial Administrative Claims, as established by the Solicitation Procedures and Bar Date Order.

**1.70** **"Initial Administrative Claims"** shall mean Administrative Claims, other than 503(b)(9) Claims and Professional Fee Claims, incurred on or after the Petition Date through and including the date the Bankruptcy Court enters the Solicitation Procedures and Bar Date Order.

**1.71** **"Internal Revenue Code"** shall mean the United States Internal Revenue Code 1986, as amended.

**1.72** **"IRS"** shall mean the Internal Revenue Service.

**1.73** **"LifeCare 2.0 Sale"** shall mean the sale to LifeCare 2.0 LLC pursuant to that certain Asset Purchase Agreement by and among LifeCare Holdings LLC and certain subsidiaries and LifeCare 2.0, LLC, dated as of July 30, 2019.

**1.74** **"Liquidating Trust"** shall mean the trust with a term of not more than 5 years (subject to extensions as provided) to be established under the combined Disclosure Statement and Plan and the Liquidation Trust Agreement.

**1.75** **"Liquidating Trust Agreement"** shall mean a trust agreement, in form and substance satisfactory to the Prepetition Term Agents, that establishes the Liquidating Trust and governs the powers, duties, and responsibilities of the Liquidating Trustee. The Liquidating Trust Agreement shall be filed as part of the Plan Supplement.

**1.76** **"Liquidating Trust Assets"** shall consist of all Assets of the Estates as of the Effective Date, including, but not limited to, (i) Cash, (ii) Retained Causes of Action, (iii) any proceeds realized or received from such Assets, (iv) all rights of setoff, recoupment, and other defenses against Claims, (v) all rights under the asset purchase agreements from the Sales and any other documents related to the Sales, including, but not limited to, the PAM Note, (vi) all bank accounts (as set forth in the Liquidating Trust Agreement), (vii) Debtor Hospital Acquisition of MI, LLC's interests in Primovista Investments, LLC, and (viii) all documents, communications, and information protected by the attorney-client privilege, the work-product privilege, and any other applicable evidentiary privileges. For the avoidance of doubt, the Liquidating Trust Assets shall not include any Preference Actions (except for purposes of setoff as provided in section 9.17 of this combined Disclosure Statement and Plan), or any Claims and Causes of Action that have been released pursuant to the Plan, *provided, however*, that if a Trigger Event occurs, then the Liquidating Trust Assets shall include all Preference Actions.

**1.77** **"Liquidating Trustee"** shall mean the Entity designated and retained as the trustee to the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust, and any successor subsequently appointed pursuant to the Liquidating Trust Agreement, *provided that* the Liquidating Trustee shall be acceptable to the Prepetition Term Agents, in consultation with the Committee.

**1.78** **"Liquidating Trust Expenses"** shall mean all reasonable legal and other fees and expenses incurred by the Liquidating Trustee on account of administration of the Liquidating Trust, including, without limitation, reasonable attorneys' fees and expenses, insurance costs, taxes, escrow expenses and all other costs of administering the Liquidating Trust in accordance with the combined Disclosure Statement and Plan and the Liquidating Trust Agreement, together with all reasonable and documented expenses and costs, including, without limitation, the reasonable attorney's fees and expenses of the Term Lender Representative(s), if any.

**1.79** **"Liquidating Trust Interests"** shall mean the non-transferable interests in the Liquidating Trust that are issued to the Beneficiaries pursuant to the combined Disclosure Statement and Plan.

**1.80** **"Liquidating Trust Operating Reserve"** shall mean such reserve of Cash determined from time to time by the Liquidating Trustee, in consultation with the Prepetition Term Agents (prior to the Effective Date) or the Term Lender Representative(s), if any (after the Effective Date), pursuant to the Liquidating Trust Agreement to be reasonably necessary to pay Liquidating Trust Expenses, including: (a) the unpaid liabilities, debts, or obligations of the Liquidating Trust; (b) the fees and expenses of the Liquidating Trustee; (c) all fees and expenses of professionals retained by the Liquidating Trustee; and (d) any and all other costs associated with the liquidation or preservation of the Liquidating Trust Assets.

**1.81** **"Local Rules"** shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.82** **"Objection*"*** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

**1.83** **"Other Secured Claim"** shall mean any Secured Claim other than a DIP Credit Agreement Claim, a Prepetition Priming Term Loan Claim, or a Prepetition Second Term Facility Claim.

**1.84** **"Paid in Full," "Payment in Full," or "Pay in Full"** shall mean, with respect to an Allowed Claim, payment in Cash or other consideration in an aggregate amount equal to the Allowed amount thereof.

**1.85** **"PAM Note"** shall mean the $5 million junior subordinated promissory note, dated September 30, 2019, issued by PAM Squared, LLC to LifeCare Holdings LLC and the Debtor-sellers, as consideration for the PAM Sale.

**1.86** **"PAM Sale"** shall mean the sale to PAM Squared, LLC pursuant to that certain Asset Purchase Agreement by and among LifeCare Holdings LLC and certain subsidiaries and PAM Squared, LLC, dated as of July 18, 2019, and as supplemented by the Asset Purchase Agreement by and among LifeCare Holdings LLC and New LifeCare Management Services LLC and PAM Squared, LLC, dated September 18, 2019.

**1.87** **"Petition Date"** shall mean May 6, 2019, the date on which the Debtors commenced Filing the Chapter 11 Cases in the Bankruptcy Court.

**1.88** **"Plan"** shall mean this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time, in form and substance satisfactory to the Prepetition Term Agents, including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules.

25437081.10

**1.89**     **"Plan Supplement"** shall mean the ancillary documents necessary to the implementation and effectuation of the Plan, each in form and substance satisfactory to the Prepetition Term Agents, including the Liquidating Trust Agreement, which shall be Filed on or before the date that is seven (7) days prior to the Voting Deadline, provided, however, that the Debtors shall have the right to amend documents contained in, and exhibits to, the Plan Supplement, in form and substance satisfactory to the Prepetition Term Agents and otherwise in accordance with the terms of the Plan.

**1.90**     **"Preference Actions"** shall mean any right, claim, or cause of action of the Debtors arising under Bankruptcy Code section 547.

**1.91**     **"Prepetition Priming Term Loan Advisors"** shall mean Ropes & Gray LLP as counsel to certain Prepetition Priming Term Loan Lenders, Thompson Hine LLP as counsel to the Prepetition Priming Term Loan Agent, and Potter Anderson & Corroon LLP as Delaware counsel.

**1.92**     **"Prepetition Priming Term Loan Agent"** shall mean Glas Trust Company LLC, or its duly appointed successor, in its capacity as agent to the Prepetition Priming Term Loan Agreement.

**1.93**     "**Prepetition Priming Term Loan Agreement**" shall mean that certain Prepetition Priming Term Loan Credit Agreement, dated as of August 10, 2018 (as has been and may be amended, supplemented or otherwise modified from time to time), by and among LifeCare Holdings, as borrower, the guarantors thereunder, the Prepetition Priming Term Loan Agent and the Prepetition Priming Term Loan Lenders.

**1.94**     **"Prepetition Priming Term Loan Claims"** shall mean any and all Claims of the Prepetition Priming Term Loan Agent and the Prepetition Priming Term Loan Lenders pursuant to or arising under the Prepetition Priming Term Loan Documents, which shall be deemed Allowed in the aggregate principal amount of amount of not less than $[___], plus any accrued but unpaid interest, fees, and other expenses and amounts arising under or in connection with the Prepetition Priming Term Loan Agreement.

**1.95**     **"Prepetition Priming Term Loan Lenders"** shall mean the Entities party from time to time to the Prepetition Priming Term Loan Agreement as lenders or issuing banks, in their respective capacities as such.

**1.96**     **"Prepetition Priming Term Loan Documents"** shall mean the Prepetition Priming Term Loan Agreement collectively with any other First Lien Documents (as defined in the Intercreditor Agreement).

**1.97**     "**Prepetition Revolving Credit Agreement**" shall mean that certain credit agreement, dated as of August 10, 2018 (as has been and may be amended, supplemented or otherwise modified from time to time), by and among LifeCare Holdings LLC, each of the Debtors party thereto, and White Oak Healthcare Finance, LLC, as administrative agent, collateral agent, and lender party thereto.

1.98      "**Prepetition Revolving Lender**" shall mean White Oak Healthcare Finance LLC in its capacity as lender under the Prepetition Revolving Credit Agreement.

1.99      "**Prepetition Second Term Facility Advisors**" shall mean Shearman & Sterling LLP as counsel to the Prepetition Second Term Facility Agents, Potter Anderson & Corroon LLP as local counsel, and Stout Risius Ross Advisors, LLC, as financial advisor.

1.100     "**Prepetition Second Term Facility Agents**" shall mean (a) Seaport Loan Products LLC, or its duly appointed successor, in its capacity as administrative agent and (b) Wilmington Trust, National Association, or its duly appointed successor in its capacity as co-administrative agent and collateral agent pursuant to the Prepetition Second Term Facility Agreement.

1.101     "**Prepetition Second Term Facility Agreement**" shall mean that certain Credit Agreement dated as of May 31, 2013 (as has been and may be amended, supplemented, or otherwise modified from time to time), by and among LifeCare Holdings, as borrower, the Prepetition Second Term Facility Agents, and the Prepetition Second Term Facility Lenders.

1.102     "**Prepetition Second Term Facility Claims**" shall mean any and all Claims of the Prepetition Second Term Facility Agents and the Prepetition Second Term Facility Lenders pursuant to or arising under the Prepetition Second Term Facility Documents, which shall be deemed Allowed in the aggregate principal amount of not less than $140,947,579, plus any accrued but unpaid interest, fees, and other expenses and amounts arising under or in connection with the Prepetition Second Term Facility Agreement.

1.103     "**Prepetition Second Term Facility Documents**" shall mean the Prepetition Second Term Facility Agreement collectively with any other Second Lien Documents (as defined in the Intercreditor Agreement).

1.104     "**Prepetition Second Term Facility Lenders**" shall mean the Entities party from time to time to the Prepetition Second Term Facility Agreement as lenders or issuing banks, in their respective capacities as such.

1.105     "**Prepetition Term Agents**" shall mean collectively the Prepetition Priming Term Loan Agent and the Prepetition Second Term Facility Agents.

1.106     "**Priority Non-Tax Claim**" shall mean any and all Claims accorded priority in right of payment under Bankruptcy Code section 507(a), other than Priority Tax Claims and Administrative Claims.

1.107     "**Priority Tax Claim**" shall mean a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code section 507(a)(8).

1.108     "**Professional**" shall mean an Entity employed pursuant to a Final Order in accordance with Bankruptcy Code sections 327, 328, 333, 363, 1103 and to be compensated for services rendered prior to the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, and 331, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code section 503(b)(4).

1.109    **"Professional Fee Claims Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be forty-five (45) days after the Liquidating Trustee files and serves the Effective Date Notice.

1.110    **"Professional Fee Claims"** shall mean all fees and expenses (including but not limited to, transaction fees and success fees) for services rendered by Professionals in connection with the Chapter 11 Cases from the Petition Date through and including the Effective Date.

1.111    **"Related Parties"** shall mean officer, director, agent, attorney, advisor, employee, professional, shareholder, partner (general or limited), Affiliate, member, manager, equity holder, trustee, executor, predecessor in interest, or successor or assign of any such Entity.  For the avoidance of doubt, Related Parties shall include, but not be limited to, the Prepetition Priming Term Loan Advisors and the Prepetition Second Term Facility Advisors

1.112    **"Released Parties"** shall mean (a) the Debtors and the Estates, (b) the DIP Lender, (c) the DIP Agent, (d) the Prepetition Priming Term Loan Lenders, (e) the Prepetition Priming Term Loan Agent, (f) the Prepetition Second Term Facility Lenders, (g) the Prepetition Second Term Facility Agents, (h) the Liquidating Trustee, (i) the Committee, and (j) with respect to each of the foregoing, their Related Parties, *provided, however,* that Released Parties shall exclude any of the foregoing parties that makes a Release Opt-Out Election.

1.113    **"Release Opt-Out Election"** shall mean the timely election to "opt out" of being a Releasing Party by (a) submitting a Ballot by the Voting Deadline that (i) does not vote to accept the Plan and (ii) selects the option set forth on the Ballot to <u>not</u> grant the releases set forth in Section 14.1(c) of this Plan or (b) Filing a written objection to the releases set forth in Section 14.1(c) of this Plan by the objection deadline established by the Solicitation Procedures and Bar Date Order.

1.114    **"Releasing Parties"** shall mean (a) all Holders of Claims or Interests who are Unimpaired, (b) the Committee, (c) the DIP Lender, (d) the DIP Agent, (e) the Prepetition Priming Term Loan Lenders, (f) the Prepetition Priming Term Loan Agent, (g) the Prepetition Second Term Facility Lenders, (h) the Prepetition Second Term Facility Agents, and (i) with respect to each of the foregoing, their Related Parties, *provided, however,* that Releasing Parties shall exclude any of the foregoing parties that makes a Release Opt-Out Election.

1.115    **"Retained Causes of Action"** shall mean all Causes of Actions against third parties, including, without limitation, the rights and claims described in **<u>Exhibit A</u>** hereto, but excluding all Preference Actions and those Causes of Action released pursuant to Section 14.1(b) hereof, *provided, however,* that if a Trigger Event occurs, then all Preference Actions shall be Retained Causes of Action.

1.116    **"Revenue Procedure"** shall mean an official statement of a procedure published by the IRS in the Internal Revenue Bulletin.

**1.117** **"Sales"** shall mean collectively, the PAM Sale, the LifeCare 2.0 Sale, the Select Sale, and the Home Health Equity Sale.

**1.118** **"Schedules"** shall mean the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to Bankruptcy Code section 521 and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

**1.119** **"Secured Claim"** shall mean, pursuant to Bankruptcy Code section 506, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtors pursuant to Bankruptcy Code sections 506(a) and 553.

**1.120** **"Select Sale"** shall mean the sale to Select Medical Corporation pursuant to that certain Asset Purchase Agreement by and between New LifeCare Hospitals of Pittsburgh LLC and Select Medical Corporation dated as of August 13, 2019.

**1.121** **"Solicitation Procedures and Bar Date Order**" shall mean that certain *Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Form of Ballot and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; (VI) Establishing Bar Dates for Filing Proofs of Claim for Secured, Priority, and 503(b)(9) Claims and Requests for Allowance of Initial Administrative Claims; and (VII) Granting Related Relief* [D.I. ___].

**1.122** **"Taxes"** shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.123** **"Term Lender Representative(s)"** shall mean one or more Entities that may (but are not required to) be designated by the Required Lenders (as such term is defined in the Prepetition Second Term Facility Agreement) and identified in the Plan Supplement.

**1.124** **"Treasury Regulations"** shall mean the regulations (including temporary regulations) promulgated by the United States Department of the Treasury pursuant to and in respect of provisions of the Internal Revenue Code. All references herein to sections of

the Treasury Regulations shall include any corresponding provision or provisions of succeeding, similar or substitute, temporary or final Treasury Regulations.

**1.125** **"Trigger Event"** shall mean the filing by the Committee of any objection, reservation of rights or statement in opposition to either (i) this Plan or (ii) entry of the order contemplated by paragraph 3(ii) of the *Stipulation Supplementing the Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 686].

**1.126** **"Unclassified Claims"** shall mean any Administrative Claims, DIP Credit Agreement Claims, Professional Fee Claims, and Priority Tax Claims.

**1.127** **"Unimpaired"** shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.128** **"U.S. Trustee Fees"** shall mean fees payable pursuant to 28 U.S.C. § 1930.

**1.129** **"Voting Deadline"** shall mean **[__], 2019, at 4:00 p.m. (prevailing Eastern Time)**, the date and time by which ballots to accept or reject the Plan must be received to be counted, as set forth by the Solicitation Procedures and Bar Date Order.

**Rules of Interpretation**

**1.130** For purposes of the Plan, except as expressly provided or unless the context otherwise requires, (a) any capitalized term used in the combined Disclosure Statement and Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (b) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter shall include the masculine, feminine and the neuter, (c) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (d) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (e) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (f) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (g) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (h) the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

# ARTICLE  II
## CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.**

**2.1     Classification**.  The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including those related to the claims reconciliation process.  Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual distribution received by Creditors.  The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' estimates as of the date hereof only.  In addition to the cautionary notes contained elsewhere in the combined Disclosure Statement and Plan, it is underscored that the Debtors make no representation as to the accuracy of these recovery estimates.  The Debtors expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered).

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims, DIP Credit Agreement Claims, Professional Fee Claims, and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Fee Claims), DIP Credit Agreement Claims, and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is set forth below in Article VI of the Plan.  The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

| Class/ Designation | Plan Treatment | Estimated Amount of Claims | Status | Projected Recovery |
|---|---|---|---|---|
| **Class 1**: Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed | $0 | Unimpaired/ Deemed to accept Plan | 100% |

| Class/ Designation | Plan Treatment | Estimated Amount of Claims | Status | Projected Recovery |
|---|---|---|---|---|
| | Priority Non-Tax Claim have agreed upon in writing. | | | |
| **Class 2**: Other Secured Claims | Each Holder of an Allowed Class 2 Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim: (A) return of the collateral securing such Allowed Other Secured Claim; or (B) Cash equal to the amount of such Allowed Other Secured Claim; or (C) such other treatment which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Other Secured Claim have agreed upon in writing. | $0 | Unimpaired/ Deemed to accept Plan | 100% |
| **Class 3**: Prepetition Priming Term Loan Claims | Unless the Holder agrees to a different treatment, as soon as practicable after the Effective Date, each Holder of a Prepetition Priming Term Loan Claim shall receive such Holder's pro rata share of the Distribution Proceeds until the Prepetition Priming Term Loan Claims are paid in full.  On the Effective Date, the Prepetition Priming Term Loan Claims shall be Allowed in the aggregate principal amount of amount of not less than $[●], plus any accrued but unpaid interest, fees, and other expenses and amounts arising under or in connection with the Prepetition Priming Term Loan Agreement. | $8.063 million | Impaired/ Entitled to vote | 100% |
| **Class 4**: Prepetition Second Term Facility Claims | Unless the Holder agrees to a different treatment in writing, as soon as practicable after the Effective Date, each Holder of a Prepetition Second Term Facility Claim shall receive such Holder's pro rata share of the Distribution Proceeds remaining after payment in full of the Prepetition Priming Term Loan Claims until the Prepetition Second Term Facility Claims are paid in full.   On the Effective Date, the Prepetition Second Term Facility Claims shall be Allowed in the aggregate principal amount of amount of not less than $140,947,579, plus any accrued but unpaid interest, fees, and other expenses and amounts arising under or in connection with the Prepetition Second Term | $145.079 million | Impaired/ Entitled to vote | 6.1% |

| Class/ Designation | Plan Treatment | Estimated Amount of Claims | Status | Projected Recovery |
|---|---|---|---|---|
| | Facility Agreement. | | | |
| **Class 5:** General Unsecured Claims | Holders of General Unsecured Claims are not entitled to receive any Distribution or retain any property under the Plan on account of such Claims. | Unknown | Impaired/ Deemed to reject Plan | 0% |
| **Class 6:** Intercompany Claims | Holders of Intercompany Claims shall receive no Distribution on account of their Intercompany Claims. | N/A | Impaired/ Deemed to reject Plan | 0% |
| **Class 7:** Interests | On the Effective Date, all Interests shall be extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests. | N/A | Impaired/ Deemed to reject Plan | 0% |

# ARTICLE III
## BACKGROUND AND DISCLOSURES

### 3.1    General Background[3]

#### (a)    The Debtors' Business

Prior to the Sales, the Debtors were a leading operator of long-term acute care ("*LTAC*") hospitals in the United States.  The Debtors' predecessor was founded in 1992 and began its operations in 1993 with the opening of its first hospital in Shreveport, Louisiana.  The Debtors were founded by a clinician who recognized an opportunity to provide patients requiring acute care with better treatment than was available in general acute care hospitals.  The Debtors expanded and contracted their business over the next twenty-five (25) years.

Through its operating subsidiaries, the Debtors provided a full range of clinical services to patients with serious and complicated illnesses or injuries requiring extended hospitalization. Patients are admitted to the Debtors' facilities primarily from general acute care hospitals.  Many of the Debtors' patients suffer from one or more respiratory, neuromuscular, circulatory, renal, hepatic, cardiac, or oncologic conditions.  These conditions require a high level of monitoring and specialized care yet may not necessitate the continued services of an intensive care unit.  The Debtors' hospitals are designed to accommodate such patients and provide them with a higher level of care than a skilled nursing facility or an inpatient rehabilitation facility.  Substantially all of the Debtors' revenue derives from the provision of patient services and is received through Medicare and Medicaid reimbursements and payments from private payors.

---

[3] Additional information regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

Prior to the Sales, the Debtors operated a forty-nine (49) bed behavioral health hospital in Pittsburgh, Pennsylvania as well as three (3) out-patient wound care centers located within its Plano, Texas, Fort Worth, Texas and Dallas Texas hospitals.  As of the Petition Date, the Debtors operated seventeen (17) facilities in nine (9) states, consisting of 865 beds in nine (9) freestanding facilities (approximately 67% of the beds) and eight (8) hospitals within hospitals facilities (approximately 33% of the beds).

As of the Petition Date, the Debtors employed approximately 3,500 people, all but approximately 150 of whom were employed at the hospital level and many of whom were registered or licensed nurses and respiratory therapists.  While the Debtors employed several physicians, including a physician consultant as their National Medical Director, they did not employ the doctors that render services to its patients.  The doctors were independent practitioners and, other than physicians who are compensated at an hourly rate for providing overnight coverage and other regular administrative services of the Debtors' hospitals, generally provided care to the Debtors' patients on a fee-for-services basis billing third-party payors directly for their services.

In addition to the LTAC facilities, certain non-Debtor affiliates own and operate home health care agencies with locations in the states of Texas, Florida, and Nevada.  The home healthcare agencies and the Debtors' hospital facilities are operated independently of each other.

(b)     *The Debtors' Capital Structure*

As of the Petition Date, the Debtors' total consolidated long-term debt obligations were approximately $185 million.

In August 2018, LifeCare Holdings LLC (a) refinanced its then-existing revolving facility with a $40 million revolving facility by entering into the Prepetition Revolving Credit Agreement with the Prepetition Revolving Lender, (b) entered into the Prepetition Priming Term Loan Credit Agreement with the Prepetition Priming Term Loan Lenders and the Prepetition Priming Term Loan Agent pursuant to which LifeCare borrowed $7.5 million and which provided a term loan commitment of an additional $7.5 million, and (c) amended its then-existing term loan credit facility under the Prepetition Second Term Facility Agreement (collectively, the "***August 2018 Transactions***").

Prepetition Revolving Credit Agreement.  Prior to August 2018, the Debtors were party to a $20 million revolving credit facility which matured by its terms in May 2018.  LifeCare subsequently refinanced the debt under such revolving credit facility with the Prepetition Revolving Credit Agreement.

As of the Petition Date, there was approximately $23.9 million outstanding under the Prepetition Revolving Credit Agreement, plus issued but undrawn letters of credit of approximately $9.4 million.  These obligations were secured by substantially all of the Assets.

Prepetition Priming Term Loan Credit Agreement.  In connection with the  August 2018 Transactions, LifeCare Holdings LLC entered into the Prepetition Priming Term Loan Credit Agreement governing a $15 million secured term loan credit facility constituting (a) an initial

$7.5 million term loan at closing and (b) a commitment to borrow an additional $7.5 million of term loans after closing. Each of LifeCare Holdings LLC's subsidiaries (other than certain subsidiaries designated as non-guarantor subsidiaries under the Prepetition Priming Term Loan Credit Agreement that includes the certain non-Debtor Entities) guarantee LifeCare's obligations under the Prepetition Priming Term Loan Credit Agreement.

As of the Petition Date, there was approximately $7.7 million outstanding under the Prepetition Priming Term Loan Credit Agreement. This obligation is secured by substantially all of the Assets.

Prepetition Second Term Facility Agreement. Prior to the August 2018 Transactions, the term loan credit facility under the Prepetition Second Term Facility Agreement matured by its terms in November 2018. Pursuant to the August 2018 Transactions, LifeCare amended the Prepetition Second Term Facility Agreement to, among other things, extend the maturity date to November 2021, reduce the cash interest payments and amend the financial covenants under the Prepetition Second Term Facility Agreement. Each of LifeCare's subsidiaries (other than certain subsidiaries designated as non-guarantor subsidiaries under the Prepetition Priming Term Loan Credit Agreement that includes certain non-debtor Entities) guarantee LifeCare's obligations under the Prepetition Second Term Facility Agreement.

As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Second Term Facility Agreement was approximately $140.9 million. This obligation is secured by substantially all of the Assets.

Intercreditor Agreements. In connection with the August 2018 Transactions, the Debtors entered into (i) an intercreditor agreement, dated  as of August 10, 2018 (as amended, supplemented or otherwise modified the "*ABL Intercreditor Agreement*"), by and among the Debtors, the White Oak Healthcare Finance, LLC, Glas Trust Company LLC and the Prepetition Second Term Facility Agents and (ii) a term loan intercreditor agreement, dated as of August 10, 2018 (as amended, supplemented or otherwise modified, the "*Term Loan Intercreditor Agreement*" and, together with the ABL Intercreditor Agreement, the "*Intercreditor Agreements*"), by and among the Prepetition Priming Term Loan Agent and Prepetition Second Term Facility Agents and acknowledge by the Debtors. Pursuant to the ABL Intercreditor Agreement, (a) the liens on ABL Priority Collateral (as defined in the ABL Intercreditor Agreement) securing the obligations under the Prepetition Revolving Credit Agreement are senior to the liens on ABL Priority Collateral securing the obligations under the Prepetition Priming Term Loan Credit Agreement and the Prepetition Second Term Facility Agreement and (b) the liens on Term Facility Priority Collateral (as defined in the ABL Intercreditor Agreement) securing the obligations under the Prepetition Priming Term Loan Credit Agreement and the Prepetition Second Term Facility Agreement are senior to the liens on the Term Facility Priority Collateral securing the obligations under the Prepetition Revolving Credit Agreement. Pursuant to the Term Loan Intercreditor Agreement, the liens on the collateral securing the obligations are under the Prepetition Priming Term Loan Credit Agreement are senior to the liens on the collateral securing the obligations under the Prepetition Second Term Facility Agreement.

**3.2      Events Leading to Chapter 11**

Internal and external factors led the Debtors to an unmanageable level of debt service obligations and an untenable liquidity position.  In 2015, Medicare's establishment of patient criteria to qualify as an LTAC-compliant patient facility led to significant reimbursement rate declines over the course of 2015 and 2016 as changes were implemented.  When rates declined sharply, the Debtors were unable to adjust.  Further, the number of patients qualifying for Medicare to have services provided in an LTAC setting has declined substantially, resulting in a significant oversupply of LTAC beds in the market.

In an effort to address decreasing Medicare rates and declining eligible patient volumes, the Debtors focused on four primary areas.  First, the Company sought to improve their core business by building profitable referral sources and offering world-class care.  Second, the Company sought to improve the value proposition of its strongest hospitals by adding complimentary businesses and/or developing centers of excellences for disease specific programs.  Third, the Company closed four (4) marginally performing hospitals.  Finally, the Company sought to implement a multi-faceted growth strategy designed to diversify its businesses through home health agency acquisitions and developing offerings designed to utilize its post-acute care platform to compete in the evolving value-based health care environment.

In addition to developing these areas of focus, in August 2018, the Company raised additional liquidity and completed an amend-and-extend transaction described above to provide runway to execute on their business plan, including the continued acquisition and expansion of home health businesses.

During the course of pursuing the August 2018 refinancing, the Company's combined operations were generally performing in line with their business plan, although certain of the Company's home health agency acquisitions were experiencing unfavorable results.  Through September 2018, these unfavorable home health agency results were generally offset by favorable hospital results.  In the fourth quarter of 2018, the Debtors' hospitals also began to experience unfavorable operating results.   These unfavorable results coupled with the unfavorable home health operations resulted in the Company being unable to perform in line with their 2018 business plan.  Due to the anticipated 2018 business plan shortfall, the Debtors concluded that they would be unable to meet the debt level covenant levels required by the August 2018 Transaction during 2019.  As a result, the Company initiated discussions with their lender groups.  In conjunction with these discussions, the Company (a) closed five (5) additional marginally performing hospitals, (b) identified and pursued cost savings opportunities to conserve liquidity, and (c) engaged Houlihan Lokey Capital, Inc. to explore strategic alternatives including, but not limited to working with the lender groups on restructuring the Debtors' debt and providing access to funds necessary for continued operations.

**3.3      The Chapter 11 Cases**

*(a)      Generally*

As set forth above, on the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The commencement of a

chapter 11 case creates an estate that is composed of all of the legal and equitable interests of the debtor as of that date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession." Prior to the Sales, the Debtors have continued to operate their businesses and manage their properties as debtors and debtors in possession. By order entered on May 8, 2019 [D.I. 36], the Chapter 11 Cases are being jointly administered for procedural purposes only. No trustee or examiner has been appointed in the Chapter 11 Cases. On May 17, 2019, the Office of the United States Trustee for the District of Delaware appointed the Committee.

The filing of the Debtors' bankruptcy petitions on the Petition Date triggered the immediate imposition of the automatic stay under Bankruptcy Code section 362, which, with limited exceptions, enjoins all collection efforts and actions by creditors, the enforcement of liens against property of the Debtors and both the commencement and the continuation of prepetition litigation against the Debtors. With certain limited exceptions and/or modifications as permitted by order of the Bankruptcy Court, the automatic stay will remain in effect from the Petition Date until the Effective Date of the Plan.

*(b)*      ***"First Day" Motions and Related Applications***

Commencing on the Petition Date, the Debtors filed the following "first-day" motions and applications designed to ease the Debtors' transition into chapter 11, maximize the value of the Assets, and minimize the effects of the commencement of the Chapter 11 Cases (collectively, the "***First Day Motions***"):

i.      Debtors' Motion for Entry of an Order Directing the Joint Administration of the Debtors' Chapter 11 Cases ("***Joint Administration Motion***").

ii.      Debtors' Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent Effective as of the Petition Date ("***Claims Agent Retention Motion***")

iii.      Debtors' Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Utility Services, (II) Deeming Utility Companies Adequately Assured of Future Performance, (III) Establishing Procedures for Determining Additional Adequate Assurance of Payment, and (IV) Setting a Final Hearing Related Hereto ("***Utility Motion***").

iv.      Debtors' Motion for Entry of an Order Authorizing Certain Procedures to Maintain the Confidentiality of Patient Information as Required by Applicable Privacy Rules ("***HIPAA Motion***").

v.      Debtors' Motion for Entry of an Order (I) Authorizing But Not Directing, Debtors to (A) Continue Insurance Policies Entered Into Prepetition, (B) Satisfy All Obligations Relating to the Prepetition Insurance Policies, (C) Continue Insurance Premium Financing Agreements, and (II) Granting Related Relief ("***Insurance Motion***").

vi.      Debtors' Motion for Entry of an Order (I) Authorizing Payment of Certain Prepetition Taxes and (II) Authorizing Financial Institutions to Honor and

Process All Related Checks and Electronic Payments Requests ("***Tax Motion***").

vii.    Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Using Existing Centralized Cash Management System, (B) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (C) Maintain Existing Bank Accounts and Check Stock; and (II) Granting Related Relief ("***Cash Management Motion***").

viii.   Debtors' Motion for Entry of an Order Authorizing the Debtors to Maintain, Administer, Modify, and Renew their Refund Program and Practices and Honor Obligations Related Thereto ("***Refund Motion***").

ix.     Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing, but not Directing, Debtors to Pay Prepetition Claims of Certain Critical Vendors and (II) Authorizing Financial Institutions to Honor and Process All Related Checks and Transfer Requests ("***Critical Vendor Motion***").

x.      Debtors' Motion for Entry of an Order (I) Authorizing, but not Directing, Payment of Certain Prepetition Claims of Warehousemen and Other Lien Claimants and (II) Granting Related Relief ("***Lien Claimant Motion***").

xi.     Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Benefits, and Other Obligations and (B) Continue Employee Programs and Severance Program and (II) Granting Related Relief ("***DIP Motion***").

On May 8, 2019, the Bankruptcy Court entered orders (i) approving the relief requested in the Joint Administration Motion [D.I. 36], the HIPAA Motion [D.I. 38], the Claims Agent Retention Application [D.I. 39], the Insurance Motion [D.I. 41], the Taxes Motion [D.I. 42], the Lien Claimant Motion [D.I. 46] and the Refund Motion [D.I. 41] on a final basis, and (ii) approving the relief requested in the Utilities Motion [D.I. 40], the Cash Management Motion [D.I. 43], the Critical Vendor Motion [D.I. 45], the Wages Motion [D.I. 51], and the DIP Motion [D.I. 47] on an interim basis.

On May 28, 2019, the Bankruptcy Court entered orders approving, on a final basis, the relief requested in the Utilities Motion [D.I. 143], the Cash Management Motion [D.I. 166], the Critical Vendor Motion [D.I. 167], and the Wages Motion [D.I. 176].

On June 21, 2019, the Bankruptcy Court entered an order approving, on a final basis, the relief requested in the DIP Motion [D.I. 278].  On November 4, 2019, the DIP Repayment Event (as defined in the DIP Order) occurred, and on November 5, 2019, the Bankruptcy Court entered the *Order Approving Stipulation Supplementing the Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 686].

*(c)*      ***Retention of Professional Advisors***

Pursuant to orders entered on May 29, 2019, the Bankruptcy Court authorized the Debtors to retain and employ (i) Akin Gump Strauss Hauer & Feld LLP [D.I. 172] and Young Conaway Stargatt & Taylor, LLP as their bankruptcy co-counsel [D.I. 173]; (ii) Berkeley Research Group, LLC, as financial advisors [D.I. 174]; (iii) Houlihan Lokey Capital, Inc. ("Houlihan") as investment banker [D.I. 177]; and (iv) Prime Clerk LLC as administrative advisor [D.I. 171].  The Bankruptcy Court also authorized the Debtors to retain and employ certain professionals utilized by the Debtors in the ordinary course of business prior to the Petition Date [D.I. 170].

Pursuant to orders entered on July 9, 2019, the Bankruptcy Court authorized the Committee to retain and employ (i) Greenberg Traurig, LLP as their lead bankruptcy counsel [D.I. 385]; (ii) Bayard, P.A. as their co-counsel [D.I. 377]; and (iii) Alvarez & Marsal as their financial advisor [D.I. 376].

On May 15, 2019, the Court entered the *Order Directing the Appointment of a Patient Care Ombudsman* [D.I. 100], and the U.S. Trustee appointed Jerry Seelig as the Patient Care Ombudsman [D.I. 120].  Subsequently, the Bankruptcy Court authorized the retention of Seelig + Cussigh HCO LLC [D.I. 287], Perkins Coie LLP [D.I. 288], and Morris James LLP [D.I. 375] as advisors or counsel to the Patient Care Ombudsman.

On November 12, 2019, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing the Debtors to (I) Employ and Retain Seelig + Cussigh HCO LLC to Provide Medical Record Disposition Services, Effective as of October 3, 2019, and (II) Dispose of Remaining Patient Records in the Debtors' Possession* [D.I. 707], which is scheduled to be heard at the hearing on December 3, 2019.

*(d)*      ***The Sales***

  i.      The Bidding Procedures

As set forth in the First Day Declaration, the Debtors' paramount goal in the Chapter 11 Cases was to maximize the value of the Estates for the benefit of the Debtors' creditor constituencies and other stakeholders through the sale of substantially all of the Assets.  On June 6, 2019, the Debtors filed a motion seeking entry of an order (i)(a) approving bidding procedures relating to the sale of a portion or substantially all of the Assets, (b) scheduling an auction for, and a hearing to approve, the sale of the Assets, (c) approving the form and manner of notices for the sale, auction and sale hearing, (ii) establishing procedures for selection of one or more stalking horse purchasers, and (iii) (x) approving the sale of the Assets free and clear of liens, claims, interests and encumbrances, and (y) authorizing the assumption and assignment of executory contracts and unexpired leases.

On June 26, 2019, the Bankruptcy Court entered the Bidding Procedures Order establishing, among other things, August 1, 2019, at 5:00 p.m. (ET) as the bid deadline, August 6, 2019, at 10:00 a.m. (CT) as the auction date, and August 13, 2019, as the date of the hearing to approve the Sales.

ii.    The Sales Process

The Debtors and their professionals marketed the Assets to potential purchasers in accordance with the Bidding Procedures Order.  Prior to the Petition Date, in March 2019, the Debtors engaged Houlihan as their investment banker for the purpose of assisting the Debtors with an analysis of strategic alternatives, including the sale of the Assets.  Houlihan spent considerable time investigating market receptivity to a potential out-of-court sale, contacting approximately 65 potential strategic and financial candidates.  Of these entities, approximately 32 executed confidentiality agreements and received confidential information memorandums, with those parties who expressed continued interest in receiving access to a virtual data room and the opportunity to meet with the Debtors' management to conduct additional due diligence. After the Petition Date, Houlihan continued the marketing and sale process in accordance with the terms of the Bidding Procedures, including by continuing to reach out to potential strategic and financial buyers and having advanced discussions with numerous potential buyers.  During the postpetition period, Houlihan received inbound inquiries and referrals from an additional twenty-six (26) potential bidders, twenty-five (25) of whom executed non-disclosure agreements with the Debtors.  Thus, over the course of the Debtors' marketing and sale process, Houlihan was in contact with ninety-one (91) potential bidders, and fifty-seven (57) of those bidders signed non-disclosure agreements with the Debtors.

The Debtors commenced negotiations with various parties seeking to consummate a transaction that maximized the value of the Debtors' businesses in the timeframe required under the milestones in the DIP Credit Agreement.  Following the Debtors' receipt of indications of interest from several potential buyers, the Debtors began to engage in advanced discussions regarding a potential sale transaction for some or all of the Assets with such parties.  The bids submitted by those parties also included assets of certain non-Debtor affiliates of the Debtors.

In accordance with the Bidding Procedures Order, after significant discussions with, and further due diligence by, those parties that had submitted offers, the Debtors entered into two separate stalking horse purchase agreements for the sale of certain of the Assets with PAM Squared, LLC and LifeCare 2.0 LLC.  The respective stalking horse agreements and protections were subsequently approved by the Bankruptcy Court [D.I. 414 & 443].

An auction was held on August 6, 2019.  On August 8, 2019, the Debtors filed *the Notice of (I) Successful Bidders with Respect to the Debtors' Assets, (II) Supplemental Designated Contracts, and (III) Supplemental Designated Contract Objection Deadline* [D.I. 479], which provided that three purchasers, PAM Squared, LLC, LifeCare 2.0, LLC, and Select Medical Corporation, were the successful bidders for certain of the Assets.  The total amount of cash consideration achieved through the Sales was approximately $34.5 million, plus the $5 million PAM Note, the satisfaction of approximately $4 million worth of postpetition accounts receivable, $2 million of stub-rent claims, and $11 million of cure obligations.  The Debtors' accounts receivable and equity interests in LifeCare Home Health Acquisition, LLC were not sold in connection with the Sales.

On August 19, 2019, the Bankruptcy Court entered Orders approving the PAM Sale and the Select Sale [D.I. 519 & 520], and on August 21, 2019, the Bankruptcy Court entered an Order approving the LifeCare 2.0 Sale [D.I. 528].

Subsequently, the Debtors filed the *Debtors' Motion to Supplement the Sale Order Authorizing the Sale of Certain Corporate Assets to PAM Squared, LLC* [D.I. 598], which sought to sell certain information technology and revenue cycle management assets to PAM Squared, LLC. While this sale did not provide for the payment of any cash consideration to the Debtors, it did provide for the assumption of substantial ongoing liabilities, preventing potential Administrative Claims from accruing against the Estates. On September 26, 2019, the Bankruptcy Court entered the order supplementing PAM Sale [D.I. 614].

The LifeCare 2.0 Sale, the Select Sale, and the PAM Sale closed on September 30, 2019.

In addition, on November 7, 2019, the Debtors filed the *Debtors' Motion for an Order Approving the Sale of Equity Interests of LifeCare Home Health Acquisition, LLC and Granting Related Relief* [D.I. 698], seeking to sell Debtor LifeCare Holdings LLC's equity interests of LifeCare Home Health Acquisition, LLC, free and clear of all liens, claims and encumbrances to White Oak Healthcare Finance LLC for a total purchase price of $350,000, which is scheduled to be heard by the Court on November 25, 2019.

(e)     **Schedules and Bar Dates**

On July 2, 2019, the Debtors filed the Schedules. Among other things, the Schedules set forth the Claims of known or putative creditors against the Debtors as of the Petition Date, based upon the Debtors' books and records.

On [December 3], 2019, the Bankruptcy Court entered the Solicitation Procedures and Bar Date Order that, among other things, established the General Bar Date and the Initial Administrative Claim Bar Date as [January 6], 2020 at 5:00 p.m. (prevailing Eastern Time). As described in detail below, the Plan contemplates the establishment of a Final Administrative Claim Bar Date and Professional Fee Bar Date pursuant to the Confirmation Order.

The projected recoveries set forth in the Plan are based on certain assumptions, including the Debtors' estimates of the Claims that will eventually be Allowed in various Classes. There is no guarantee that the ultimate amount of each of such categories of Claims will correspond to the Debtors' estimates. The Debtors or the Liquidating Trustee, as applicable, and their professionals will investigate Claims filed against the Debtors to determine the validity of such Claims. The Debtors or the Liquidating Trustee, as applicable, may file objections to Claims that are filed in improper amounts or classifications, or are otherwise subject to objection under the Bankruptcy Code or other applicable law.

(f)     **The Wind-down of the Estates**

Following the Sales and satisfaction of the Debtors' obligations under the DIP Credit Agreement, the Debtors are focused principally on efficiently winding down their businesses, preserving Cash held in the Estates, and monetizing their remaining Assets, the most substantial of which is the Debtors' outstanding accounts receivable. In addition to the accounts receivable, the remaining Assets include, among other things, Cash, certain deposits, prepayments, credits and refunds, insurance policies or rights to proceeds thereof, LifeCare Holding LLC's equity interests in LifeCare Home Health Acquisition LLC, and certain Causes of Action. To motivate

and preserve essential non-insider personnel that are vital to the Debtors' efforts to achieve the highest rate of recovery on the collection of their accounts receivable and maximize the value of their other remaining Assets, the Debtors filed the *Debtors' Motion for Entry of an Order Approving the Debtors' Incentive Plans Related to Accounts Receivable Collections and Cost Reporting* [D.I. 697], which as approved by the Bankruptcy Court on [__], 2019 [D.I. __].

This combined Disclosure Statement and Plan provides for the Assets, to the extent not already liquidated, to be liquidated over time and the proceeds thereof to be distributed to Holders of Allowed Claims in accordance with the terms of the Plan and the treatment of Allowed Claims described more fully herein. The Liquidating Trustee will effect such liquidation and distributions. The Debtors will be dissolved as soon as practicable after the Effective Date.

## ARTICLE IV
## CONFIRMATION AND VOTING PROCEDURES

**4.1    Confirmation Procedure**. The Solicitation Procedures and Bar Date Order, among other things, conditionally approves the combined Disclosure Statement and Plan for solicitation purposes only and authorizes the Debtors to solicit votes to accept or reject the Plan. The Confirmation Hearing has been scheduled for January 14, 2020 at 10:00 a.m. (prevailing Eastern Time) at the Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom 1, Wilmington, Delaware 19801 to consider (a) final approval of the Disclosure Statement as providing adequate information pursuant to Bankruptcy Code section 1125 and (b) confirmation of the Plan pursuant to Bankruptcy Code section 1129. The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

**4.2    Procedure for Objections**. Any objection to final approval of the combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125 or confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served on (a) counsel to the Debtors, (i) Akin Gump Strauss Hauer & Feld LLP, 2001 K Street, N.W., Washington, DC 20006, Attn: Scott L. Alberino, Esq. (salberino@akingump.com) and Kevin Eide, Esq. (keide@akingump.com) and  2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Link Schultz, Esq. (sschultz@akingump.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: M. Blake Cleary, Esq. (mbcleary@ycst.com), Jaime L. Chapman, Esq. (jchapman@ycst.com), and Joseph M. Mulvihill, Esq. (jmulvihill@ycst.com); (b) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE, 19801, Attn: Benjamin A. Hackman, Esq. (Benjamin.A.Hackman@usdoj.gov); (c) counsel to the lender under the Debtors' postpetition debtor-in-possession financing facility, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036, Attn:  Arthur Steinberg, Esq. (asteinberg@kslaw.com) and Terry D. Novetsky, Esq. (tnovetsky@kslaw.com); (d) counsel to certain lenders under the Debtors' prepetition priming term loan facility, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Matthew M. Roose, Esq. (matthew.roose@ropesgray.com); (e) counsel to the administrative agent under the Debtors' prepetition priming term loan facility, (i) Thompson Hine LLP, 335 Madison Avenue, 12th Floor, New York, NY 10017, Attn: John H. Bae, Esq. (john.bae@thompsonhine.com) and (ii) Potter Anderson & Corroon LLP, 1313 N.

Market Street, 6th Floor, Wilmington, DE 19801, Attn: Jeremy W. Ryan, Esq. (jryan@potteranderson.com); (f) counsel to the co-agents under the Debtors' prepetition second priority term loan facility, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022, Attn: Ned S. Schodek, Esq. (ned.schodek@shearman.com) and Jordan Wishnew, Esq. (jordan.wishnew@shearman.com); and (g) counsel to the Committee, (i) Greenberg Traurig LLP, 77 West Wacker Drive, Suite 3100, Chicago, IL 60601, Attn: Nancy A. Peterman, Esq. (petermann@gtlaw.com) and David D. Cleary, Esq. (clearyd@gtlaw.com) and (ii) Bayard, P.A., 600 North King Street, Suite 400, Wilmington, DE 19801, Attn: Justin R. Alberto, Esq. (jalberto@bayardlaw.com) and Erin R. Fay, Esq. (efay@bayardlaw.com) (collectively, the "*Objection Recipients*"); in each case, by no later than [January 3], 2020 at 4:00 p.m. (prevailing Eastern Time). Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

**4.3     Requirements for Confirmation**. The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of Bankruptcy Code section 1129. Among other requirements, the Plan (i) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (ii) must be feasible. The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

**4.4     Classification of Claims and Interests**

Bankruptcy Code section 1123 provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with Bankruptcy Code section 1123, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to Bankruptcy Code section 1123(a)(1) need not be and have not been classified). The Debtors also are required, under Bankruptcy Code section 1122, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtors believe that the Plan complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the Holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtors believe that the Plan has classified all Claims and Interests in compliance with the provisions of Bankruptcy Code section 1122 and applicable case law. It is possible that a Holder of a Claim or Interest may challenge the Debtors' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its confirmation. Any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

**EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by Creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein. The Debtors believe that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

## 4.5    Impaired Claims or Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in Bankruptcy Code section 1124) under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan. In addition, if the Holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of

25437081.10

such claims or interests, such impaired class is deemed to have rejected such plan under Bankruptcy Code section 1126(g) and, therefore, such Holders are not entitled to vote on such plan.

Under the Plan, Holders of Claims in Classes 3 and 4 are Impaired and are entitled to vote on the Plan.  Under the Plan, Holders of Claims or Interests in Classes 5 through 7 are Impaired and will not receive or retain any property under the Plan on account of such Claims or Interests and, therefore, are not entitled to vote on the Plan and deemed to reject the Plan.  Under the Plan, Holders of Claims in Classes 1 and 2 are Unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 3 AND 4.**

### 4.6    Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in Bankruptcy Code section 1129(b).  Bankruptcy Code section 1129(b) requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  Here, because Holders of Claims and Interests in Classes 5 through 7 are deemed to reject the Plan, the Debtors will seek confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in Bankruptcy Code section 1129(b).  The Debtors believe that such requirements are satisfied, as no Holder of a Claim or Interest junior to those in Classes 5 through 7 is entitled to receive any property under the Plan.

A plan does not "discriminate unfairly" if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the nonaccepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests.  The Debtors believe that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class.  Accordingly, the Debtors believe that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable."  To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors and equity holders, as follows:

*(a)*    Secured Creditors.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash

payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

*(b)*    <u>Unsecured Creditors</u>.    Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the Holders of Claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

*(c)*    <u>Interests</u>.    Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors believe that the distributions provided under the Plan satisfy the absolute priority rule, where required.

**4.7    Feasibility**

Bankruptcy Code section 1129(a)(11) requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). Inasmuch as the Assets have been, or will be, liquidated and the Plan provides for the Distribution of all of the Cash proceeds of the Assets to Holders of Claims that are Allowed in accordance with the Plan, for purposes of this test, the Debtors have analyzed the ability of the Liquidating Trustee to meet its obligations under the Plan. Based on the Debtors' analysis, the Liquidating Trustee will have sufficient assets to accomplish its tasks under the Plan. Therefore, the Debtors believe that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

**4.8    Best Interests Test and Liquidation Analysis**

Even if a plan is accepted by the Holders of each class of claims and interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all Holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in Bankruptcy Code section 1129(a)(7), requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to Holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were

converted to cases under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to Holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the Holders of claims or interests in such impaired class.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. However, the Debtors believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in a chapter 7 case.

The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee. The Debtors believe such amount would exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors. Conversion also would likely delay the liquidation process and ultimate distribution of the Assets. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for professionals) that are allowed in the chapter 7 cases.

Accordingly, the Debtors believe that Holders of Allowed Claims would receive less than anticipated under the Plan if the Chapter 11 Cases were converted to chapter 7 cases, and therefore, the classification and treatment of Claims and Interests in the Plan complies with Bankruptcy Code section 1129(a)(7).

## 4.9    Acceptance of the Plan

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of ballots are set forth in the Solicitation Procedures and Bar Date Order.

For the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one Voting Class, excluding the votes of insiders, must actually vote to accept the Plan.

**IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AND CLAIMS AGENT AT HOSPITAL ACQUISITION CLAIMS PROCESSING CENTER, C/O PRIME CLERK LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232, OR AT**

LIFECAREINFO@PRIMECLERK.COM.    THE SOLICITATION AND CLAIMS AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

HOLDERS OF CLAIMS IN CLASSES 3 AND 4 WHO DO NOT WISH TO PROVIDE THE RELEASES SET FORTH IN SECTION 14.1(c) HEREIN MUST AFFIRMATIVELY INDICATE SO BY CHECKING THE "OPT-OUT" BOX ON THEIR BALLOT.

PLEASE BE ADVISED THAT ALL HOLDERS OF CLAIMS IN CLASSES 3 AND 4 THAT (I) VOTE TO ACCEPT THE PLAN; OR (II) VOTE TO REJECT THE PLAN, BUT DO NOT AFFIRMATIVELY MAKE THE OPT-OUT ELECTION ON THEIR BALLOT SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES SET FORTH IN SECTION 14.1(c) HEREIN.

## ARTICLE V
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.    THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 5.1    The Plan May Not Be Accepted

The Debtors can make no assurances that the requisite acceptances to the Plan will be received, and the Debtors may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.  There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Plan.

### 5.2    The Plan May Not Be Confirmed

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.  Even if the Bankruptcy Court determined that the combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation had not been met.  Moreover, there can be no assurance that modifications to the combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes.  If the Plan is not confirmed, it is unclear what

distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

If the Plan is not confirmed, the Plan will need to be revised and it is unclear whether a chapter 11 reorganization or liquidation of the Debtors' assets could be implemented and what distribution the Holders of Allowed Claims would receive. If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the Holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Plan. There can be no assurance that the terms of any such alternative would be similar to or as favorable to the Debtors' creditors as those proposed in the Plan.

## 5.3    Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

## 5.4    Objections to Classification of Claims

Bankruptcy Code section 1122 requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors would seek to (i) modify the Plan to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires re-solicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules, they would be required

to resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors believe that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Plan and could increase the risk that the Plan will not be consummated.

## 5.5    Failure to Consummate the Plan

The Plan provides for certain conditions that must be satisfied (or waived) prior to the Confirmation Date and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be consummated.

## 5.6    Plan Releases May Not Be Approved

There can be no assurance that the releases, as provided in Article XIV of the Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

## 5.7    The Total Amount of 503(b)(9) Claims and Initial Administrative Claims May Exceed the Caps

As set forth in Section 13.1(f), the total amount of Allowed 503(b)(9) Claims shall be no greater than $[_____], and the total amount of Allowed Initial Administrative Claims shall be no greater than $[_____]. If the total amount of Allowed 503(b)(9) Claims is higher than $[_____], or the total amount of Allowed Initial Administrative Claims is higher than $[_____], the Debtors may not be able to satisfy the conditions for this Plan to become effective.

## 5.8    Reductions to Estimated Creditor Recoveries

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of cash realized from the liquidation of the Debtors' remaining assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

## 5.9    Certain Tax Considerations

There are a number of material income tax considerations, risks, and uncertainties associated with the Plan.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE VI
## TREATMENT OF UNCLASSIFIED CLAIMS

**6.1     Administrative Claims**.  Except as otherwise set forth in this Article VI, or as soon as practicable after the Final Administrative Claim Bar Date, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim: (i) Cash equal to the amount of such Allowed Administrative Claim; or (ii) such other treatment as to which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

*(a)*     **Final Administrative Claim Bar Date**.  Holders of Administrative Claims, other than Professional Fee Claims, accruing after the date of entry of the Solicitation Procedures and Bar Date Order through and including the Effective Date ("***Final Administrative Claims***") shall file with the Claims Agent and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date. The Effective Date Notice shall set forth the Final Administrative Claim Bar Date and shall constitute notice of such Bar Date.   Absent further Court order, any Final Administrative Claim not filed by the Final Administrative Claim Bar Date shall be deemed waived and the Holder of such Final Administrative Claim shall be forever barred from receiving payment on account thereof.

*(b)*     **Objections by the Liquidating Trustee**.  Objections to requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the requesting party by the Claims Objection Deadline.

*(c)*     **Professional Fee Claims**.   All applications for allowance and payment of Professional Fee Claims shall be Filed on or before the Professional Fee Claims Bar Date.  If an application for a Professional Fee Claim is not Filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.   The Effective Date Notice shall set forth the Professional Fee Claims Bar Date and shall constitute notice of such Bar Date.  Objections to any Professional Fee Claims must be Filed and served on the Liquidating Trustee and the requesting party by no later than twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims.  Allowed Professional Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court upon the earlier of

(i) the Effective Date or (ii) the date upon which an order relating to any such Allowed Professional Fee Claim is entered, and in each case, as soon as reasonably practicable.

*(d)* **U.S. Trustee Fees**. All fees payable on or before the Effective Date, pursuant to United States Code title 28 section 1930, shall be paid by the Debtors on or before the Effective Date. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file a request for Administrative Claims.

**6.2    DIP Credit Agreement Claims**. All DIP Credit Agreement have been paid or otherwise satisfied in full.

**6.3    Priority Tax Claims**. Within the time period provided in Article X of the Plan, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (i) Cash equal to the amount of such Allowed Priority Tax Claim; or (ii) such other treatment as to which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

## ARTICLE VII
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Unless the Holder of an Allowed Claim and the Debtors or the Liquidating Trustee, as applicable, agree to a different treatment, each Holder of an Allowed Claim shall receive the following Distributions in accordance with Article X of the Plan:

**7.1    Class 1:  Priority Non-Tax Claims**. Each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.

**7.2    Class 2: Other Secured Claims**. Each Holder of an Allowed Other Secured Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim: (A) return of the collateral securing such Allowed Other Secured Claim; or (B) Cash equal to the amount of such Allowed Other Secured Claim; or (C) such other treatment which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Other Secured Claim have agreed upon in writing.

**7.3    Class 3: Prepetition Priming Term Loan Claims**. Each Holder of an Allowed Prepetition Priming Term Loan Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 3 Claim, such Holder's pro rata share of the Distribution Proceeds remaining after payment in full of the Unclassified Claims, Priority Non-Tax Claims, and Other Secured Claims until the Prepetition Priming Term Loan Claims are paid in full. On the Effective Date, the Prepetition Priming Term Loan Claims shall be Allowed in the aggregate principal amount of not less than $[●], plus any accrued but unpaid interest, fees, and other expenses and amounts arising under or in connection with the Prepetition Priming Term Loan Agreement.

25437081.10

**7.4     Class 4: Prepetition Second Term Facility Claims**.   Each Holder of an Allowed Prepetition Second Term Facility Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 4 Claim, such Holder's pro rata share of the Distribution Proceeds remaining after payment in full of the Unclassified Claims, Priority Non-Tax Claims, Other Secured Claims, and Prepetition Priming Term Loan Claims until the Prepetition Second Term Facility Claims are paid in full.  On the Effective Date, the Prepetition Second Term Facility Claims shall be Allowed in the aggregate principal amount of amount of not less than $140,947,579, plus any accrued but unpaid interest, fees, and other expenses and amounts arising under or in connection with the Prepetition Second Term Facility Agreement.

**7.5     Class 5:  General Unsecured Claims**.  Holders of General Unsecured Claims are not entitled to receive any Distribution or retain any property under the Plan on account of such Claims.

**7.6     Class 6: Intercompany Claims**.  Holders of Intercompany Claims shall receive no Distribution on account of their Intercompany Claims.

**7.7     Class 7: Interests**.  On the Effective Date, all Interests shall be extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests.

**7.8     Reservation of Rights Regarding Claims and Interests**.  Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE VIII
## ACCEPTANCE OR REJECTION OF THE PLAN

**8.1     Class Entitled to Vote**.  Because Claims in Classes 3 and 4 are Impaired and Holders thereof will receive or retain property or an interest in property under the Plan, only a Holder of Claims in Classes 3 and 4 shall be entitled to vote to accept or reject the Plan.

**8.2     Acceptance by Impaired Classes of Claims or Interests**.   In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan. In accordance with Bankruptcy Code section 1126(d) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Interests shall have accepted the Plan if such Plan is accepted by Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have timely and properly voted to accept or reject the Plan.

**8.3     Presumed Acceptance by Unimpaired Classes**.  Because Claims in Classes 1 and 2 are Unimpaired pursuant to Bankruptcy Code section 1126(f), Holders of Claims in Classes 1 and 2 are deemed to have accepted the Plan and, therefore, such Holders of Claims are not entitled to vote to accept or reject the Plan.

**8.4     Presumed Rejections by Impaired Classes**.  Because Holders of Claims or Interests in Classes 5, 6 and 7 are not entitled to receive or retain any property under the Plan, pursuant to Bankruptcy Code section 1126(g), such Holders of Claims or Interests are presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

**8.5     Confirmation Pursuant to Bankruptcy Code Section 1129(b)**.  To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors reserve the right to request confirmation of the Plan, as it may be modified from time to time, under Bankruptcy Code section 1129(b).  The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the documents submitted in support thereof or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**8.6     Controversy Concerning Impairment**.  If a controversy arises as to whether any Claim or Interest is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**8.7     Elimination of Vacant Classes**.  Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

## ARTICLE  IX
## IMPLEMENTATION OF THE PLAN AND THE LIQUIDATING TRUST

**9.1     Implementation of the Plan**.  The Plan will be implemented by, among other things, the continued existence of certain of the Debtors solely for purposes of monetizing existing accounts receivable and only to the extent determined necessary under applicable law, the establishment of the Liquidating Trust, the transfer to the Liquidating Trust of the Liquidating Trust Assets, including, without limitation, all Cash and Causes of Action, and the making of Distributions by the Liquidating Trust in accordance with the Plan and Liquidating Trust Agreement.

**9.2     Substantive Consolidation**.  The Debtors analyzed, *inter alia*, the Debtors' books and records, intercompany accounting practices, corporate structure, shared staff and services, financial reporting, and cash management practices.  Because the Debtors' businesses were operated as one consolidated enterprise, the Plan contemplates entry of an Order substantively consolidating the Estates and the Chapter 11 Cases as set forth below.  Absent the substantive consolidation proposed under the Plan, the process of winding down the Estates and administering Distributions would be more time consuming and costly.  As such, given the limited amount of funds available for distribution and the expense involved in winding down the Estates and administering Distributions, recoveries will be maximized by consolidating the Assets and liabilities of the Debtors as provided herein.

    *(a)*     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Code sections 105(a) and 1123(a)(5)(C), effective as of the Effective Date, of the substantive consolidation of the Estates of the Debtors for the

purposes of confirming and consummating the Plan, including, but not limited to, voting, Confirmation and Distributions.

*(b)*       On and after the Effective Date, (i) all Assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) each Claim filed or to be filed against any Debtor, as to which two or more Debtors are co-liable as a legal or contractual matter, shall be deemed filed as a single Claim against, and a single obligation of, the Debtors, (iii) all Claims held by a Debtor against any other Debtor shall be cancelled or extinguished, (iv) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any other Debtor, (v) all Interests shall be cancelled, (vi) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, (vii) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any Claim based upon a guarantee thereof executed by any other Debtor shall be treated as one Claim against the substantively-consolidated Debtors, and (viii) any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors and any Claims based upon such joint or several liability shall be treated as one Claim against the substantively-consolidated Debtors.

*(c)*       The substantive consolidation of the Debtors under the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (i) the legal and organizational structure of the Debtors, (ii) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (iii) any agreements entered into by the Liquidating Trust on or after the Effective Date, (iv) the Debtors' or the Liquidating Trust's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis, (v) any Retained Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the Estates of the Debtors, and (vi) distributions to the Debtors or the Liquidating Trust from any insurance policies or the proceeds thereof.  Notwithstanding the substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee Fees until its particular case is closed (pursuant to this Plan or otherwise), dismissed or converted.

*(d)*       This combined Disclosure Statement and Plan shall serve as, and shall be deemed to be, a motion for entry of an Order of the Bankruptcy Court approving the substantive consolidation of the Estates and Chapter 11 Cases.  If no objection to the Plan is timely filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the Voting Deadline or such other date as may be established by the Bankruptcy Court, the Plan, including the substantive consolidation of the Estates and Chapter 11 Cases, may be approved by the Bankruptcy Court as part of the Confirmation Order.  If any such objections are timely filed and served, the Plan and the objections thereto shall be considered by the Bankruptcy Court at the Confirmation Hearing.

*(e)*       Nothing in this Section 9.2 shall augment or increase the property that constitutes collateral or any offset or similar right securing any Claim or otherwise increase the secured portion of any Claim under Bankruptcy Code section 506(a).

*(f)*     If the Bankruptcy Court determines that the deemed substantive consolidation of any given Debtors is not appropriate, then the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis.  Furthermore, the Debtors reserve their rights: (i) to seek confirmation of the Plan without implementing deemed consolidation of any given Debtor, and, in the Debtors' reasonable discretion, to request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (ii) to seek deemed consolidation of all Debtors whether or not all Impaired Classes entitled to vote on the Plane vote to accept the Plan.

**9.3    Debtors' Members, Managers, and Officers**.  As of the Effective Date, any manager or officer of a Debtor shall be deemed to have been terminated automatically without the need for any action or approval and without the need for any company filings, and shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.  From and after the Effective Date, the Liquidating Trust shall be deemed to be the sole member of each Debtor and the Liquidating Trustee shall be deemed to be the sole officer and manager of each Debtor (and all limited liability company agreements and other organic documents are deemed amended by this combined Disclosure Statement and Plan to permit and authorize such admission and appointment), and the Liquidating Trustee shall serve in such capacity through the earlier of the date the applicable Debtor is dissolved in accordance with this combined Disclosure Statement and Plan and the date that such Liquidating Trustee resigns, is terminated, or is otherwise unable to serve, *provided that* any successor Liquidating Trustee shall serve in such capacities after the effective date of such appointment as the Liquidating Trustee.

**9.4    Wind-Up and Dissolution of the Debtors**.  From and after the Effective Date, the Debtors shall continue in existence pursuant to the terms of this combined Disclosure Statement and Plan.  The Liquidating Trustee is authorized and empowered to effect the dissolution of any of the Debtors as soon as practicable after the Effective Date without the need for any company action or approval, and neither the Debtors nor the Liquidating Trustee nor any Beneficiary shall be required to pay any taxes or fees to cause such dissolution.  On the Effective Date or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall wind-up the affairs of the Debtors and file final tax returns for the Debtors.  All company governance activities of a Debtor shall be exercised by the Liquidating Trustee and the Liquidating Trustee shall be authorized and empowered to take or cause to be taken all company actions necessary or appropriate to implement and consummate the Plan.  The Liquidating Trust shall bear the cost and expense of the wind-up of the affairs of the Debtors and the cost and expense of the preparation and filing of the final tax returns for the Debtors.

**9.5    Creation and Governance of the Liquidating Trust**.  On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall take all steps necessary to establish the Liquidating Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the Beneficiaries.  Additionally, on the Effective Date the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of their rights, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with Bankruptcy Code section 1141, except as specifically provided in the Plan or the Confirmation Order, the Liquidating Trust Assets shall

automatically vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Liquidating Trust Interests and the Liquidating Trust Expenses, as provided for in the Plan and the Liquidating Trust Agreement, and Claims required to be paid by the Liquidating Trust pursuant to the Plan with priority over General Unsecured Claims, including, without limitation, Administrative Claims and Professional Fee Claims; and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3)(B).  The Liquidating Trust shall be governed by the Liquidating Trust Agreement and administered by the Liquidating Trustee.    The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Section 9 of this Plan.  The Liquidating Trust shall hold and distribute the Liquidating Trust Assets in accordance with the provisions of the Plan and the Liquidating Trust Agreement.  Other rights and duties of the Liquidating Trustee and the Beneficiaries shall be as set forth in the Liquidating Trust Agreement.  For the avoidance of doubt, after the Effective Date, the Debtors and the Estates shall have no interest in the Liquidating Trust Assets, the transfer of the Liquidating Trust Assets to the Liquidating Trust is absolute, and the Liquidating Trust Assets shall not be held or deemed to be held in trust by the Liquidating Trustee on behalf of any of the Debtors or the Estates.

**9.6**    **Purpose of the Liquidating Trust**.  The Liquidating Trust shall be established for the purpose of: pursuing or liquidating the Liquidating Trust Assets; reconciling and objecting to Claims, as provided for in the Plan; and making Distributions to the Beneficiaries, all in accordance with the provisions of Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

**9.7**    **Liquidating Trustee and Liquidating Trust Agreement**.    The Liquidating Trust Agreement, which shall be in form and substance satisfactory to the Prepetition Term Agents, in consultation with the Committee, generally will provide for, among other things: (i) the payment of the Liquidating Trust Expenses; (ii) the payment of other reasonable expenses of the Liquidating Trust; (iii) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; (iv) the investment of Cash by the Liquidating Trustee within certain limitations, including those specified in the Plan; (v) the orderly liquidation of the Liquidating Trust Assets; (vi) litigation of any Retained Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action;  (vii) the prosecution and resolution of objections to Claims; and (viii) the establishment of such Disputed Claim Reserves as the Liquidating Trustee deems reasonable and appropriate.

The Liquidating Trustee, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors) to assist in carrying out the Liquidating Trustee's duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement.

The Liquidating Trust Agreement provides that the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Liquidating Trustee incurs or sustains, in good faith and without willful misconduct, gross negligence, or fraud, acting as Liquidating Trustee under or in connection with the Liquidating Trust Agreement.

On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Plan to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance with the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

**9.8     Compensation and Duties of Liquidating Trustee**.  The salient terms of the Liquidating Trustee's employment, including the Liquidating Trustee's duties and compensation, shall be set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall be entitled to reasonable compensation, in an amount satisfactory to the Prepetition Term Agents, consistent with that of similar functionaries in similar types of bankruptcy cases. The Liquidating Trustee shall also be reimbursed for all documented, actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of his or her duties under the Liquidating Trust Agreement.

**9.9     United States Federal Income Tax Treatment of the Liquidating Trust**

*(a)     Grantor Trust.*  It is intended that the Liquidating Trust qualify as a grantor trust for federal income tax purposes, and that the Beneficiaries are treated as grantors of such trust. As described more fully in the Plan and the Disclosure Statement, the transfer of the Liquidating Trust Assets should be treated for federal income tax purposes as a transfer to the Beneficiaries, followed by a deemed transfer from such Beneficiaries to the Liquidating Trust, *provided, however*, that the Liquidating Trust Assets will be subject to any post-Effective Date obligations incurred by the Liquidating Trust relating to the pursuit of Liquidating Trust Assets. Accordingly, the Beneficiaries should be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets. The foregoing treatment should also apply, to the extent permitted by applicable law, for state and local income tax purposes. Subject to Article V of the Plan, as a grantor trust, all items of income, gain, loss, deduction and credit will be included in the income of the Beneficiaries as if such items had been recognized directly by the Beneficiaries in the proportions in which they own beneficial interests in the Liquidating Trust.

*(b)     Reporting.*  The Liquidating Trustee shall comply with all tax reporting requirements and, in connection therewith, the Liquidating Trustee may require Beneficiaries to provide certain tax information as a condition to receipt of Distributions, including, without limitation, filing returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a). Under the guidelines set forth in Revenue Procedure 94-95, 1994-2 C.B. 684 and Treasury Regulation § 1.671-4(a), the Liquidating Trustee will file returns for the Liquidating Trust as a grantor trust.

25437081.10

(c)    *Valuation*.  Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as reasonably practicable after the Liquidating Trust Assets are transferred to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets.  Such valuation shall be made available from time to time to all parties to the Liquidating Trust Agreement and to all Beneficiaries, to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)    *Tax Returns*.  In accordance with the provisions of section 6012(b)(3) of the Internal Revenue Code, as amended, the Liquidating Trustee shall cause to be prepared, at the cost and expense of the Liquidating Trust, the income tax returns (federal, state and local) that the Debtors are required to file (to the extent such returns have not already been filed by the Effective Date).  The Liquidating Trustee shall timely file each such tax return with the appropriate taxing authority and shall pay out of the Liquidating Trust Assets all taxes due with respect to the period covered by each such tax return.

(e)    *Disputed Ownership Fund Election.*  The Plan permits the Liquidating Trustee to establish Disputed Claim Reserves.  The Liquidating Trustee may, at the Liquidating Trustee's sole discretion, file a tax election to treat any such Disputed Claim Reserve as a Disputed Ownership Fund as described in Treasury Regulation § 1.468B-9 or other taxable entity rather than as a part of the Liquidating Trust for federal income tax purposes.  If such election is made, the Liquidating Trust shall comply with all tax reporting and tax compliance requirements applicable to the Disputed Ownership Fund or other taxable entity, including, but not limited to, the filing of separate income tax returns for the Disputed Ownership Fund or other taxable entity and the payment of any federal, state or local income tax due.

(f)    *Attribution of Income*.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), attribution of Liquidating Trust taxable income or loss shall be by reference to the manner in which any economic gain or loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date the Liquidating Trust Assets are transferred to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(g)    *Current Basis*.  All income of the Liquidating Trust will be subject to tax on a current basis.

(h)     *Tax Identification Numbers*.   The Liquidating Trustee may require any Beneficiary to furnish to the Liquidating Trustee its Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service or otherwise certify to the Liquidating Trustee's satisfaction that Distributions to the Beneficiary are exempt from backup withholding. The Liquidating Trustee may condition any Distribution to any Beneficiary upon receipt of such identification number.   If after reasonable inquiry, any Beneficiary fails to provide such identification number to the Liquidating Trustee, the Liquidating Trustee shall deem such Beneficiary's Claim as Disallowed and no Distribution shall be made on account of such Beneficiary's Claim.

(i)     *Annual Statements*.   The Liquidating Trustee shall annually (for tax years in which Distributions from the Liquidating Trust are made) send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns.

(j)     *Notices*.  The Liquidating Trustee shall distribute such notices to the Beneficiaries as the Liquidating Trustee determines are necessary or desirable.

(k)     *Expedited Determination*.   The Liquidating Trustee may request an expedited determination of taxes of the Debtors or of the Liquidating Trust under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

**9.10    Abandonment, Disposal, and Destruction of Records**.  Except with respect to patient records, which shall be disposed of in accordance with the *Order Authorizing the Debtors to (I) Employ and Retain Seelig+Cussigh HCO LLC to Provide Medical Record Disposition Services Effective as of October 3, 2019, and (II) Dispose of Remaining Patient Records in the Debtors' Possession* [D.I. ___], the Liquidating Trustee shall be authorized pursuant to Bankruptcy Code section 554, in its sole discretion, without any further notice to any party or action, order or approval of the Bankruptcy Court, to abandon, dispose of, or destroy in any commercially reasonable manner all originals and/or copies of any documents, books and records, including any electronic records, of the Debtors that are transferred to the Liquidating Trust and which the Liquidating Trustee reasonably concludes are burdensome or of inconsequential value and benefit to the Liquidating Trust.

**9.11    Distributions by Liquidating Trustee**.  Following the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make continuing efforts to liquidate all Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement, *provided* that the timing of all Distributions made by the Liquidating Trustee to Beneficiaries shall be at the discretion of the Liquidating Trustee, and, *provided, further*, that Distributions to Beneficiaries may only be made after the Final Administrative Claim Bar Date.

**9.12    Cash Investments**.  Funds in the Liquidating Trust shall be invested in demand-and-time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Liquidating Trust as determined by the Liquidating Trustee, in accordance with Bankruptcy Code section 345, unless the Bankruptcy Court otherwise requires; *provided, however*, that such investments are investments permitted to

25437081.10

be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

**9.13    Dissolution of the Liquidating Trust**.  The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as: (a) (i) all Disputed Claims have been resolved; (ii) all of the Liquidating Trust Assets have been liquidated; (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled; (iv) all Distributions required under the Plan and the Liquidating Trust Agreement have been made; and (v) the Chapter 11 Cases have been closed, OR (b) as otherwise provided in the Liquidating Trust Agreement.  Upon dissolution of the Liquidating Trust, any remaining Liquidating Trust Assets may be transferred by the Liquidating Trustee to a charitable organization(s).

**9.14    Control Provisions**.  To the extent there is any inconsistency between the combined Disclosure Statement and Plan as it relates to the Liquidating Trust and the Liquidating Trust Agreement, the terms of the combined Disclosure Statement and Plan shall control.  Nothing in this combined Disclosure Statement and Plan shall modify or be deemed to modify in any regard any term or provision of the DIP Order related to the Prepetition Priming Term Loan Claims or the Prepetition Second Term Facility Claims.

**9.15    Limitation of Liability; Indemnification**.  The Liquidating Trustee and all of its respective designees, employees, agents, representatives or professionals shall not be liable for the act or omission of any other member, designees, agent or representative of the Liquidating Trustee, nor shall they be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omission resulting from willful misconduct, gross negligence, or fraud.  The Liquidating Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee.  The Liquidating Trustee may, in connection with the performance of its functions, consult with attorneys, accountants, financial advisors and agents approved of by the Prepetition Term Agents (or, after the Effective Date, the Term Lender Representative(s), if any), which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons.  Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan; provided, however, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**9.16    Company Action**.  All matters expressly provided for under this Plan that would otherwise require approval of the members or managers of one or more of the Debtors, including

but not limited to, the dissolution or merger of any of the Debtors, shall be deemed to be in effect from and after the Effective Date pursuant to the applicable law of the states in which the Debtors are organized without any requirement of action by the members or managers of the Debtors.

**9.17    Avoidance Actions**.  Except as otherwise provided in this Plan, as of the Effective Date, the Debtors, together with any successor or successors in interest and assigns, including, without limitation, the Liquidating Trustee, and any other person or entity that claims or might claim through, on behalf of, or for the benefit of any of the foregoing, shall be deemed to have preserved all Avoidance Actions, other than, if a Trigger Event has not occurred, Preference Actions, and in all instances shall be deemed to have preserved the right to pursue any Preference Actions solely for purposes of defending, setting off and recouping against any asserted Claims.

**ARTICLE X**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**10.1    Distributions for Allowed Claims**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Beneficiaries as of the applicable distribution date shall be made on or as soon as practicable after the applicable distribution date.  Distributions on account of Claims that first become Allowed Claims after the applicable distribution date shall be made pursuant to the terms of this Plan and on the day selected by the Liquidating Trustee.

The Liquidating Trustee may accelerate any Distribution date with respect to Distributions other than the initial distribution date if the facts and circumstances so warrant and to the extent not inconsistent with the Plan.

Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date**.**

**10.2    Interest of Claims**.  Expect to the extent provided in Bankruptcy Code section 506(b), the Plan, or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of an Allowed Claim shall be entitled to interest accruing on any Claim from and after the Petition Date.

**10.3    Distributions by Liquidating Trustee as Disbursement Agent**.  From and after the Effective Date, the Liquidating Trustee shall serve as the Disbursement Agent under the Plan with respect to Distributions to Holders of Allowed Claims (provided that the Liquidating Trustee may hire professionals or consultants to assist with making disbursements or to act as the Disbursement Agent).  The Liquidating Trustee shall cause to be made all Distributions required to be made to such Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of the Liquidating Trustee's duties as Disbursement Agent unless otherwise ordered by the Bankruptcy Court.

25437081.10

**10.4    Waterfall**.  The Liquidating Trustee shall cause the proceeds of the Assets, net of the Liquidating Trust Expenses and amounts payable pursuant to Section 16.7 of this combined Disclosure Statement and Plan, to be distributed to Holders of Allowed Claims as follows (to the extent that such Claims have not been paid on or prior to the Effective Date):

*(a)*      first, to satisfy all Allowed Administrative Claims;

*(b)*      second, to satisfy all Allowed Other Secured Claims and Allowed Priority Tax Claims;

*(c)*      third, to satisfy the Allowed Priority Non-Tax Claims;

*(d)*      fourth, to satisfy the Prepetition Priming Term Loan Claims; and

*(e)*      fifth, to satisfy the Prepetition Second Term Facility Claims.

**10.5    Means of Cash Payment**.  Cash payments under the Plan shall be made, net of any applicable withholding taxes at the option, and in the sole discretion, of the Liquidating Trustee, by wire, check, or such other method as the Liquidating Trustee deems appropriate under the circumstances *provided*, *however*, that all payments made to the Prepetition Term Agents, the Prepetition Priming Term Loan Lenders or the Prepetition Second Term Facility Lenders shall be made by wire transfer, unless otherwise agreed to in writing by the recipients of such payments. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.  Pursuant to Section 10.8 of the Plan, cash payments in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within ninety (90) days of the date of the issuance thereof and deemed undeliverable Distributions.  Following the expiration of ninety (90) days after issuance of such null and void checks, in accordance with Section 10.14 of the Plan, amounts in respect of these undeliverable Distributions shall become unrestricted Liquidating Trust Assets redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses.  Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

For purposes of effectuating Distributions under the Plan, any Claim denominated in foreign currency shall be converted to U.S. Dollars pursuant to the applicable published exchange rate in effect on the Petition Date.

**10.6    Fractional Distributions**.  Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**10.7    De Minimis Distributions**.  Notwithstanding anything to the contrary contained in the Plan, the Liquidating Trustee shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be

distributed on account of such Claim is less than $100. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $100 shall be forever barred from asserting such Claim against Liquidating Trust Assets.

**10.8    Delivery of Distributions; Unclaimed Distributions**.  All Distributions to Holders of Allowed Claims not made by wire transfer shall be made at the address of such Holder as set forth in the claims register maintained in the Chapter 11 Cases (subject to any transfer effectuated pursuant to Bankruptcy Rule 3001(e) or, after the Effective Date, a change of address notification provided by a Holder in a manner reasonably acceptable to the Liquidating Trustee) or, in the absence of a Filed proof of Claim, the Schedules, or with respect to the Prepetition Priming Term Loan Claims and the Prepetition Second Term Facility Claims, as forth in the register maintained by the Prepetition Term Agents on the Effective Date.  The responsibility to provide the Liquidating Trustee a current address of a Holder of Claims shall always be the responsibility of such Holder and at no time shall the Liquidating Trustee have any obligation to determine a Holder's current address.  Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.  Amounts in respect of undeliverable Distributions made by the Liquidating Trustee shall be held in trust on behalf of the Holder of the Claim to which they are payable by the Liquidating Trust until the earlier of the date that such undeliverable Distributions are claimed by such Holder and the date ninety (90) days after the date the undeliverable Distributions were made.  Following the expiration of ninety (90) days after the date the undeliverable Distributions were made, the amounts in respect of undeliverable Distributions shall be become unrestricted Liquidating Trust Assets redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses.  Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

**10.9    Application of Distribution Record Date**.  At the close of business on the Distribution Record Date, the Debtors' claims registers shall be closed, and there shall be no further changes in the record Holders of Claims or Interests.  Except in limited instances as may be provided in the Liquidating Trust Agreement, and as may be provided to the extent of applicable law, beneficial interests in the Liquidating Trust shall be non-transferable except upon death of the interest holder or by operation of law.  Except as provided herein, the Liquidating Trustee and the Liquidating Trustee's respective agents, successors, and assigns shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record Holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Entities or the date of such Distributions.

**10.10    Withholding, Payment and Reporting Requirements With Respect to Distributions**.  All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.  The Liquidating Trustee may require, in the Liquidating Trustee's sole and

absolute discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Liquidating Trust the appropriate Form W-8 or Form W-9, as applicable, to each Holder.  Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Liquidating Trust in connection with such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trust in connection with such Distribution.

**10.11    Setoffs**.  The Liquidating Trust may, but shall not be required to, set off against any Claim or any Allowed Claim (other than the Allowed Prepetition Priming Term Loan Claims and the Allowed Prepetition Second Term Facility Claims), and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Liquidating Trust may have against the Holder of such Claim; *provided, however,* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such claim that it may have against such Holder.

**10.12    No Distribution in Excess of Allowed Amounts**.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim.

**10.13    Allocation of Distributions**.  The Liquidating Trustee may, in the Liquidating Trustee's sole discretion, make Distributions jointly to any Holder of a Claim and any other Entity who has asserted, or whom the Liquidating Trustee has determined to have, an interest in such Claim; *provided, however*, that the Liquidating Trust shall provide notice of such Distribution to any Holder of a Claim or other Entity that has asserted an interest in such Claim.

**10.14    Forfeiture of Distributions**.  If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 10.4, fails to claim an undeliverable Distribution within the time limit set forth in Section 10.8, or fails to complete and return to the Liquidating Trust the appropriate Form W-8 or Form W-9 within one hundred twenty (120) days of the request by the Liquidating Trust for the completion and return to it of the appropriate form pursuant to Section 10.10, then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.  The forfeited Distributions shall become unrestricted Liquidating Trust Assets and shall be redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses and otherwise in compliance with the Plan and the Liquidating Trust Agreement. In the event the Liquidating Trustee determines, after consulting with the Prepetition Term Agents (as applicable), that any such amounts are too small in total to redistribute cost-effectively to the Beneficiaries, the Liquidating Trustee may instead donate them to a charitable

organization(s) free of any restrictions thereon, notwithstanding any federal or state escheat laws to the contrary.

## ARTICLE XI
## PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS

**11.1    Claims Administration Responsibility**.  Except as otherwise specifically provided in the Plan and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the sole authority (a) to file, withdraw, or litigate to judgment objections to Claims, (b) to settle, compromise, or Allow any Claim or Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  Any agreement entered into by the Liquidating Trustee (acting in accordance with the terms of the Liquidating Trust Agreement) with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**11.2    Claims Objections**.  All objections to Claims shall be Filed by the Liquidating Trustee on or before the Claim Objection Deadline, which date may be extended by the Bankruptcy Court upon a motion filed by the Liquidating Trustee on or before the Claim Objection Deadline with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the filing of such motion.  If a timely objection has not been Filed to a proof of Claim or the Schedules have not been amended with respect to a Claim that was scheduled by the Debtors but was not set forth in the Schedules by the Debtors as contingent, unliquidated, and/or disputed, then the Claim to which the proof of Claim or the Claim set forth in the Schedules relates will be treated as an Allowed Claim.

**11.3    Estimation of Contingent or Unliquidated Claims**.  Except as specifically provided for in the Liquidating Trust Agreement, the Liquidating Trustee may, at any time, in consultation with the Term Lender Representative(s), if any, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimated amount shall constitute the Allowed amount of such Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**11.4    Distributions on Account of Disputed Claims**.  Distributions may be made on account of an undisputed portion of a Disputed Claim.  The Liquidating Trustee shall, on the applicable distribution date, make Distributions on account of any Disputed Claim (or portion thereof) that has become an Allowed Claim.  Such Distributions shall be based upon the Distributions that would have been made to the Holder of such Claim under the Plan if such Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

**11.5    Amendments to Claims**.  On or after the Effective Date, a Claim may not be filed or amended to increase liability or to assert new liabilities without the prior authorization of the Bankruptcy Court or the Liquidating Trustee, in consultation with the Term Lender Representative(s), if any, and any such new or amended Claim filed without prior authorization shall be deemed Disallowed in full without any further action.

**11.6    Claims Paid and Payable by Third Parties**.  A Claim shall be Disallowed without an Objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors, the Liquidating Trust, or the Liquidating Trustee.  Distributions under the Plan shall be made on account of any Allowed Claim that is payable pursuant to one of the Insurance Contract(s) solely up to the amount of the portion of such Allowed Claim that is (i) within the self-insured retention under such Insurance Contract(s) and/or (ii) in excess of any aggregate limits under such Insurance Contract(s).  No Entity shall have any other recourse against the Debtors, the Estates, the Liquidating Trust, or any of their respective properties or assets on account of a self-insured retention under an Insurance Contract; *provided, however*, that, except as otherwise required under the applicable Insurance Contracts and applicable non-bankruptcy law, an Insurer shall not be obligated to pay amounts within any self-insured retention or other self-insured layer.

**11.7    Adjustment to Claims Without Objection**.  Any Claim that has been paid or otherwise satisfied may be designated on the Claims Register as such at the direction of the Liquidating Trustee by the Filing of a Notice of Satisfaction by the Liquidating Trustee, and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE XII
## EXECUTORY CONTRACTS

**12.1    Executory Contracts Deemed Rejected**.  On the Effective Date, all Executory Contracts will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of Bankruptcy Code sections 365 and 1123, except to the extent: (a) the Debtors previously have assumed, assumed and assigned or rejected such Executory Contract, or (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an Executory Contract on which the Bankruptcy Court has not ruled.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections of Executory Contracts pursuant to this Article and Bankruptcy Code sections 365(a) and 1123.

**12.2    Asset Purchase Agreements and Provider Agreements**.  To the extent executory, any asset purchase agreement, transition service agreements, and any other documents related to the Sales, and any and all provider agreements shall be assumed.

## ARTICLE XIII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**13.1    Conditions Precedent to the Effective Date**.  Each of the following is a condition precedent to the occurrence of the Effective Date:

(a)      the Confirmation Order shall have become a Final Order in full force and effect with no stay thereof then in effect, and shall be in form and substance satisfactory to the Prepetition Term Agents;

(b)      the DIP Order is in full force and effect and there are no events of default existing and continuing thereunder;

(c)      all actions, documents, and agreements necessary to implement this combined Disclosure Statement and Plan, including, without limitation, all actions, documents, and agreements necessary to implement any transactions contemplated under this combined Disclosure Statement and Plan, including the Liquidating Trust Agreement, shall have been effectuated or executed;

(d)      the absence of any pending or threatened government action or any law that has the effect of or actually does prevent Consummation of any transaction contemplated under this combined Disclosure Statement and Plan;

(e)      the Liquidating Trust shall have been established and the Liquidating Trust Assets shall have been transferred to and vested in the Liquidating Trust free and clear of all Claims and Interests, except as specifically provided in the Plan and the Liquidating Trust Agreement;

(f)      the total amount of Allowed 503(b)(9) Claims shall be no greater than $[_____], and the total amount of Allowed Initial Administrative Claims shall be no greater than $[_____];

(g)      the Plan Supplement, including the Liquidating Trust Agreement, is in form and substance satisfactory to the Prepetition Term Agents; and

(h)      the payment in full of the reasonable fees and expenses of the Prepetition Priming Term Loan Advisors and the Prepetition Second Term Facility Advisors that are due and owing under the DIP Order; and

(i)      the Disputed Claim Reserve and Liquidating Trust Operating Reserve shall have been established and funded in accordance with the terms of this combined Disclosure Statement and Plan.

**13.2   Notice of Effective Date.  On or before five (5) Business Days after the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all Holders of Claims a notice that informs such Entities of (a) the occurrence of the Effective Date, (b) notice of the Final Administrative Claim Bar Date and Professional Fee Claim Bar Date, and (c) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.**

**13.3   Waiver of Conditions Precedent to the Effective Date**.  The Debtors may at any time, without notice or authorization of the Bankruptcy Court, but with the prior consent of the Prepetition Term Agents, waive in writing any or all of the conditions precedent to the Effective Date set forth in this Article, whereupon the Effective Date shall occur without further action by

any Entity, *provided, however*, that (i) the condition specified in section 13.1(a) may not be waived, and (ii) the condition specified in section 13.1(f) may not be waived without the consent of the Committee.  The Debtors reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of the Plan.

**13.4    Effect of Non-Occurrence of Effective Date**.  If each of the conditions specified in this Article have not been satisfied or waived in the manner provided herein within ninety (90) calendar days after the Confirmation Date (or such later date as may be agreed to by the Debtors and the Prepetition Term Agents), then: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no Distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims against or Interests in the Debtors shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unaffected by the Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors, and the Plan shall be deemed withdrawn.  Upon such occurrence, the Debtors shall File a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

## ARTICLE XIV
## EFFECTS OF CONFIRMATION

**14.1    Exculpation, Releases, and Injunctions**

**Nothing contained in Section 14.1 of the Plan shall prohibit the Holder of a Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the Distribution provisions of the Plan, or enjoin or prohibit the enforcement by the Holder of such Claim of any of the obligations of the Liquidating Trustee under the Plan.  The exculpations, releases, and injunctions provided for in Section 14.1 of the Plan shall be effective upon the Effective Date.**

**(a)    <u>Exculpation and Limitation of Liability</u>.    Notwithstanding any other provision of the Plan, the Exculpated Parties shall not have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission relating to, in any way, or arising from (i) the Chapter 11 Cases, (ii) formulating, negotiating or implementing the combined Disclosure Statement and Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the combined Disclosure Statement and Plan; (iii) the Sales; (iv) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring, sale or liquidation of the Debtors; (v) the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan or (vi) the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful**

misconduct as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability. The Confirmation Order shall serve as a permanent injunction against any Entity seeking to enforce any claim or cause of action against the Exculpated Parties that has been exculpated pursuant to Section 14.1(a) of the Plan.

*(b)*     <u>Releases by the Debtors</u>.  **Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on their own behalf and as a representative of their respective Estates, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort, contract, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors or their operations, their respective Assets, the Estates, or the Chapter 11 Cases, that may be asserted by or on behalf of any of the Debtors or their respective Estates, against any of the Released Parties.**

*(c)*     <u>Consensual Third-Party Releases by Holders of Claims and Interests</u>.  **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to forever release, waive and discharge the Released Parties of all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, causes of action and liabilities of any nature whatsoever in connection with or related to the Debtors, the Chapter 11 Cases, or the combined Disclosure Statement and Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date (other than the rights of Holders of Allowed Claims to enforce the obligations under the Confirmation Order and the Plan);** *provided, however*, **that nothing in this section shall operate as a release, waiver or discharge of any causes of action or liabilities unknown to such Entity as of the Petition Date arising out of gross negligence, willful misconduct, fraud, or criminal acts of any such Released Party as determined by a Final Order.**

*(d)*     <u>Non-Discharge of the Debtors; Injunction</u>.  **In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors.  Bankruptcy Code**

section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from:

(1)    commencing or continuing in any manner any action or other proceeding of any kind against any of the Estates, the Liquidating Trust, their successors and assigns, and any of their assets and properties;

(2)    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties;

(3)    creating, perfecting or enforcing any encumbrance of any kind against any Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties;

(4)    asserting any right of setoff or subrogation of any kind against any obligation due from any Estate, the Liquidating Trust or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of Claim; or

(5)    commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under Article XIV of the Plan.

Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator.

**14.2    Term of Bankruptcy Injunction or Stays**.  All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

## ARTICLE XV
## RETENTION OF JURISDICTION

**15.1    Exclusive Jurisdiction of Bankruptcy Court.**  Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

*(a)*    allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not Contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Claims or Interests, the resolution of any Objections to the allowance or priority of Claims or Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Interest to the extent permitted under applicable law;

*(b)*    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

*(c)*    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim or Interest, or Cause of Action;

*(d)*    determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

*(e)*    ensure that all Distributions to Holders of Allowed Claims under the Plan and the performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

*(f)*    construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Bankruptcy Code section 1142, as may be necessary for the enforcement, implementation, execution and Consummation of the Plan and all contracts, instruments, releases, other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan in accordance with Bankruptcy Code sections 524 and 1141 following the occurrence of the Effective Date;

*(g)*    determine and resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation, implementation or enforcement of the

Plan (and all exhibits and schedules to the Plan) or the Confirmation Order, including the releases and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

*(h)* modify the combined Disclosure Statement and Plan or the Confirmation Order before or after the Effective Date, pursuant to Bankruptcy Code section 1127, as well as any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the combined Disclosure Statement and Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

*(i)* issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation, implementation or enforcement of the Plan or the Confirmation Order;

*(j)* enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

*(k)* determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the combined Disclosure Statement and Plan or the Confirmation Order;

*(l)* determine such other matters and for such other purposes as may be provided in the Confirmation Order;

*(m)* hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

*(n)* enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

*(o)* determine and resolve controversies related to the Estates, the Debtors, or the Liquidating Trust from and after the Effective Date;

*(p)* hear and determine any other matter relating to the combined Disclosure Statement and Plan; and

*(q)* enter a final decree closing any or all the Chapter 11 Cases.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

**16.1    Modification of the Plan**.  The Debtors, with the prior written consent of the Prepetition Term Agents, may alter, amend, or modify the Plan or any exhibits or schedules hereto under Bankruptcy Code section 1127(a) at any time prior to or after the Confirmation Date but prior to the substantial Consummation of the Plan, provided, however, that any such alteration, amendment or modification does not materially and adversely affect the treatment of Holders of Claims or Interests under the Plan.  Any Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

**16.2    Revocation, Withdrawal, or Non-Confirmation of the Plan**.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Hearing with the prior written consent of the Prepetition Term Agents.  If the Plan is revoked or withdrawn prior to the Confirmation Hearing, or if the Plan is not confirmed by the Bankruptcy Court, then:

    *(a)*    the Plan shall be null and void in all respects, and

    *(b)*    nothing contained in the combined Disclosure Statement and Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or any other Entity, or (iii) constitute an admission of any sort by the Debtors or any other Entity.

**16.3    Binding Effect**.  Except as otherwise provided in Bankruptcy Code section 1141(d)(3) and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

**16.4    Subordination Rights**.  The classification and manner of satisfying all Claims and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with the contractual, legal and equitable subordination rights relating thereto, whether arising under contract, general principles of equitable subordination, Bankruptcy Code section 510(b) Code or otherwise.  All subordination rights that a Holder of a Claim may have with respect to any Distribution to be made under the Plan shall be implemented through the Plan, and all actions by such Holder of a Claim related to the enforcement of such subordination rights shall be enjoined permanently. The provisions of any contractual or structural subordination of Claims shall remain enforceable by the Liquidating Trustee on behalf of the Estates after the occurrence of the Effective Date. Without limitation hereunder, the Liquidating Trustee, on behalf of the Estates, may likewise enforce any right of the Debtors or the Estates to equitably or otherwise subordinate Claims under Bankruptcy Code section 510, which rights are deemed transferred to, remain and are preserved in the Liquidating Trust, except as otherwise expressly set forth herein or as expressly provided in a Final Order of the Bankruptcy Court in the Chapter 11 Cases.

25437081.10

**16.5    Severability of Plan Provisions**.  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**16.6    Payment of Statutory Fees; Filing of Quarterly Reports**.  All fees payable pursuant to United States Code title 28 section 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by the Liquidating Trust.  The Liquidating Trust shall have the obligation to pay quarterly fees to the Office of the United States Trustee pursuant to United States Code title 28 section 1930 for each and every Debtor until its particular case is closed (pursuant to Section 11.19 of the Plan or otherwise), dismissed or converted.  Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of Claim with respect to quarterly fees payable pursuant to United State Code title 28 section 1930.

**16.7    Prepetition Term Agents' Fees and Expenses**.  The Debtors or the Liquidating Trustee, as applicable, shall pay on the Effective Date all then-outstanding unpaid fees and expenses incurred on or before the Effective Date by the Prepetition Priming Term Loan Advisors and the Prepetition Second Term Facility Advisors, and any other unpaid fees and expenses of the Prepetition Term Agents.  Any such costs and expenses that are attorneys' fees and expenses shall be submitted to the Debtors in the form of summary invoices consistent with the terms of the DIP Order.  In addition, the Liquidating Trust shall continue to pay when due and payable in the ordinary course, the fees and expenses of the Prepetition Term Agents and their respective advisors, including the Prepetition Priming Term Loan Advisors and the Prepetition Second Term Facility Advisors, related to implementation, consummation, or defense of this combined Disclosure Statement and Plan and the Liquidating Trust as well as any indemnification claims of the Prepetition Term Agents under the Prepetition Priming Term Loan Agreement and the Prepetition Second Term Facility Agreement; provided, however, that, on the Effective Date, the Prepetition Term Agents shall be deemed to be released from all of their duties and obligations under the Prepetition Priming Term Loan Agreement and the Prepetition Second Term Facility Agreement and may thereafter, but shall have no obligation to, enforce the provisions of this combined Disclosure Statement and Plan and the Liquidating Trust Agreement.

**16.8    Dissolution of the Committee**.  The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Cases, except with respect to, and to the extent of any applications for Professional Fee Claims or expense reimbursements for members of such Committee.  The Committee and its retained Professionals may also participate in any appeal pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition unsecured creditors (including Holders of Allowed Priority Claims and

25437081.10

503(b)(9) Claims), including, but not limited to, any cases, controversies, suits or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order that could affect the treatment of prepetition unsecured creditors. The Professionals retained by the Committee shall not be entitled to assert any Administrative Claims nor shall they have an Allowed Administrative Claims for any services rendered or expenses incurred after the Effective Date except in respect of the preparation and prosecution of or any objection to any Filed fee application and participation in any appeals.

**16.9    Exemption from Section 1146**. Pursuant to Bankruptcy Code section 1146(a), under the Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (ii) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be taxed under any law imposing a stamp tax or similar tax. To the extent that the Debtors or Liquidating Trustee elect to sell any property prior to or after the Confirmation Date, such sales of property will be exempt from any transfer taxes in accordance with Bankruptcy Code section 1146(c). All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases shall be deemed to be or have been done in furtherance of the Plan.

**16.10    Closing of Chapter 11 Cases; Caption Change**. As of the Effective Date, the Liquidating Trustee may submit separate orders to the Bankruptcy Court under certification of counsel closing the Chapter 11 Cases of all of the Debtors except for Debtor Hospital Acquisition LLC and changing the caption of the Chapter 11 Cases accordingly. Nothing in the Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered. Any request for *nunc pro tunc* relief shall be made on motion served on the United States Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing. Upon the Filing of a motion to close the Chapter 11 Case of Hospital Acquisition LLC, the Liquidating Trustee shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

**16.11    Filing of Additional Documents**. On or before the Effective Date of the Plan, the Debtors may issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan, in each case, in consultation with the Prepetition Term Agents.

**16.12    Insurance**. Confirmation of the Plan and the occurrence of the Effective Date shall have no effect on insurance policies of the Debtors in which the Debtors are or were insured parties. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering, or delaying coverage on any basis regarding or related to the Chapter 11 Cases, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan for insured Claims.

**16.13  Successors and Assigns**.  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**16.14  Governing Law**.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws is applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware or the United States of America.

**16.15  Exhibits and Schedules**.  All exhibits and schedules annexed hereto, and all documents submitted in support hereof, are incorporated into and are a part of the Plan as if set forth in full herein.  Holders of Claims and Interests may obtain copies of the Filed exhibits and schedules upon written request to the Debtors.  Upon their Filing, the exhibits and schedules may be inspected in the Office of the Clerk of the Bankruptcy Court or its designee during normal business hours.  The documents contained in the exhibits and schedules shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  To the extent any exhibit or schedule annexed hereto is inconsistent with the Plan, the contents of the Plan shall control.

**16.16  Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**16.17  Reservation of Rights**.  The Filing of the combined Disclosure Statement and Plan, any statement or provision contained in the combined Disclosure Statement and Plan, or the taking of any action by the Debtors with respect to the Plan shall not be, and, except for the allowance of the Prepetition Priming Term Loan Claims and the Prepetition Second Term Facility Claims provided for in this combined Disclosure Statement and Plan, shall not be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims and Interests.

Dated: _____, 2019

**Hospital Acquisition LLC, et al.**

_____

Name:
Title:

25437081.10