**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>HOSPITAL ACQUISITION LLC, *et al.*,<br><br>　　　　　Debtors. | Chapter 11<br>Case No. 19-10998 (BLS)<br>Jointly Administered<br><br>Hearing Date:  December 3, 2019 at 10:30 a.m. (ET)<br>Re:  719, 720 |

**OBJECTION OF CIGNA TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE COMBINED DISCLOSURE STATEMENT AND PLAN ON AN INTERIM BASIS FOR SOLICITATION PURPOSES ONLY; (II) ESTABLISHING SOLICITATION AND TABULATION PROCEDURES; (III) APPROVING THE FORM OF BALLOTS AND SOLICITATION MATERIALS; (IV) ESTABLISHING THE VOTING RECORD DATE; (V) FIXING THE DATE, TME, AND PLACE FOR THE COMBINED HEARING AND THE DEADLINE FOR FILING OBJECTIONS THERETO; (VI) ESTABLISHING BAR DATES FOR FILING PROOFS OF CLAIM FOR SECURED, PRIORITY, AND 503(b)(9) CLAIMS AND REQUESTS FOR ALLOWANCE OF INITIAL ADMINISTRATIVE CLAIMS; <u>AND (VII) GRANTING RELATED RELIEF</u>**

Cigna Health and Life Insurance Company ("Cigna") hereby objects to the *Debtors' Motion for Entry of an Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Form of Ballots and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; (VI) Establishing Bar Dates for Filing Proofs of Claim for Secured, Priority, and 503(b)(9) Claims and Requests for Allowance of Initial Administrative Claims; and (VII) Granting Related Relief* [D.I. 720] ("Motion"), and in support thereof, respectfully state as follows:

**BACKGROUND**

1.　　Cigna and the above-captioned debtors (collectively "Debtors") are parties to the agreements listed on Exhibit A hereto (collectively, the "Cigna Provider Agreements"), pursuant to which the Debtors, through the healthcare facilities that they operated (collectively, the

"Facilities"), provided covered healthcare services to eligible participants within the Cigna Provider Network.

2. The Cigna Provider Agreements may only be assigned with written consent from Cigna.

3. Cigna and Debtors are also parties to an Administrative Services Only Agreement, effective 1/1/14, Policy No. 3213156[1] ("ASO Agreement") pursuant to which Cigna processes medical and dental claims of Debtors' employees and their dependents ("Benefit Claims") in accordance with the Debtors' employee benefits plan. The Debtors fund the payment of eligible Benefit Claims to healthcare providers.

4. Cigna and the Debtors are also parties to an Individual Stop Loss Policy and three (3) Group Dental Policies, Policy No. 3213156, (collectively with the ASO Agreement, the "Employee Benefits Agreements")[2] pursuant to which Cigna provides stop loss coverage and employee group dental insurance, respectively.

5. On June 6, 2019, the Debtors filed *Debtors Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Assets* [D.I. 227], pursuant to which, the Debtors sought this Court's approval for the sale of substantially all of their assets related to the Facilities, including the assumption and assignment of certain of Debtors' executory contracts.

6. On August 19, 2019, this Court entered the *Order(I) Authorizing the Sale of the Assets to the Purchaser Free and Clear of Liens, Claims, Interests, and Encumbrances; (II)*

---

[1] Including all amendments, riders, schedules, exhibits, certificates, renewal caveats and disclosures, addendums, letters of intent and banking agreements related thereto.
[2] Life Insurance Company of North America ("LINA") and the Debtors are parties to five policies ("LINA Policies,"), pursuant to which LINA provides group life, disability, life assistance and accident benefits for Debtors' employee benefits program. The Debtors have terminated the LINA Policies effective as of December 1, 2019.

*Authorizing the Assumption an Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 519] ("PAM Sale Order").

7. On August 19, 2019, this Court entered the *Order (I) Authorizing the Sale of the Assets to the Purchaser Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Assumption an Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 520] ("Select Sale Order").

8. On August 21, 2019, this Court entered the *Order (I) Authorizing the Sale of the Assets to the Purchaser Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Assumption an Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 528] ("LifeCare 2.0 Sale Order," and collectively with the PAM Sale Order and the Select Sale Order, the "Sale Orders").

9. No Cigna Provider Agreements and no Employee Benefits Agreements were assumed and assigned pursuant to the Sale Orders. Upon information and belief, all of the sales pursuant to the Sale Orders closed on or about September 30, 2019.

10. As of the date of this Objection, the Cigna Provider Agreements have neither been assumed nor rejected.

11. As of the date of this Objection, the Employee Benefits Agreements have neither been assumed nor rejected.

12. Should the Debtors reject the ASO Agreement, employee healthcare claims that were incurred, but not submitted, processed and paid ("Run-Out Claims") prior to the effective date of rejection ("Termination Date") will continue to be processed by Cigna following the Termination Date <u>only if</u>:(i) the Debtors so elect, (ii) the Debtors pay the Run-Out Fee due to

Cigna under the ASO Agreement; and (iii) the Debtors fund the payment of the Run-Out Claims as required under the ASO Agreement ("Run-Out Claims Obligations").

13. Upon information and belief, the Debtors' current and former employees who have incurred and will incur healthcare claims prior to the Termination Date expect that those healthcare claims will be funded. Further, such current and former employees may assume that their benefits under the Employee Benefits Agreements will continue after the Termination Date unless they are provided with notice to the contrary. However, the Plan does not propose a definitive disposition of the Employee Benefits Agreements.

## MOTION

14. The Debtor filed the Motion on November 15, 2019. On the same day, the Debtors filed the *Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of Hospital Acquisition LLC and its Affiliated Debtors* [D.I. 719] ("Plan"). Through the Motion, the Debtors seek this Court's approval of the Plan "for solicitation purposes" under section 1125 of the Bankruptcy Code.

15. Under the Plan, the Cigna Provider Agreements and the Employee Benefits Agreements (collectively, "Cigna Contracts"), like other executory contracts, may be rejected as of the Effective Date of the Plan. Plan, Article 12.1. However, the proposed rejection of any contract can be reversed if the Debtors file a motion to assume, or assume and assign, that contract at any time prior to the Effective Date. *Id*.

## OBJECTION

16. Cigna objects to the Motion because the Plan fails to disclose whether the Cigna Contracts will be assumed or rejected thereunder and it fails to disclose whether, if the ASO is rejected, the Run-Out Claims Obligations will be satisfied. The Debtors must irrevocably

designate each of the Cigna Contracts as contracts to be assumed or rejected under the Plan prior to the dates for objections to and voting upon the Plan, and the Debtors must commit to whether their Run-Out Obligations will be satisfied.

17. Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain "adequate information." 11 U.S.C. § 1125(b). "The primary purpose of a disclosure statement is to give the creditors information they need to decide whether to accept the plan." See, In re: Monnier Bros., 775 F.2d 1336, 1342 (8th Cir. 1985); see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC, 337 F.3d 314, 321 (3d Cir. 2003) (The term adequate information is that which would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the Plan.). The Plan fails to meet this requirement.

A. <u>Notice Of Proposed Assumption Or Rejection</u>.

18. The Plan does not list the contracts to be assumed and rejected under the Plan. Instead, the Plan provides that all executory contracts will be rejected on the Effective Date of the Plan. However, under the Plan, the Debtors can effectively reverse that disposition, <u>before or after Plan Confirmation</u>, by filing a motion to assume, or assume and assign, any contract, up until the Effective Date. Thus, Cigna will not know the proposed treatment of its interests under the Plan prior to, or even after, the Plan Confirmation Hearing.

19. Any order approving the Plan on an interim basis must provide that unequivocal and irrevocable notice of proposed assumption or rejection of each of the Cigna Contracts will be provided to Cigna and its undersigned counsel at least five (5) business days prior to the deadlines for voting on and objecting to the Plan.

B.  Run-Out Claims.

20. The Plan fails to disclose whether the Run-Out Claims Obligations will be satisfied in the event that the ASO Agreement is rejected. If the answer is "no," the Plan must disclose that Run-Out Claims will not be funded, and must provide for clear notice thereof to Cigna and affected employees. If the Run-Out Claims Obligations will be satisfied, the Plan must so state.

C.  Protective Cure.

21. To the extent that the Debtors seek to assume the Cigna Contracts, the Debtor must pay the full cure amount based upon the actual amounts that are due on the date that the Cigna Contracts are assumed. See 11 U.S.C. § 365(b)(1). Amounts due under the Employee Benefits Agreements vary from day to day, and are subject to reconciliation based upon, among other things, eligibility reports submitted by the Debtors, and claims funding provided by the Debtors. Likewise, amounts due under the Cigna Provider Agreements vary from day to day based on the ongoing payment and overpayment for healthcare claims of Cigna members at the Facilities. Cure amounts must be based on the amounts due under the Cigna Contracts as of the Effective Date.

WHEREFORE, Cigna respectfully requests that this Court enter an order that: (i) denies interim approval of the Plan, except to the extent consistent with the foregoing; and (ii) grants such further relief to Cigna as this Court deems just and equitable.

Dated:  November 27, 2019        CONNOLLY GALLAGHER LLP

/s/ Jeffrey C. Wisler
Jeffrey C. Wisler (#2795)
1201 North Market Street, 20th Floor
Wilmington, DE  19801
Telephone: (302) 757-7300
Facsimile:  (302) 658-0380
jwisler@connollygallagher.com

Counsel for Cigna Health and Life Insurance Company and Life Insurance Company of North America and

#05499201